**United States District Court**
Southern District of New York
Office of the Clerk
U.S. Courthouse
500 Pearl Street, New York, N.Y. 10007-1213

Date: 6/28/05

**05 - 1 1 4 0 1 MLW**

Our case # : 05 cv 3687 (AKH)

MAGISTRATE JUDGE

Dear Sir/Madam,

Enclosed is a certified copy of the civil docket sheet for the above referenced case that is being transferred to your district. The case file can be accessed through our CM/ECF System for the Southern District of New York. Please contact either Mr. Robert Gutierrez at (212) 805-0615 or Mrs. Tracy Rubino at (212) 805-0618 and they will furnish you with a CM/ECF Login and Password.

The enclosed copy of this letter is for your convenience in acknowledging receipt of these documents.

**Court policy for USDC-SDNY states that all ECF actions require only original, manual paper filings for the initiating documents. You may access our CM/ECF website for any additional documents that your court may require for processing.**

Yours truly,

J. Michael McMahon
Clerk of Court

Deputy Clerk
D. Lewis (mbe)

---

**RECEIPT IS ACKNOWLEDGED OF THE DOCUMENTS DESCRIBED HEREIN
AND ASSIGNED CASE NUMBER:**

CASE # _____ ON DATE: ___7/1/05___

CASE TRANSFERRED OUT FORM

Sarah A. Thornton

**DOC #** _12_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
SENECA INSURANCE CO. as          :
subrogee of SURFSIDE             :
CONDOMINIUM ASSOC.,              :
                                 :
                Plaintiff,       :        **ORDER GRANTING**
                                 :        **TRANSFER OF VENUE**
        -against-                :
                                 :
BROAN-NUTONE, LLC,               :        05 Civ. 3687(AKH)
                                 :
                Defendant.       :
------------------------------------------------------x

ALVIN K. HELLERSTEIN, U.S.D.J.:

Defendant's motion pursuant to 28 U.S.C. § 1404(a) is granted. The Clerk is
directed to transfer this case to the United States District Court for the District of
Massachusetts.

Plaintiff Seneca Insurance Company filed this lawsuit in the New York Supreme
Court. Defendant properly removed the action to this court, and filed its motion to
transfer.

Plaintiff Seneca, although a corporation incorporated in New York State, sues as
subrogee to a Massachusetts corporation, Surfside Condominium Association. Surfside
purchased an exhaust fan assembly manufactured by defendant Broan-Nutone, LLC, a
Delaware limited liability company with its principal place of business in Wisconsin.
Seneca alleges that its subrogor, Surfside, purchased the Broan-Nutone fan assembly for
installation in its premises in Massachusetts, that a fire occurred at Surfside's premises
causing damages which Seneca, as insurer, paid, and that Seneca, as subrogee, sues to
recover its damage in the amount of $197,244.59.

**A TRUE COPY**
**J. MICHAEL McMAHON, CLERK**

BY _____
          DEPUTY CLERK

1

Clearly, there is no incident giving rise to the lawsuit that occurred in New York. According to the allegations of the complaint, the Broan-Nutone fan assembly was not manufactured in New York, nor sold in New York, nor installed in New York. The fire occurred in Surfside's premises, 585 Main Street, West Yarmouth, Massachusetts (or, as stated in the Broan-Nutone brief, in a candleshop leased from Surfside in Cape Cod, Massachusetts). The allegedly defective product, the allegedly defective product design, and the alleged breach of warranty, these being the three claims for relief, involve facts and circumstances, and underlying law, totally removed from any incident affecting New York. The only relation to New York is Seneca's incorporation and place of business here.

Although plaintiff's choice of forum is to be given substantial respect, see Warrick v. Gen. Elec. Co., 70 F.3d 736, 741 (2d Cir. 1995), everything about this lawsuit points to transfer. The witnesses are not located here; the events did not occur here; the documents do not exist here. The criteria relevant to a motion under 28 U.S.C. § 1404(a) decidedly favor transfer:

> the district court generally should disturb the plaintiff's choice of forum only if, on balance, the following factors clearly favor transfer: (1) the convenience of witnesses; (2) the convenience of the parties; (3) the locus of operative facts; (4) the location of relevant documents and relative ease of access to sources of proof; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the forum's familiarity with the governing law; (7) the relative financial means of the parties; (8) the weight afforded plaintiff's choice of forum; and (9) trial efficiency and the interests of justice generally.

AEC One Stop Group, Inc. v. CD Listening Bar, Inc., 326 F. Supp. 2d 525, 528 (S.D.N.Y. 2004) (Chin, J.); Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 560-61 (S.D.N.Y. 2000) (Sweet, J.) (listing similar considerations).

2

Plaintiff, in opposing transfer to the District of Massachusetts, argues that the "locus of the operative facts . . . lie at the site of Defendant's manufacturing facilities rather than the site of the fire." (Aff't, ¶ 16). That site, however, is not in New York. In the absence of any counter-motion by plaintiff, its argument is irrelevant to the inappropriateness of New York as the forum.

It is not clear from the papers whether or not the moving party, defendant Broan-Nutone, LLC, is amenable to being sued in the District of Massachusetts. However, since it seeks transfer to that forum, it is estopped to argue to the contrary.

It is also not clear from the papers what kind of entity Broan-Nutone might be – whether a corporation as is alleged, or a limited partnership which conceivably might defeat diversity jurisdiction. I leave that issue to the transferee court.

For the reasons stated, the Clerk shall transfer the case file to the Clerk of the District of Massachusetts, for further proceedings in that court.

SO ORDERED.

Dated:      New York, New York
            June 23, 2005

_____
ALVIN K. HELLERSTEIN
United States District Judge

3

f/p/broan/Seneca.Removal

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x

SENECA INSURANCE COMPANY as subrogee of :    05 CV
SURFSIDE CONDOMINIUM ASSOCIATION,
                                         :
                        Plaintiffs,
                                         :
        -against-                              NOTICE OF REMOVAL

BROAN-NUTONE, LLC                        :
                        Defendant.       :
----------------------------------------x

05 CV 3687

*Judge Hellerstein*

Defendant, Broan-Nutone LLC ("Broan-Nutone") by its attorneys,
Lynch Rowin LLP, hereby gives notice of the removal of this action from
the Supreme Court of the State of New York, County of New York, to the
United States District Court for the Southern District of New York and
allege as follows:

    1.    Plaintiff, Seneca Insurance Company ("Seneca"), is a New York
corporation with a principal place of business at 160 Water Street, New
York, New York 11214.

    2.    Plaintiff, Surfside Condominium Association ("Surfside"), is
a Massachusetts corporation with a principal place of business at 585
Main Street, West Yarmouth, Massachusetts.

    3.    Broan-Nutone LLC is a Delaware Corporation with a principal
place of business at 926 West State Street, Hartford, Wisconsin 53027.

    4.    This Court has jurisdiction over this action pursuant to 28
U.S.C. §1332 (a)(1), and Local Civil Rule 81.1, in that there is
diversity of jurisdiction and plaintiff is claiming damages in excess
of $75,000, exclusive of interest and costs.

5.   This action may be removed pursuant to 28 U.S.C. §1441(b), in that this Court has original jurisdiction of this action and Broan is not a citizen of New York.

6.   Plaintiff served the summons and complaint, annexed hereto as Exhibit A, on defendants less than 30 days from the date of this notice.

Dated:  New York, New York
        April 11, 2005

                                    LYNCH ROWIN LLP

                              By: _____
                                    Thomas P. Lynch (TPL4365)

                                    630 Third Avenue
                                    New York, New York  10017
                                    (212) 682-4001
                                    Attorneys for Defendants Broan

TO:  MICHAEL M. MILNER, ESQ.
     TESE & MILNER
     Attorneys for Plaintiffs
     Seneca Insurance Company and
     Surfside Condominium Association
     One Minetta Lane
     New York, New York 10012
     (212)-475-3673

2

f\p\broan\Seneca.Rule7stmt

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------x

SENECA INSURANCE COMPANY as subrogee of :  05 CV
SURFSIDE CONDOMINIUM ASSOCIATION,
                                         :
                          Plaintiffs,    :    RULE 7.1 STATEMENT
                                         :
          -against-                      :
                                         :
BROAN-NUTONE, LLC                        :
                          Defendant.     :
-----------------------------------------x

     Pursuant to Federal Rule of Civil Procedure 7.1 and to enable

District Judges and Magistrate Judges of the Court to evaluate possible

disqualification or recusal, the undersigned counsel for defendant

Broan-Nutone (a private non-governmental party) certifies that Nortek,

Inc., 50 Kennedy Plaza, Providence, Rhode Island 02903, is the parent

company of Broan-Nutone.

Dated:  New York, New York
        April 11, 2005


                              LYNCH ROWIN LLP

                              By: _____
                                  Thomas P. Lynch (TPL4365)

                              630 Third Avenue
                              New York, New York  10017
                              (212) 682-4001
                              Attorneys for Defendants Broan


     TO:  MICHAEL M. MILNER, ESQ.
          TESE & MILNER
          Attorneys for Plaintiffs
          Seneca Insurance Company and
          Surfside Condominium Association
          One Minetta Lane

New York, New York 10012
(212)-475-3673

2

f\p\broan\Seneca.as1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
SENECA INSURANCE COMPANY as subrogee of :    05 CV
SURFSIDE CONDOMINIUM ASSOCIATION,

                 Plaintiffs,      :

                               :

       -against-               AFFIDAVIT OF SERVICE

BROAN-NUTONE, LLC            :

                   Defendant.    :
------------------------------------------x

STATE OF NEW YORK    )
                    )   ss.:
COUNTY OF NEW YORK   )

      The UNDERSIGNED, who is not a party to this action/ proceeding, being duly sworn, being over the age of 18 years and, having an address in care of Lynch Rowin LLP, 630 Third Avenue, New York, New York 10017, says:

      On April 11, 2005, in the manner hereinafter described, true copy(ies) of the following paper(s) were served on respective attorneys for the parties at the addresses hereinafter listed:

      [ x ]    By Regular Mail

DESCRIPTION OF PAPERS (and QUANTITY where more than one copy):

Civil Cover Sheet, Notice of Removal and Rule 7.1 Statement

ATTORNEYS and PARTIES SERVED:

      TESE & MILNER
      Attorneys for Defendants
      One Minetta Lane
      New York, New York   10012
      (212)-475-3673

Sworn to before me on the
11th day of April, 2005.

_____          _____
     Notary Public                 Meryl Weiner

    PATRICK J. COMERFORD
   Notary Public, State of New York
       No. 02CO5076476
    Qualified in New York County
  Commission Expires April 21, 2007

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
SENECA INSURANCE COMPANY as subrogee of    05 CV 3687
SURFSIDE CONDOMINIUM ASSOCIATION,       :
                                           ANSWER (AKH)
                    Plaintiffs,         :

        -against-                       :

BROAN-NUTONE, LLC,                      :

                    Defendant.          :

----------------------------------------X



        Defendant, Broan-Nutone, LLC ("Broan-Nutone"), by its attorneys,
Lynch Rowin LLP, as and for its answer to plaintiff's complaint states
as follows:

        FACTS COMMON TO ALL CAUSES OF ACTION (CLAIMS FOR RELIEF)

        1.    Denies knowledge or information sufficient to form a belief
as to the truth of the allegations in paragraph 1.

        2.    Denies knowledge or information sufficient to form a belief
as to the truth of the allegations in paragraph 2.

        3.    Admits the allegations in paragraph 3.

        4.    Denies the allegations in paragraph 4, except admits that
Broan-Nutone manufactures, among other things, exhaust fans.

        5.    Denies the allegations in paragraph 5, except admits that
Broan-Nutone manufactures, among other things, exhaust fans.

        6.    Denies knowledge or information sufficient to form a belief
as to the truth of the allegations in paragraph 6.

        7.    Denies knowledge or information sufficient to form a belief
as to the truth of the allegations in paragraph 7.

                                1

8.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8.

9.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9.

10.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10.

11.    Denies the allegations in paragraph 11.

12.    Denies the allegations in paragraph 12.

13.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13.

14.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14.

15.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15.

16.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16.

17.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17.

18.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18.

FIRST CAUSE OF ACTION (CLAIM FOR RELIEF)

19.    Paragraphs 1 through 18 are re-alleged.

20.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20.

21.    Denies the allegations in paragraph 21.

2

22.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22.

23.    Denies the allegations in paragraph 23.

SECOND CAUSE OF ACTION (CLAIM FOR RELIEF)

24.    Paragraphs 1 through 23 are re-alleged.

25.    Denies the allegations of paragraph 25.

26.    Denies the allegations of paragraph 26.

27.    Denies the allegations of paragraph 27.

28.    Denies the allegations of paragraph 28.

29.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29.

30.    Denies the allegations in paragraph 30.

31.    Denies the allegations in paragraph 31.

32.    Denies the allegations in paragraph 32.

THIRD CAUSE OF ACTION (CLAIM FOR RELIEF)

33.    Paragraphs 1 through 32 are re-alleged.

34.    Denies the allegations in paragraph 34.

35.    Denies the allegations in paragraph 35.

36.    Denies the allegations in paragraph 36.

37.    Denies the allegations in paragraph 37.

38.    Denies the allegations in paragraph 38.

39.    Denies the allegations in paragraph 39.

40.    Denies the allegations in paragraph 40.

41.    Denies the allegations in paragraph 41.

FIRST AFFIRMATIVE DEFENSE

42.    The complaint fails to state a claim upon which relief can be granted.

SECOND AFFIRMATIVE DEFENSE

43.    The amount of any damages otherwise recoverable by plaintiffs should be diminished in the proportion which the culpable conduct attributable to each plaintiff bears to the culpable conduct which caused the damages.

THIRD AFFIRMATIVE DEFENSE

44.    The losses or damages alleged to have been suffered by plaintiffs were caused or contributed to by the comparative fault, negligence and lack of care of the plaintiff or other individuals for whose conduct Broan-Nutone is not responsible.

FOURTH AFFIRMATIVE DEFENSE

45.    The losses or damages alleged to have been suffered by plaintiffs were caused or contributed to by the fault, negligence and lack of care of persons and/or individuals whom plaintiffs have not named as parties to this action and who, in accordance with the provisions of Article 16 of the New York State Civil Practice Law and Rules, plaintiff should have named as parties.

FIFTH AFFIRMATIVE DEFENSE

46.    The losses or damages alleged to have been suffered by plaintiffs were the result of plaintiff's assumption of the risk of such injuries, losses or damages.

### SIXTH AFFIRMATIVE DEFENSE

47.   Plaintiffs' causes of action are barred in whole or in part by the applicable statutes of limitations.

### SEVENTH AFFIRMATIVE DEFENSE

48.   Plaintiffs' claims are barred in whole or diminished in part in an amount fairly allocable to any party with which plaintiffs have settled or may settle.

### EIGHTH AFFIRMATIVE DEFENSE

49.   The limitations on joint and several liability set forth in New York State CPLR Article 16 are applicable to this action.

### NINTH AFFIRMATIVE DEFENSE

50.   Plaintiffs have failed to name a necessary party to the within action.

### TENTH AFFIRMATIVE DEFENSE

51.   In the event that some or all of the plaintiffs' alleged economic losses were or will be replaced or indemnified from collateral sources, any award for economic loss should be reduced thereby.

### ELEVENTH AFFIRMATIVE DEFENSE

52.   Pursuant to 28 U.S.C. 1404(a), plaintiffs failed to choose a proper venue since the events and circumstances that gave rise to this case occurred in West Yarmouth, Massachusetts.

53.   Pursuant to 28 U.S.C. 1404(a), plaintiffs failed to choose a proper venue because the location of the property allegedly damaged by fire, the location of the parties and witnesses, and the location of the public records and public officials detailing the fire and alleged damage are all located in West Yarmouth, Massachusetts.

54.  Pursuant to 28 U.S.C. 1404(a), plaintiffs also failed to choose a proper venue for the convenience of the parties and witnesses; the ease of access to the sources of proof; the availability of subpoena power over unwilling witnesses; the cost of obtaining the presence of witnesses; the problems involved in trying this case expeditiously and inexpensively and in the interests of justice.

<u>TWELFTH AFFIRMATIVE DEFENSE</u>

55.  Pursuant to 28 U.S.C. 1406, plaintiffs failed to chose a proper venue for this matter.

WHEREFORE, defendant Broan-Nutone demands judgment (a) dismissing the complaint, (b) awarding Broan-Nutone costs and disbursements of this action, including attorneys fees, and (c) granting Broan-Nutone such other relief as is just and proper.

Date:    New York, New York
         April 14, 2005

                              LYNCH ROWIN LLP

                              By: _____
                                   Thomas P. Lynch (4365)

                              Attorneys for Defendant, Broan-Nutone
                              630 Third Avenue
                              New York, New York  10017
                              (212)-682-4001

TO:  TESE & MILNER
     Attorneys for Plaintiffs
     One Minetta Lane
     New York, New York 10012
     (212)-475-3673

p/broan/seneca.nd

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
SENECA INSURANCE COMPANY as subrogee of    05 CV 3687
SURFSIDE CONDOMINIUM ASSOCIATION,       :
                                           NOTICE OF DEPOSITION
                        Plaintiffs,     :

            -against-                   :

BROAN-NUTONE, LLC,                      :

                        Defendant.      :

----------------------------------------X

PLEASE TAKE NOTICE that, pursuant to FRCP 30 AND 34, on the date and time set forth below, defendant, Broan-Nutone, LLC, by its attorneys, Lynch Rowin LLP, will depose representatives and/or witnesses of plaintiffs, Seneca Insurance Company and Surfside Condominium Association, concerning the issues alleged in plaintiffs' complaint. The deponent is required, pursuant to Rule 34, to produce at the deposition all relevant books, records and papers which may be used by him at the deposition to refresh his or her recollection.

The depositions will be taken at the office of Lynch Rowin LLP, 630 Third Avenue, New York, New York, 10017, as follows:

| Name of Deponent | Date | Time |
|---|---|---|
| Seneca Insurance | June 15, 2005 | 10:00AM |
| Surfside Condominium | June 15, 2005 | 2:00PM |

1

Date:     New York, New York
          April 14, 2005

                              LYNCH ROWIN LLP

                              By: _____

                                  Thomas P. Lynch (4365)

                              Attorneys for Defendant, Broan-Nutone
                              630 Third Avenue
                              New York, New York   10017
                              (212)-682-4001

TO:    TESE & MILNER
       Attorneys for Plaintiffs
       One Minetta Lane
       New York, New York 10012
       (212)-475-3673

2

f/p\broan\Seneca.as2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
SENECA INSURANCE COMPANY as subrogee of :     05 CV 3687
SURFSIDE CONDOMINIUM ASSOCIATION,
                                        :
                          Plaintiffs,
                                        :
           -against-                          AFFIDAVIT OF SERVICE
                                        :
BROAN-NUTONE, LLC
                                        :
                          Defendant.
----------------------------------------x

STATE OF NEW YORK   )
                    )  ss.:
COUNTY OF NEW YORK  )

     The UNDERSIGNED, who is not a party to this action/ proceeding,
being duly sworn, being over the age of 18 years and, having an address
in care of Lynch Rowin LLP, 630 Third Avenue, New York, New York 10017,
says:

     On April 15, 2005, in the manner hereinafter described, true
copy(ies) of the following paper(s) were served on respective attorneys
for the parties at the addresses hereinafter listed:

     [ x ]   By Regular Mail

DESCRIPTION OF PAPERS (and QUANTITY where more than one copy):

ANSWER, NOTICE OF DEPOSITION, JUDGES' RULES
AND STAMPED NOTICE OF REMOVAL

ATTORNEYS and PARTIES SERVED:

     TESE & MILNER
     Attorneys for Defendants
     One Minetta Lane
     New York, New York  10012
     (212)-475-3673

Sworn to before me on the
15th day of April, 2005.


_____                  _____
     Notary Public                            Meryl Weiner

     PATRICK J. COMERFORD
   Notary Public, State of New York
       No. 02CO5076476
   Qualified in New York County
Commission Expires April 21, 2007

05 CV 3687

**UNITED STATES DISTRICT COURT SOUTHERN
DISTRICT OF NEW YORK**

SENECA INSURANCE COMPANY as subrogee of
SURFSIDE CONDOMINIUM ASSOCIATION,

Plaintiffs,

-against-

BROAN-NUTONE, LLC

Defendant.

**NOTICE OF MOTION FOR
TRANSFER OF VENUE AND
AFFIDAVIT OF THOMAS P. LYNCH**

**LYNCH ROWIN LLP**
**630 Third Avenue**
**New York, NY 10017**
**(212) 682-4001**

**Attorneys for:**

**DEFENDANTS BROAN-NUTONE, LLC**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

SENECA INSURANCE COMPANY as subrogee of   :     05 CV 3687   **ECF**
SURFSIDE CONDOMINIUM ASSOCIATION,

                          : 

             Plaintiffs, 

                          :

     -against-                   :      NOTICE OF MOTION
                          :      FOR TRANSFER OF
                                     VENUE
BROAN-NUTONE, LLC                 :

           Defendant.         :

------------------------------------------------------------------------x

| | |
|---|---|
| Motion by: | Defendant Broan-Nutone, LLC ("Broan-Nutone") |
| Date, Time and Place of Hearing: | May 24, 2005 before the Hon. Alvin K. Hellerstein, U.S.D.J., Southern District of New York, United States Courthouse, 500 Pearl Street, New York, New York, 10007. |
| Supporting Papers: | Affidavit of Thomas P. Lynch, Esq., sworn to on May 10, 2005, the exhibits annexed thereto, and Broan-Nutone's Memorandum of Law. |
| Relief Demanded: | A.    An order pursuant to 28 U.S.C. 1404(a) transferring this case from United States District Court for the Southern District of New York to the United States District Court for the District of Massachusetts. |
| | B.    The costs of this motion; and |
| | C.    Such other relief as is just and proper. |
| Nature of the Action: | Product Liability/Property Damage. |
| Answering Papers: | Pursuant to the FRCP and the Local Rules. |

Dated:  New York, New York
        May 12, 2005

                              LYNCH ROWIN LLP

                              By:_____
                                  Thomas P. Lynch (TPL4365)

                              630 Third Avenue
                              New York, New York  10017
                              (212) 682-4001
                              Attorneys for Defendant, Broan-Nutone LLC

TO:    MICHAEL M. MILNER, ESQ.
       TESE & MILNER
       Attorneys for Plaintiffs
       Seneca Insurance Company and
       Surfside Condominium Association
       One Minetta Lane
       New York, New York 10012
       (212)-475-3673

TABLE OF CONTENTS:
**AFFIDAVIT OF THOMAS P. LYNCH**

PRELIMINARY STATEMENT.................................................................... 1

PROCEDURAL HISTORY....................................................................... 2

FACTUAL BACKGROUND....................................................................... 2

ARGUMENT........................................................................................ 3

      A.    Parties and Witnesses................................................. 4

      B.    Location and Relative Ease of Access
           To Sources of Proof.................................................... 7

      C.    Locus of Operative Facts............................................ 8

      D.    Subpoena Power......................................................... 9

      E.    Costs........................................................................... 9

      F.    Familiarity With Governing Law............................... 10

      G.    Weight Given to Plaintiff's
           Choice of Forum........................................................ 10

      H.    Additional Parties and Third-Party Actions............. 10

CONCLUSION...................................................................................... 11

TABLE OF CONTENTS:
**EXHIBITS to LYNCH AFFIDAVIT**

Exhibit A: Seneca Insurance Company's Summons and Complaint....... 2

Exhibit B: Broan-Nutone, LLC's Notice of Removal................................ 2

Exhibit C: Broan-Nutone, LLC's Answer................................................... 2

Exhibit D: Engineering and Fire Investigation's Report............................ 5

Exhibit E: Industrial Service & Engineering, Inc.'s Report........................ 5

Exhibit F: Lucier Claim Service's Property Damage Estimate................. 6

Exhibit G: Whalen Restoration Services, Inc. Remediation Estimate........ 6

Exhibit H: Yarmouth Fire Department Report.......................................... 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------x

SENECA INSURANCE COMPANY as subrogee of          :     05 CV 3687
SURFSIDE CONDOMINIUM ASSOCIATION,

                                     Plaintiffs,                :

             -against-                                          :     AFFIDAVIT OF
                                                               :     THOMAS P. LYNCH
BROAN-NUTONE, LLC

                                     Defendant.                :

--------------------------------------------------------------------------x

STATE OF NEW YORK          )
                           )  ss.:
COUNTY OF NEW YORK         )

       THOMAS P. LYNCH, being duly sworn, deposes and says:

       1.     I am a member of the law firm of Lynch Rowin LLP, counsel for defendant

Broan-Nutone, Inc. ("Broan-Nutone") I submit this affidavit in support of defendants' motion

for an order pursuant to 28 U.S.C. 1404(a) transferring venue of this action from the United

States District Court for the Southern District of New York to the United States District Court

for the District of Massachusetts.

<u>Preliminary Statement</u>

       2.     This is a products liability litigation arising from a building fire that occurred in

Massachusetts. Plaintiffs claim that an exhaust fan, allegedly manufactured by Broan-Nutone,

caused the fire. As shown fully below, all of the facts which give rise to this claim happened in

Massachusetts. That is, the location of the fire, the parties, and all witnesses to the fire are all

in Massachusetts. Also, all public records and reports regarding the building, the fire and the

damage from the fire are located in Massachusetts.

       3.     In short, this action has no connection to New York, and the proper venue for this

case is the District of Massachusetts.

## Procedural History

4.      Plaintiff, Seneca Insurance Company ("Seneca"), brought this action against Broan-Nutone as subrogee on behalf of its insured, Surfside Condominium Association ("Surfside"). Seneca is a New York corporation with a principal place of business at 160 Water Street, New York, New York. Seneca filed suit in New York State Supreme Court, New York County, Index. No. 103660/05, based on its address. Seneca's Summons and Complaint is attached as Exhibit A. Broan-Nutone removed the case to this court on April 11, 2005. Broan-Nutone's "Notice of Removal" is attached as Exhibit B.

5.      Seneca's complaint alleged that a bathroom exhaust fan ("subject fan") caused a fire at its insured's premises on December 15, 2003. Seneca claimed Broan-Nutone manufactured the subject fan and that the subject fan was defective. Seneca further alleged that the fire had caused $197,244.59 in property damage.

6.      Broan-Nutone served its Answer on April 14, 2005. In its Answer, Broan-Nutone denied Seneca's claims and asserted affirmative defenses. In its answer, Broan-Nutone's Eleventh Affirmative Defense asserted that the venue of the case was improper and that the United States District Court for the District of Massachusetts was the proper venue. Broan-Nutone's Answer is attached as Exhibit C.

7.      To date, although there has been a limited exchange of documents between the parties, no pre-trial conference has been scheduled, no other discovery has been exchanged and no depositions have been scheduled or held.

## Factual Background

8.      Plaintiffs claim that the subject fan was responsible for a fire that occurred at the Colonial Candle store in West Yarmouth, Massachusetts on December 15, 2003. The store, located at 585 Main Street in West Yarmouth, was owned by plaintiff subrogor, Surfside Condominium Association ("Surfside"). Surfside is a Massachusetts corporation with a principal place of business at the same address, 585 Main Street, in West Yarmouth.

2

9.    In response to Surfside's fire damage claim, Seneca hired four outside companies to investigate and adjust the claim. All four are Massachusetts companies based in that state. Engineering and Fire Investigations ("EFI"), who investigated and inspected the fire scene two days after the fire, are located in North Dartmouth, Massachusetts. Industrial Services & Engineering, Inc. ("ISE"), Seneca's probable expert, who examined and inspected the subject fan after the fire, is based in Attleboro, Massachusetts. Lucier Claim Service ("Lucier"), the agency that inspected the site and was assigned by Seneca to investigate and adjust the claim, was based in East Bridgewater, Massachusetts. Lastly, Whalen Restoration Services, Inc., the company hired by Seneca to remediate the site, is based in South Dennis, Massachusetts.

10.    Moreover, on the day of the fire, the Yarmouth Fire Department responded to the scene. The Yarmouth Fire Department report indicated that the fire alarm sounded at 2:07 in the afternoon on December 15, 2003. The Yarmouth Fire Department conducted a cause and origin investigation and issued a report which seemed to indicate that the fire was accidental due to excessive heat from a bathroom ventilation fan.

<u>Argument</u>

11.    As set forth in the accompanying Memorandum of Law, in considering a motion to transfer under 28 U.S.C. 1404(a), the courts look at two factors: First, is the proposed Transferee District Court an appropriate venue for the claim. If the proposed Transferee Court is appropriate, then the Transferor Court makes the subsequent determination: Does the transfer serve the convenience of witnesses and the interests of justice.

12.    Pursuant to 28 U.S.C. 1391(a), Massachusetts would have been an appropriate venue, in the first instance, because the Massachusetts District Court would have had diversity jurisdiction and "a substantial part of the events . . . giving rise to the claim occurred" in Massachusetts. In fact, in this case, all of the relevant and material events that gave rise to the claim occurred in Massachusetts.

3

13.    In making the second determination, this Court has consistently considered several factors, including the convenience of witnesses and the parties, the location of the documents and records relevant to the litigation and the accessability to same, the location of the operative facts, the availability of process to compel the attendance of unwilling witnesses, the relative means of the parties, the comparative familiarity of each district with the governing law, the weight accorded plaintiff's choice of forum, and judicial economy and the interests of justice. See Broan-Nutone's Memorandum of Law, pp. 3-5.

A. Parties and Witnesses

14.    Seneca's sole basis for its choice of venue is its own corporate address. However, Seneca was merely an information clearinghouse for this claim. Any individual with actual knowledge of the events and facts involved in this case is located in Massachusetts and has no connection to New York.

15.    In its complaint, Seneca admits that its insured, Surfside, is a Massachusetts corporation with a principal place of business in Massachusetts. Seneca also admits that Broan-Nutone has no connection to New York and is a Delaware corporation with a principal place of business in Wisconsin.

16.    Almost all of the potential party and non-party witnesses are located in Massachusetts. All of the individual owners, employees, customers, adjusters, investigators, experts and public servants who have actual and independent knowledge of the building, construction, fire, fire investigation and fire damage are located in Massachusetts.

17.    Plaintiff subrogor, Surfside, is located at the fire scene address in Massachusetts. Surfside's owners, managers, trustees and employees all reside in Massachusetts. As specifically indicated in EFI's investigative report, dated December 18, 2003, co-owner and trustee of Surfside, Dick Regent, can be expect testify regarding the building, Colonial Candle's alteration and construction in 1997, the fire, the fire investigation and fire damage. Regent, among others

4

associated and employed with Colonial Candle, is a potential witness. EFI's Investigation is attached as Exhibit D.

18.    The lessee of the building in question, Colonial Candle Corporation ("Colonial Candle") is a Massachusetts corporation with a principal place of business in Massachusetts. The owners, managers and employees of Colonial Candle are all located in Massachusetts. Specifically, as indicated in EFI's investigative report, Manager Wayne Johnson can be expected to testify as to the operation, maintenance and cleaning procedures of the company.  In addition, he can be expected to testify regarding the construction, remodeling, installation and completion of the 1997 "build-out" that created the bathroom structure where the fire allegedly occurred.

19.    Colonial Candle employees Mabel Mel and Melissa Hayes, both of whom used the subject bathroom and exhaust fan within hours of the fire will be necessary witnesses for the defense of the case. In addition, customers in the store that day, suppliers making deliveries that day and other employees working that day are all potential witnesses. See Exhibit D.

20.    Industrial Services & Engineering, Inc. ("ISE"), Seneca's probable expert, who examined and inspected the subject fan after the fire, is located at 15 Extension Street, Attleboro Industrial Park, Attleboro, Massachusetts 02703. ISE had Thomas Zarek and John P. Certuse examine, inspect and test the subject exhaust fans to determine the cause and origin of the fire. Mr. Zarek and Mr. Certuse are potential witnesses both to determine the details of the tests they conducted and their results, but also to determine if their tests had any other effects, including the supervised and proper handling of the fans and their chain of custody.  ISE's report is attached as Exhibit E.

21.    In addition, ISE's report concluded that "(t)he source of the fire within this device appears to be due to a connection failure between the light and supply wiring that came loose over the period of use, and caused a high resistance connection, localized heating and the ensuing fire." See Exhibit E.  ISE has described a possible negligent installation and not a

5

defective product. Accordingly, the construction and electrician providers for Colonial Candle's 1997 "build-out" will have to deposed and possibly brought into this case. The construction and electrician companies used by Colonial Candle for this 1997 project are, most likely, Massachusetts companies with managers, employees, and sub-contractors based in Massachusetts.

22.    Lucier Claim Service ("Lucier"), the agency that inspected the site and who Seneca assigned to investigate and adjust the claim, was based in East Bridgewater, Massachusetts. Wayne Levasseur, a Senior Property Adjuster, who handled this claim exclusively, also resides in Massachusetts. Mr. Levasseur can be expected to testify about his investigation, documentation and clean-up of the fire scene and fire damage. His testimony is necessary to establish and test plaintiffs' theories of both liability and damages. Lucier's Property Damage Estimate records are attached as Exhibit F.

23.    Whalen Restoration Services, Inc. ("Whalen"), the company hired by Seneca to remediate the site, is located at 22 American Way, South Dennis, Massachusetts 02660. Dennis P. McLaughlin, the Chief Estimator for Whalen, will be a necessary witness since he conducted and supervised the clean-up of the fire scene. Whalen's Fire, Smoke, Soot, Water and Mold Remediation report is attached as Exhibit G.

24.    Engineering and Fire Investigations ("EFI"), who investigated and inspected the fire scene two days after the fire, are located at 634 State Road, Suite K, North Dartmouth, Massachusetts 02747. Jeffrey K. Lowe, the Investigator who handled this fire and completed the report, will be a necessary witness since he went to the scene within days of the fire and inspected the scene, the subject fan, and interviewed the eyewitnesses. See Exhibit B.

25.    According to EFI's report, Yarmouth Fire Department responded to the fire. The Yarmouth Fire Department conducted a cause and origin investigation and found the fire to be accidental. Moreover, the Yarmouth Fire Department conducted salvage and overhaul operation after the fire was extinguished. The Fire Chief, Cause and Origin Team Member and

6

responding firefighters are all potential witnesses to the burn patterns present, the fire damage and the bases for the cause and origin opinion. The Yarmouth Fire Department report is attached as Exhibit H.

26.    Based on the above, the District of Massachusetts is the proper venue for this action for the convenience of witnesses. In comparison, the only connection to New York is the Seneca employee who handled the claim, Ms. Donna Moore. Ms. Moore simply collected first-hand accounts from others who were on-site in Massachusetts. Neither she, nor anyone else at Seneca, has actual personal knowledge of the building, the fire, the subject fans, or the fire investigation.

B. Location and Relative Ease of Access to Sources of Proof

27.    The fire scene, the subject building, subject fans and recovered debris from the fire are all located in Massachusetts. In addition, all of the paper documentation regarding the leases, construction, businesses, fire, fire investigations, fire damage and clean-up are located in Massachusetts.

28.    The business records of both Surfside, and its tenant, Colonial Candle, are located at the fire scene address in Massachusetts. Surfside's leases and contracts with Colonial Candle, as well as its invoices, correspondence, contracts, inspections, and documents relating to both the building and Colonial Candle's 1997 "build-out," are in Massachusetts. In addition, Colonial Candle's maintenance and cleaning records for the subject bathroom, as well as their correspondence, contracts, invoices, punch-list, construction plans, inspections and building records from the 1997 "build-out" are located in Massachusetts. Lastly, Colonial Candle's customer records/receipts, delivery invoices/receipts and payroll/attendance records, needed to obtain a list of other possible witnesses who were in the location and bathrooms on the day of the fire and before the day of the fire, are also in Massachusetts.

7

29.     Colonial Candle's construction and electrician companies used for this 1997 project are Massachusetts companies. The invoices, correspondence, plans, drawings, punchlist, supply lists, sub-contractors and other construction and installation documents from the 1997 Colonial Candle build-out will be necessary to determine the method, materials and process by which the fans were installed. Moreover, the building permits, inspections, certificate of occupancy and approvals from the 1997 "build-out" are located in the Yarmouth Town Offices and/or Building Department.

30.     Seneca's outside vendors, their employees and records are all located in Massachusetts. Seneca's engineering expert, ISE, is located in Attleboro, Massachusetts. ISE's inspection, investigation and testing notes are located in Massachusetts. Most important, the subject fans are located at their offices in Attleboro, Massachusetts. Seneca's Claim Adjuster, Lucier, is in East Bridgewater, Massachusetts. The case file, investigator's notes, investigators interviews, recorded statements, pictures, videotapes, and documents related to the loss are all in Massachusetts. Seneca's clean-up company, Whalen, is located in South Dennis, Massachusetts. Whalen's records for fire, smoke, soot, water and mold remediation are located in Massachusetts. Whalen's records regarding the details of the removal of debris are located in Massachusetts also. Seneca's Investigation Team, EFI, are located in North Dartmouth, Massachusetts. The case file, investigator's notes, investigators interviews, recorded statements, pictures, videotapes, and documents related to the loss are all in Massachusetts.

31.     Lastly, the records and reports of the Yarmouth Fire Department that determined the details of the firefighting procedure used, the burn patterns present, the fire damage and the bases for cause and origin opinion are located in Massachusetts.

C. Locus of Operative Facts

32.     The structure where the fire occurred is located in Massachusetts. The owner/lessor/subrogor and the lessee are both located in that building. The actual subject fans and all other recovered debris from the fire are located in Massachusetts. The construction

company who installed the subject fan is, most likely, located in Massachusetts. Lastly, all public records related to the building and the fire are located in Massachusetts.

33.    In addition, the four companies that Seneca hired to investigate, inspect, test and document the fire, the cause and origin of the fire, the alleged defects in the fan and the property damage caused by the fire are all located and based in Massachusetts.

D.  Subpoena Power

34.    Many, if not most, of the witnesses described above are not employees of either plaintiff, Seneca or Surfside. Consequently, plaintiffs will not have any power, leverage or responsibility to produce these witnesses nor their records for trial.

35.    Without subpoena power, many of these witnesses may object to Broan-Nutone's subpoenas due to the time, distance and cost of travel between Cape Cod, Massachusetts and New York City. Consequently, unless this matter is transferred to Massachusetts, then, Broan-Nutone will be unable to subpoena these witnesses and their records for trial.

E.  Costs

36.    Both plaintiff and defendants are corporations and have the means to litigate this matter in either Massachusetts or New York. However, the cost of travel between the two states for the numerous depositions and inspections would generate substantial and necessary travel costs and time charges.

37.    In considering the location of the relevant documents and physical evidence, the travel from Wisconsin and New York to Massachusetts is needless and senseless. All the relevant and material evidence lies in Massachusetts. Instead of uprooting the evidence, venue should be placed where the evidence lies.

38.    All the operative facts, witnesses, non-party witnesses, subject building, subject fans, subrogor and subrogor's tenant are located in Massachusetts. Retaining New York as an artificial venue will be financially burdensome for a $197,244 property damage claim, instead of placing venue in the heart of the evidence, in Massachusetts.

9

F. Familiarity With Governing Law

39.    Both United States District Courts, for the Southern District of New York and the District of Massachusetts are familiar with the subrogation and product liability issues involved in this case and would competently handle the trial of this matter.

40.    However, this is a diversity action where Massachusetts law will govern and be applied. Since the District Court of Massachusetts routinely handles diversity actions where Massachusetts law governs and is applied, the District Court of Massachusetts is better suited than the United States District Court for the Southern District on New York to apply and interpret Massachusetts law.

G. Weight Given to Plaintiff's Choice of Forum

41.    There is no material connection or significant contact between New York and the underlying facts or events giving rise to this litigation. Seneca's corporate residence, as it admits, is the sole reason the case was brought in New York and is insufficient. All the operative facts and events that give rise to this suit occurred in Massachusetts. Accordingly, since there is little, if any, connection to New York, the balancing of factors considering the substantial connections to Massachusetts outweigh Seneca's choice of New York as the forum for this action.

H. Additional Parties and Third-Party Actions

42.    This action involves three named parties and six other entities, who are potential additional parties. Seven of the nine parties/entities are located and based in Massachusetts. The practical logistics and cost involved in scheduling the testimony and production of witnesses and documents from these out-of-state entities makes New York an unduly burdensome place for trial and Massachusetts the proper resolution of venue.

43.    Moreover, when Broan-Nutone attempts to bring any of the Massachusetts-based entities described above into this case, it is most likely that none of these entities will be subject to New York jurisdiction. Broan-Nutone would then be forced to bring separate local actions in Massachusetts while this case was pending in New York.

Conclusion

44.    This case should be transferred from the Southern District of New York to District of Massachusetts for the convenience of witnesses and the interests of justice, since there is no material connection between the litigation and the Southern District of New York.


_____
THOMAS P. LYNCH


Sworn to before me this
12th day of May, 2005


_____
Notary Public

PATRICK J. COMERFORD
Notary Public, State of New York
No. 02CO5076476
Qualified in New York County
Commission Expires April 21, 2007

Exhibit A

NEW YORK
COUNTY CLERK'S OFFICE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

_____ X    Date Filed:

MAR 1 6 2005

SENECA INSURANCE COMPANY as
subrogee of SURFSIDE CONDOMINIUM
ASSOCIATION,

                          Plaintiff,

   -against-

BROAN-NUTONE, LLC

                    Defendant.
_____ X

**NOT COMPARED
WITH COPY FILED**

Index No.  103660/05

**SUMMONS**

Plaintiffs address is 160
Water Street, New York,
New York.

Venue is based on Plaintiff's
address.

TO THE ABOVE NAMED DEFENDANT:

      **YOU ARE HEREBY SUMMONED** to answer the Complaint of the plaintiff,
SENECA INSURANCE COMPANY as subrogee of SURFSIDE CONDOMINIUM
ASSOCIATION, a copy of which is herewith annexed as served upon you and to serve
copies of your Answer upon the undersigned attorney for the plaintiff, Tese & Milner, at
the address stated below.

      If this Summons was personally served upon you in the State of New York, the
Answer must be served within twenty (20) days after such service of the Summons and
Complaint, exclusive of the date of such service. If the Summons was not personally
delivered to you within the State of New York, the Answer must be served within thirty
(30) days after service of the Summons is complete as provided by law.

      If you do not serve an Answer to the attached Complaint within the applicable
time limitations stated above, a judgment may be entered against you, by default, for the
relief demanded in the Complaint.

Dated: New York, New York
       March 16, 2005

                              Yours, etc.,

                              _____
                              MICHAEL M. MILNER, ESQ.
                              TESE & MILNER
                              Attorneys for Plaintiff

SENECA INSURANCE COMPANY
One Minetta Lane
New York, New York 10012
(212) 475-3673

To:

BROAN-NUTONE, LLC
926 West State Street
Hartford, WI 53027

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

NEW YORK
COUNTY CLERK'S OFFICE

MAR 1 6 2005

NOT COMPARED
WITH COPY FILED

-------------------------------------------------- X    Date Filed:

SENECA INSURANCE COMPANY as
subrogee of SURFSIDE CONDOMINIUM
ASSOCIATION,

Index No. ~~~~~~ 103660 /05

                                    Plaintiff,

            -against-                                    **COMPLAINT**

BROAN-NUTONE, LLC

                        Defendant.
-------------------------------------------------- X

        Plaintiff, by its attorneys, Tese & Milner, as and for its Complaint herein,

respectfully sets forth and alleges as follows:

                **FACTS COMMON TO ALL CAUSES OF ACTION**

1.        That at all times hereinafter mentioned, the plaintiff SENECA INSRUANCE

COMPANY as subrogee of SURFSIDE CONDOMINIUM ASSOCIATION INC.

("Seneca" or "plaintiff"), was and is an insurance company duly organized under the laws

of the State of New York, engaged in the transaction of business in the State of New

York, with its principal place of business in New York, New York.

2.        That at all times hereinafter mentioned the subrogor SURFSIDE

CONDOMINIUM ASSOCIATION ("Surfside" or "subrogor") was and is a

Massachusetts Corporation engaged in the business of real property

ownership/management, with its principal place of business at 585 Main Street, West

Yarmouth, Massachusetts.

3.        That at all times hereinafter mentioned the defendant BROAN-NUTONE, LLC

("Broan" or "defendant") was and is a Delaware Limited Liability Company, registered

in the state of Wisconsin, with its principal place of business at 926 West State Street, Hartford, Wisconsin 53027.

4.    That at all times hereinafter mentioned, Defendant Broan was and is engaged in the business of manufacturing, selling, distributing and delivering electrical equipment, fans, exhaust fans and other electrical products, and more particularly a certain exhaust fan assembly known as a Broan-Nutone Exhaust Fan, model no. 657, built in 1997.

5.    That at all times hereinafter mentioned, Defendant Broan's products entered the stream of commerce in, among other places, the state of New York.

6.    Upon information and belief, prior to July 15, 2003, Defendant Broan, directly or through a distributor or agent, sold or delivered to Surfside, for good and valuable consideration, the Broan-Nutone Exhaust Fan, model no. 657.

7.    Upon information and belief, prior to July 15, 2003, Defendant Broan, its agents, servants and/or employees, designed and manufactured the Broan-Nutone Exhaust Fan bearing model no. 657 and filed and secured patents thereon.

8.    Prior to July 15, 2003, Defendant Broan sold and delivered its Broan-Nutone Exhaust Fan bearing model no. 657 to a retail outlet, to be used by the general public and more particularly, subrogor Surfside.

9.    Prior to July 15, 2003, the subrogor Surfside had installed, at its premises, the Broan-Nutone Exhaust Fan bearing model no. 657, for the use, need, purpose, and service of Surfside, its agents, servants, invitees and employees.

10.    On or about July 15, 2003, a fire occurred at the premises occupied by subrogor Surfside, which fire caused damage and harm to the subrogor's premises, property, equipment, inventory, goods and business.

2

11.    At the time of the fire, the Broan-Nutone Exhaust Fan at the subrogor's premises was being used for the purpose and in the manner normally intended.

12.    The Broan-Nutone Exhaust Fan was intended to and did reach subrogor Surfside without material modification.

13.    At all times mentioned herein, Plaintiff Seneca issued an insurance policy to plaintiff's subrogor Surfside insuring the premises against property damage and related expenses.

14.    Under the contract of insurance between Seneca and Surfside, Seneca was and is obligated to pay claims submitted for damage to the real and personal property at the premises.

15.    As a result of the July 15, 2003 fire, Plaintiff's subrogor Surfside sustained extensive financial damages for the cost of repair, replacement, cleaning services, etc.

16.    Subsequent to the July 15, 2003 fire, Plaintiff's subrogor Surfside made an insurance claim to Seneca for the damages caused to the premises at 585 Main Street, West Yarmouth, Massachusetts by the fire.

17.    Under the contract of insurance between Seneca and its subrogor Surfside, Seneca paid to Surfside the amount of $197,244.59 on the insurance claim submitted for damages to the real and personal property of Surfside, as a result of the damages caused by the fire on July 15, 2003.

18.    As a result of Seneca's payment to its subrogor, Seneca is subrogated to the extent of its payment, to the rights of its subrogor, as against all individuals, entities and corporations responsible for the loss and the resulting damage.

3

## AS AND FOR A FIRST CAUSE OF ACTION

19.    Plaintiff Seneca repeats and realleges each and every allegation contained in paragraphs 1 through 18 of this Complaint.

20.    On July 15, 2003, a fire occurred at the premises occupied by subrogor Surfside located at 585 Main Street, West Yarmouth, Massachusetts.

21.    The fire was due solely to the negligence of Defendant Broan, its agents, servants and/or employees in manufacturing, designing, selling, installing, dealing in and delivering the improper and defective Broan-Nutone Exhaust Fan, and manufacturing, designing, selling, installing, dealing in and delivering exhaust fans which were inherently dangerous. Defendant Broan was also negligent in failing to take proper precautions and safeguards, and failing to see that the exhaust fans were fit, proper and reasonably safe for the use for which they were intended. Defendant Broan negligently failed to provide exhaust fans of marketable quality, or to make proper tests and negligently failed to warn the general public and more particularly the subrogor herein and others of the dangers inherent in the use of its exhaust fans. Defendant Broan negligently failed to test the exhaust fans in conditions under which they were to be used. Defendant Broan negligently failed to provide proper safeguards for their exhaust fans, or have the exhaust fans equipped with proper fuses and/or internal thermal overload devices. Defendant Broan negligently manufactured, sold, installed, and distributed their exhaust fan in a careless, dangerous and improper manner with latent defects not observable to the user. Defendant Broan was negligent in failing to construct and install the exhaust fan in conformity with accepted standards, practices and procedures, in creating and maintaining a nuisance, trap or hazard, in failing to warn, caution or apprise

4

users of the exhaust fans and especially subrogor Surfside, of the dangers and hazardous conditions which resulted and which caused subrogor's injuries.

22.    As a result of the fire, Surfside sustained damage to its premises, property, goods, equipment and inventory in the amount of $197,244.59.

23.  .    By reason of the foregoing, Plaintiff demands recovery against the defendant Broan in an amount not less than $197,244.59.

## AS AND FOR A SECOND CAUSE OF ACTION

24.    Plaintiff Seneca repeats and realleges each and every allegation contained in paragraphs 1 through 23 of this Complaint.

25.    At all times stated herein, defendant Broan, its agents, servants and/or employees expressly and impliedly warranted to the general public and to the plaintiff's subrogor that the Broan-Nutone Exhaust Fan bearing model no. 657 was safe for the use intended.

26.    The plaintiff's subrogor replied upon the warranties both expressed and implied and used the exhaust fan.

27.    Upon information and belief, defendant, its agents, servants and/or employees breached the warranties.  The Exhaust Fan was not fit for the purposes for which it was intended, was not of marketable quality, was unsafe for use, was of unsafe and defective design and dangerous, and contained latent defects.

28.    Plaintiff's subrogor had no knowledge of the falsity of the warrantees.

29.    On or about July 15, 2003, Surfside used the Broan-Nutone Exhaust Fan bearing model no. 657 at the premises it occupied at 585 Main Street, West Yarmouth, Massachusetts.

5

30.    Surfside relied upon the warranties and representations made by Broan and as a result of using the Broan-Nutone Exhaust Fan bearing model no. 657 suffered property damage.

31.    Surfside suffered damage which resulted from a fire on July 15, 2003 which fire was caused by the use of the Broan-Nutone Exhaust Fan bearing model no. 657.

32.    By reason of the foregoing breach of warranties and representations, Surfside sustained property damages in the amount of $197,244.59.

## AS AND FOR A THIRD CAUSE OF ACTION

33.    Plaintiff Seneca repeats and realleges each and every allegation contained in paragraphs 1 through 32 of this Complaint.

34.    Prior to July 15, 2003, the Broan-Nutone Exhaust Fan bearing model no. 657, manufactured by defendant Broan, was defectively designed and defective with respect to its mechanisms and appurtenances when it was shipped from the factory operated by Broan.

35.    This cause of action is instituted against the defendant under the doctrine of strict liability in tort.

36.    On or about July 15, 2003, Surfside was lawfully and properly using the Broan-Nutone Exhaust Fan bearing model no. 657 for the purpose and in the manner for which it was normally intended to be used.

37.    Use of the Broan-Nutone Exhaust Fan bearing model no. 657 caused the fire which resulted in damage to Surfside's property as alleged herein.

6

38.    Surfside did not discover the defect with respect to the design and manufacture of the Broan-Nutone Exhaust Fan bearing model no. 657, nor did Surfside perceive its danger.

39.    Surfside exercised reasonable care in the utilization of the exhaust fan and used it for the purpose for which it was intended.

40.    The defective design and the dangerous construction of the Broan-Nutone Exhaust Fan bearing model no. 657 was a substantial factor in causing the fire and the consequent damages to Surfside and its property.

41.    As a result of the fire, Surfside sustained damages in the amount of $197,244.59.

WHEREFORE, Plaintiff Seneca demands judgment against defendant Broan on all causes of action for an amount not less than $197,244.59 and for such other and further relief as this Court deems just and proper.

Dated: New York, New York
          March 16, 2005

Yours etc.

*Michael Milner*

MICHAEL M. MILNER
Tese & Milner
Attorneys for Plaintiff
One Minetta Lane
New York, New York 10012
(212) 475-3673

7

Exhibit B

f/p\broan\Seneca.Removal

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x

SENECA INSURANCE COMPANY as subrogee of :    05 CV
SURFSIDE CONDOMINIUM ASSOCIATION,

                Plaintiffs,                       :

     -against-                    **05 CV 3687** NOTICE OF REMOVAL

BROAN-NUTONE, LLC

*Judge Hellerstein*

                Defendant.                      :

                                     :
----------------------------------------x

     Defendant, Broan-Nutone LLC ("Broan-Nutone") by its attorneys,
Lynch Rowin LLP, hereby gives notice of the removal of this action from
the Supreme Court of the State of New York, County of New York, to the
United States District Court for the Southern District of New York and
allege as follows:

     1.    Plaintiff, Seneca Insurance Company ("Seneca"), is a New York
corporation with a principal place of business at 160 Water Street, New
York, New York 11214.

     2.    Plaintiff, Surfside Condominium Association ("Surfside"), is
a Massachusetts corporation with a principal place of business at 585
Main Street, West Yarmouth, Massachusetts.

     3.    Broan-Nutone LLC is a Delaware Corporation with a principal
place of business at 926 West State Street, Hartford, Wisconsin 53027.

     4.    This Court has jurisdiction over this action pursuant to 28
U.S.C. §1332 (a)(1), and Local Civil Rule 81.1, in that there is
diversity of jurisdiction and plaintiff is claiming damages in excess
of $75,000, exclusive of interest and costs.

5.    This action may be removed pursuant to 28 U.S.C. §1441(b), in that this Court has original jurisdiction of this action and Broan is not a citizen of New York.

6.    Plaintiff served the summons and complaint, annexed hereto as Exhibit A, on defendants less than 30 days from the date of this notice.

Dated:  New York, New York
        April 11, 2005


                            LYNCH ROWIN LLP


                            By: _____
                                Thomas P. Lynch (TPL4365)

                            630 Third Avenue
                            New York, New York 10017
                            (212) 682-4001
                            Attorneys for Defendants Broan


TO:   MICHAEL M. MILNER, ESQ.
      TESE & MILNER
      Attorneys for Plaintiffs
      Seneca Insurance Company and
      Surfside Condominium Association
      One Minetta Lane
      New York, New York 10012
      (212)-475-3673


2

Exhibit C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
SENECA INSURANCE COMPANY as subrogee of      05 CV 3687
SURFSIDE CONDOMINIUM ASSOCIATION,       :
                                             ANSWER (AKH)
                         Plaintiffs,    :

            -against-                    :

BROAN-NUTONE, LLC,                      :

                         Defendant.     :

----------------------------------------X

    Defendant, Broan-Nutone, LLC ("Broan-Nutone"), by its attorneys,
Lynch Rowin LLP, as and for its answer to plaintiff's complaint states
as follows:

        FACTS COMMON TO ALL CAUSES OF ACTION (CLAIMS FOR RELIEF)

    1.    Denies knowledge or information sufficient to form a belief
as to the truth of the allegations in paragraph 1.

    2.    Denies knowledge or information sufficient to form a belief
as to the truth of the allegations in paragraph 2.

    3.    Admits the allegations in paragraph 3.

    4.    Denies the allegations in paragraph 4, except admits that
Broan-Nutone manufactures, among other things, exhaust fans.

    5.    Denies the allegations in paragraph 5, except admits that
Broan-Nutone manufactures, among other things, exhaust fans.

    6.    Denies knowledge or information sufficient to form a belief
as to the truth of the allegations in paragraph 6.

    7.    Denies knowledge or information sufficient to form a belief
as to the truth of the allegations in paragraph 7.

                                    1

8.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8.

9.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9.

10.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10.

11.    Denies the allegations in paragraph 11.

12.    Denies the allegations in paragraph 12.

13.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13.

14.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14.

15.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15.

16.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16.

17.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17.

18.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18.

<u>FIRST CAUSE OF ACTION (CLAIM FOR RELIEF)</u>

19.    Paragraphs 1 through 18 are re-alleged.

20.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20.

21.    Denies the allegations in paragraph 21.

2

22.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22.

23.    Denies the allegations in paragraph 23.

SECOND CAUSE OF ACTION (CLAIM FOR RELIEF)

24.    Paragraphs 1 through 23 are re-alleged.

25.    Denies the allegations of paragraph 25.

26.    Denies the allegations of paragraph 26.

27.    Denies the allegations of paragraph 27.

28.    Denies the allegations of paragraph 28.

29.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29.

30.    Denies the allegations in paragraph 30.

31.    Denies the allegations in paragraph 31.

32.    Denies the allegations in paragraph 32.

THIRD CAUSE OF ACTION (CLAIM FOR RELIEF)

33.    Paragraphs 1 through 32 are re-alleged.

34.    Denies the allegations in paragraph 34.

35.    Denies the allegations in paragraph 35.

36.    Denies the allegations in paragraph 36.

37.    Denies the allegations in paragraph 37.

38.    Denies the allegations in paragraph 38.

39.    Denies the allegations in paragraph 39.

40.    Denies the allegations in paragraph 40.

41.    Denies the allegations in paragraph 41.

## FIRST AFFIRMATIVE DEFENSE

42.  The complaint fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

43.  The amount of any damages otherwise recoverable by plaintiffs should be diminished in the proportion which the culpable conduct attributable to each plaintiff bears to the culpable conduct which caused the damages.

## THIRD AFFIRMATIVE DEFENSE

44.  The losses or damages alleged to have been suffered by plaintiffs were caused or contributed to by the comparative fault, negligence and lack of care of the plaintiff or other individuals for whose conduct Broan-Nutone is not responsible.

## FOURTH AFFIRMATIVE DEFENSE

45.  The losses or damages alleged to have been suffered by plaintiffs were caused or contributed to by the fault, negligence and lack of care of persons and/or individuals whom plaintiffs have not named as parties to this action and who, in accordance with the provisions of Article 16 of the New York State Civil Practice Law and Rules, plaintiff should have named as parties.

## FIFTH AFFIRMATIVE DEFENSE

46.  The losses or damages alleged to have been suffered by plaintiffs were the result of plaintiff's assumption of the risk of such injuries, losses or damages.

4

## SIXTH AFFIRMATIVE DEFENSE

47.   Plaintiffs' causes of action are barred in whole or in part by the applicable statutes of limitations.

## SEVENTH AFFIRMATIVE DEFENSE

48.   Plaintiffs' claims are barred in whole or diminished in part in an amount fairly allocable to any party with which plaintiffs have settled or may settle.

## EIGHTH AFFIRMATIVE DEFENSE

49.   The limitations on joint and several liability set forth in New York State CPLR Article 16 are applicable to this action.

## NINTH AFFIRMATIVE DEFENSE

50.   Plaintiffs have failed to name a necessary party to the within action.

## TENTH AFFIRMATIVE DEFENSE

51.   In the event that some or all of the plaintiffs' alleged economic losses were or will be replaced or indemnified from collateral sources, any award for economic loss should be reduced thereby.

## ELEVENTH AFFIRMATIVE DEFENSE

52.   Pursuant to 28 U.S.C. 1404(a), plaintiffs failed to choose a proper venue since the events and circumstances that gave rise to this case occurred in West Yarmouth, Massachusetts.

53.   Pursuant to 28 U.S.C. 1404(a), plaintiffs failed to choose a proper venue because the location of the property allegedly damaged by fire, the location of the parties and witnesses, and the location of the public records and public officials detailing the fire and alleged damage are all located in West Yarmouth, Massachusetts.

5

54.   Pursuant to 28 U.S.C. 1404(a), plaintiffs also failed to choose a proper venue for the convenience of the parties and witnesses; the ease of access to the sources of proof; the availability of subpoena power over unwilling witnesses; the cost of obtaining the presence of witnesses; the problems involved in trying this case expeditiously and inexpensively and in the interests of justice.

<u>TWELFTH AFFIRMATIVE DEFENSE</u>

55.   Pursuant to 28 U.S.C. 1406, plaintiffs failed to chose a proper venue for this matter.

WHEREFORE, defendant Broan-Nutone demands judgment (a) dismissing the complaint, (b) awarding Broan-Nutone costs and disbursements of this action, including attorneys fees, and (c) granting Broan-Nutone such other relief as is just and proper.

Date:    New York, New York
         April 14, 2005

                                LYNCH ROWIN LLP

                                By:_____

                                Thomas P. Lynch (4365)

                                Attorneys for Defendant, Broan-Nutone
                                630 Third Avenue
                                New York, New York   10017
                                (212)-682-4001

TO:   TESE & MILNER
      Attorneys for Plaintiffs
      One Minetta Lane
      New York, New York 10012
      (212)-475-3673

6

Exhibit D

**EFI**°

Engineering and Fire
Investigations

634 State Road, Suite K
North Dartmouth, MA 02747
800-326-5811
Tel: 508-997-4900
Fax: 508-991-8824
www.efiglobal.com

# FIRE INVESTIGATION
## Report One and Final

|  |  |
|---|---|
| **Insured:** | **Surfside Condo Association** |
| **Loss Location:** | **West Yarmouth, Massachusetts** |
| **Date of Loss:** | **December 15, 2003** |
| **Policy No.:** | **Unknown** |
| **Claim No.:** | **3LLN065** |
| **EFI File No.:** | **94507-01565** |

---

**Report Date:**  December 29, 2003

**Prepared For:**  Seneca Insurance Company
160 Water Street
New York, NY  10038

**Attention:**  Ms. Donna Moore

---

*THIS REPORT FURNISHED AS PRIVILEGED AND CONFIDENTIAL TO ADDRESSEE. RELEASE TO ANY OTHER COMPANY, CONCERN, OR INDIVIDUAL IS SOLELY THE RESPONSIBILITY OF ADDRESSEE*

94507-01565                December 29, 2003
Insured:  Surfside Condo Association                                    Page 1

ASSIGNMENT

The assignment was received on December 17, 2003, with instructions to conduct an origin and cause investigation on a fire that occurred at 585 Main Street, West Yarmouth, Massachusetts on December 15, 2003.

ENCLOSURES

1.  Property Description Form.

2.  Photographs (31).

3.  Additional Materials Envelope that contains photographs and negatives.

FIRE SCENE EXAMINATION

The fire scene examination was completed on December 18, 2003.  Individuals present during the inspection were public adjuster Greg Boyd, partial building owner and co-owner Dick Regent as well as the employees and owners of Colonial Candle Company.

Conditions affecting the overall fire scene examination were normal salvage and overhaul operations as completed by the Yarmouth Fire Department, as well as a municipal fire scene examination.  Both ceiling light fixtures/fans from the second floor men's and ladies' room had been pulled down prior to this inspection.  They remained on-site and were available for inspection and therefore did not impede my ability to determine the origin and cause of this fire.  Most of the circuit breakers had been placed in the off position or reset by an electrician after the fire installing temporary lighting.

The fire scene examination began with an inspection of the exterior surrounding grounds and building.  This revealed that the hole that had been cut in the roof by firefighters had been repaired.  No other exterior damage was observed.  Security of the building is not at issue in this investigation as Colonial Candle was open for business when this fire occurred.

The interior fire scene examination then commenced beginning at the area of least damage, and progressing to the area of most severe.  I noted that neither the heating system nor the electric service entrance and meter socket were involved with the cause of this fire.  I also examined the second floor electrical distribution panel, which was also undamaged.  The main utility appliances were not involved with the cause of this fire.  The components of the individual branch circuits will be addressed later in this report.

The first floor was only residually damaged by soot.  There was no evidence of fire origin at this location.

94507-01565                    December 29, 2003
Insured: Surfside Condo Association                                    Page 2

I ascended to the second floor of Colonial Candle. In a conference room at the left front corner there was damage at ceiling level and in the roof construction above. This damage progressed in a diagonal fashion from the lower roofline towards the rear of the building. This indicated that the fire communicated from that direction.

In the second floor office at the rear of the Colonial Candle occupancy, similar burning and charring was observed in the roof construction. This damage was the greatest at and adjacent to the void spaces that surrounded and that were above the men's and ladies' room. The men's and ladies' rooms were located on the extreme center left side of the second floor.

I examined the hallway outside and adjacent to the two bathrooms. Smoke and heat damage was observed throughout. All indications were that the products of combustion communicated from the area of the bathrooms.

I first inspected the second floor men's bathroom. There was minimal damage within the actual bathroom. In the void space above the ceiling, significant heavy char and burning was observed. The burn patterns were directional in nature, indicating that the fire communicated from above the ladies' room. Further, the slope of the roof and roof rafters extended in a downward direction towards the ladies' room. The center rafter channel extending out of the ladies' room was severely burned and charred. The fire traveled up this rafter channel from above the ladies' room.

I closely examined the second floor ladies' bathroom. I noted that the switch for the ceiling fan/light fixture was in the on position. It was a timer style switch that was set at about 27 minutes as of the date of this inspection.

Inside the ladies' room there was minimal damage except from that debris that had collapsed from the ceiling. The fire damage occurred above the ceiling level and was limited to the single roof rafter channel directly above where the ceiling fan/light fixture was located. The charring extended down the rafter channel to the exact position of where this fan was located. The fan itself had been removed by public sector investigators prior to this inspection.

Where the fan/light fixture was mounted to the joist, moderate to deep charring occurred. The inner portion of the rafters were charred in a direction towards the fan/light fixture. The burn patterns were very clear and specific, indicating that this fire had its origin at this fixture.

The electrical wiring that led to the fixture was closely examined. Some of the insulation had burned from the conductors. Closer inspection revealed no evidence of excessive arcing or short-circuiting on the wires that remained in the ceiling at the time of this inspection.

I then proceeded to examine the two ceiling light fixtures/fan motors that were located in the men's room and ladies' room. A circular type of light fixture was located above the men's room

94507-01565                    December 29, 2003
Insured: Surfside Condo Association                                        Page 3

ceiling and a rectangular style was the one that was in the ladies' room. Both fixtures had been pulled down by local fire investigating authorities.

The circular fixture from the men's room was examined. It was severely oxidized, discolored and burned. The incandescent bulb in the fixture still remained intact. The exterior housing was severely burned and discolored. However, the burn patterns indicated that the fire did not have its origin at this fan/light fixture.

The rectangular fixture from the ladies' room ceiling was next examined. Its internal fan motor was severely discolored and oxidized due to intense heat levels. The bulb in the light fixture had been broken during this incident and I was unable to determine its wattage. The exterior housing was severely burned and discolored on one side with much lesser damage on the opposite side.

The less damaged side was most likely positioned in the direction towards the lower end of the direction of the roofline. This was away from the damage. The most severe damage in the rafter channel was at the center and towards the peak of the roofline. This explains that the center portion and peak side of the fixture was most damaged.

The rectangular light fixture/fan motor was in no way dismantled or altered. It is in the possession of the Colonial Candle Corporation as they completed a build out on the second floor in 1997 at which time they partitioned in the two bathrooms and installed appropriate wiring and fixtures. I do not feel that this evidence is the property of the Surfside Condominium Association. Officials from Colonial Candle agreed to preserve both light fixtures and the switch for the ladies' room fan until such time as it can be turned over to the appropriate insurance representative.

INVESTIGATION

I spoke with Dick Regent who identified himself as one of the trustees for the Surfside Condominium Association. They lease the area where the fire originated to the Colonial Candle Corporation. Colonial Candle has been there since 1997.

Mr. Regent stated that when Colonial Candle moved in there was no second floor men's or ladies' rooms. Colonial Candle opted at that time to complete a build out on the second floor in order to install a conference room, two bathrooms and an office area. This build out was done at Colonial Candle's expense. At that time, they installed two new bathrooms and put in appropriate electrical wiring and fixtures in both.

Mr. Regent stated that there have been no electrical problems in the building that he is aware of. There has been no recent maintenance or construction. There have been no leaks in the roof that he is aware of as well.

94507-01565                    December 29, 2003
Insured: Surfside Condo Association                                    Page 4

I spoke with Wayne Johnson who identified himself as one of the managers for Colonial Candle Corporation. He confirmed the information regarding the 1997 build out. This was done completely at the direction and at the expense of Colonial Candle.

Mr. Johnson stated that he did not know the exact age and did not know the manufacturer of the two ceiling fan/light fixtures that were in the second floor bathrooms. They were installed in and around the time that they completed their 1997 build out. He did not know the manufacturer of the ceiling fan/light fixtures in the second floor bathrooms. They were not giving them any trouble whatsoever.

Mr. Johnson stated that the only thing that was slightly a problem is the timer that operated the ladies' room lights/fan. The timer would not work. They would need to turn the switch on and then manually turn it to off. It would not automatically shut off via the timer.

I have spoken to Mabel Mel and Melissa Hayes. Mabel believes she was in the ladies' bathroom on the second floor sometime just prior to lunch. She took lunch at 12:30 p.m. She did use the light and she believes that she shut it off.

Melissa Hayes stated that she was in the ladies' bathroom between 10:30 and 11:00 p.m. She was sure that she shut off the light at that time. She reiterated that the timer would not work and she would have to manually turn it off. She does not know if someone else went into the bathroom after her.

I have spoken to all of the employees who worked for Colonial Candle that day. The last person that I can identify as being in the ladies' room was Melissa Hayes between 12:30 and 1:00 p.m. I have been unable to locate anyone who was in the bathroom after Ms. Hayes.

The Falmouth Fire Department, Fire Prevention Bureau has listed this fire as accidental and related to the ceiling fan/fixture in the ladies' room.

## DETERMINATION OF ORIGIN AND CAUSE

The origin of this fire has been determined to be in the second floor ladies' room ceiling. The origin has more specifically been determined to be directly at the ceiling fan/light fixture.

The cause of this fire has been determined to be an electrical malfunction in the ceiling fan/light fixture. The exact malfunction is currently undetermined.

## RECOMMENDATIONS AND/OR COMMENTS

Adjuster Wayne Levasseur of Lucier Adjustment has been advised of the status of this investigation. At his direction, no further investigative activities will be needed at this time.

94507-01565                      December 29, 2003
Insured:  Surfside Condo Association                                    Page 5


Should further investigation be desired, a qualified electrical engineer can analyze the light fixture from the second floor ladies' room in an effort to ascertain its exact malfunction.  This fan/light fixture is currently being held by the management of Colonial Candle Corporation.




                                                    JEFFREY K. LOWE
                                                       Investigator
                                                      508-886-2043

File Closed

JKL/lpm

Enclosures

cc:   Richard D. Dietzman
        Vice President Northeast

# Industrial Services & Engineering, Inc.

**15 Extension Street, Attleboro, MA 02703**
**Attleboro Industrial Park**
**(508) 226-8800 FAX (508) 226-8880**
www.iseengineering.com



## ISE "QUICK FAX REPORT"
## PLEASE HAND DELIVER ASAP

**To:**      Mr. Wayne Levasseur
             Lucier Claim Service
             P.O. Box 631
             East Bridgewater, MA

*Atten:*
*Donna Moore*

**From:**    Industrial Services & Engineering

**Subject:** Exhuast Fan Heating Equipment Mechanical Loss at:
             The Surfside Condominium Property
             585 Main Street
             West Yarmouth, MA
             **ISE TASK No. 04F015**
             **Policy No. CMP2001017**
             **Claim No. 3LLNO65 (File No. 12150301W)**
             **Inspected By: Tom Zarek CFEI**

Dear Mr. Levasseur:

Thank you for allowing **Industrial Services & Engineering (ISE)** the opportunity to provide technical services to **Lucier Claim Service.** This is a quick summary of our findings at the above referenced inspection location.

ISE's inspections are conducted by licensed tradesmen in the heating industry who are following an Inspection Protocol developed by ISE's Director of Engineering, John P. Certuse, P.E. This protocol creates a uniform criteria of inspection that has proven to be the most thorough and efficient approach in cause and origin identification of these types of systems.

ISE's inspectors are stationed throughout New England to facilitate customer service to the insured in the fast settlement of these losses.

**This first report is preliminary. ISE reserves the right to make any changes in our final report upon review by our Licensed Engineers.**

Page No. 1 04F015, Surfside Condominium Loss

l

## Findings: 2 August 2004

Our inspection found the unit to be a Broan-Nutone Exhuast Fan unit. The model number of the unit was 657, serial number N/A. The unit was built in 1997.

This unit was fired and rated at  BTU per hour.

## The most significant findings of our inspection are the following:

1) ISE was asked to examine two ceiling exhaust fans recovered from this loss location. Reportedly the fan installed within the ladies bathroom had caught on fire and caused damage to the loss location.

The original site cause and origin examination was preformed by Jeff Lowe (CFI, CFEI) from EFI. During that examination Mr. Lowe had determined that the origin of the fire was in the second floor ladies room of this building. Reportedly also, the second floor along with bathrooms was installed in 1997 when Cape Cod Candles began to occupy the location.

Reportedly also, when Mr. Lowe arrived at the loss location, the ceiling fans had already been pulled down, and as the such the evidence tags were labeled with the probably location. The fans were acquired from the loss location and transported to ISE's facilities by Wane Lavasseur.

ISE did not examine the loss location, to confirm the origin of the fire or the location of the ceiling fans. However, the fan labeled "probable men's room" contained ceiling members and an absence of fire damage to those members, and thus was likely correctly labeled.

2) Examination of the two fans found that these were of a different design, with potentially different manufacturer's. The fan identified as being installed in the men's room was found to have been sold under the Nutone trade name with model number 8664RP. The item did have fire damage, but as previously noted, contained structural or mounting members that possessed no evidence of fire damage.

The second unit, reported to have been installed within the ladies bathroom, was found to be a Broan-Nutone model 657 combination fan and light.

Heat and fire patterns noted on the inside and exterior of the unit indicates that this was exposed to extensive fire damage. Heat damage was noted on both the inside and outside of the appliance, with patterns indicating a migration of a fire from within the unit, through the exhaust fan and out of the exhaust duct. Examination of the lighting reflector, found little evidence of exposure on the face of the reflector, but with evidence of soot and heating on the top side of the reflector in an area closest to the dual receptacles.

3) In this area, two receptacles slots were noted. However, one receptacle was observed to be missing. The second was noted to be in place, and appears to be a male receptacle. This appears to be the connection between the exhaust fan and supply power.

The retaining screw was removed from the fan motor mounting, and an examination of the wire tray was undertaken. Examination within this area, found supply wiring with evidence of electrical arcing as evidenced by balling of wire ends, and one wire observed to have electrically arced to the

2

appliance chassis. Insulation was noted to be missing from all wires within this area, indicating fire exposure. The evidence of electrical arcing noted indicates that the wires were energized at the time of the fire, and were electrically arced to the chassis once the insulation was consumed and the wires were exposed.

The remnants of the female power receptacle for the light was found within this area, with the "hot" connection noted to be missing. Specifically, the hot connection was observed to be separated from the receptacle housing suggesting that this area suffered the greatest amount of heat damage. In



comparison, the electrical receptacle for the exhaust fan possess significantly less damage than the light receptacle.

4) Further examination within this area, found the supply connection to be attached to the supply wiring and to be located within the wire trace area. Evidence of electrical arcing on the connection end was not noted.

Examination of the motor, found this to have been heavily damaged due to exposure to fire. The plastic blower wheel was entirely consumed, along with both aluminum motor bearing caps. Motor wiring was observed to be heavily burned with all insulation missing. Fire and heat patterns noted indicate that the fire appeared to be traveling through this area, potentially due to being ingested by the exhaust fan prior to melting of the plastic exhaust fan, and the damage to the motor.

<u>Our initial conclusion of this inspection is the following:</u>

The origin of the fire within this appliance appears to be within the supply wiring to the light. Specifically, the damage to the female receptacle isuggests that the supply connection (hot side) overheated causing localized heating as is consistent with a high resistance or poor connection between the light and the supply wiring. Where insufficient surface area occurs between two connections, the flow of electrical current between the supply power and the object being powered causes heating at the connection.

The appliance appears to have been installed in 1997, and potentially over that time period, lint has accumulated within the housing. This lint also accumulates on the blower wheel and can cause an unbalanced condition, resulting in vibration and causing connections to separate.

We did note, that the receptacle provided to the fan was manufactured in such a way, with serrated edges that appears to have been an attempt to prevent that connection from loosening. We did not note this on the light connections.

The appliance was manufactured by Broan –Nutone. The source of the fire within this device appears to be due to a connection failure between the light and supply wiring that came loose over the period of use, and caused a high resistance connection, localized heating and the ensuing fire.

Examination of the second exhaust fan although it did possess fire indications, it appears to have been within a fire and not the source of the fire. We did note that the fan is of a different design, even though it was installed during the 1997 construction activities. This suggests, that it may have been recently replaced.

3

4

Should you wish to contact the manufacturer, this appliance was manufactured by Broan-Nutone who is located at:

Broan-NuTone, LLC
PO Box 140
Hartford, WI 53027
(800) 558-1711

**Please note that a full written report will be sent upon photo processing and required additional information gathering.**

Sincerely,

John P. Certuse, P.E.
Director of Engineering ISE

Page No. 3 04F015, Surfside Condominium Loss

4

## Industrial Services & Engineering, Inc.
15 Extension Street, Attleboro MA 02703 (508) 226-8800 FAX (508) 226-8880



# ISE "QUICK FAX REPORT"
# PLEASE HAND DELIVER ASAP

**To:**    Mr. Wayne Levasseur
        Lucier Claim Service
        P.O. Box 631
        East Bridgewater, MA

*ATTN:*
*Donna Moore*

**From:**    Industrial Services & Engineering

**Subject:**    Exhaust Fan Fire at:
        The Surfside Condominium Property
        585 Main Street
        West Yarmouth, MA
        **ISE TASK No. 04F015**
        **Policy No. CMP2001017**
        **Claim No. 3LLNO65 (File No. 12150301W)**
        **Inspected By: Tom Zarek CFEI**

Dear Mr. Levasseur

Thank You for allowing **Industrial Services & Engineering** (ISE) the opportunity to provide technical services to **Lucier Claim Service**. This is a quick summary of our findings at the above referenced inspection location.

ISE's inspections are conducted by tradesmen who are following an Inspection Protocol under the direction of ISE's Director of Engineering, John P. Certuse, P.E.

A full report will be mailed pending photo processing and any additional information needed.

### Findings: 2 August 2004

Our inspection found the unit to be a Broan-Nutone Exhaust Fan. The model number of the unit appears to be 657, serial number N/A. The unit was built in 1997.

### The most significant findings of our inspection are the following:

1) ISE was asked to examine two ceiling exhaust fans recovered from this loss location. Reportedly the fan installed within the ladies bathroom had caught on fire and caused damage to the loss location.

The original site cause and origin examination was preformed by Jeff Lowe (CFI, CFEI) from EFI. During that examination Mr. Lowe had determined that the origin of the fire was in the second floor

ladies room of this building. Reportedly also, the second floor along with bathrooms was installed in 1997 when Cape Cod Candles began to occupy the location.

Reportedly also, when Mr. Lowe arrived at the loss location, the ceiling fans had already been pulled down, and as the such the evidence tags were labeled with the probably location. The fans were acquired from the loss location and transported to ISE's facilities by Wane Lavasseur.

ISE did not examine the loss location, to confirm the origin of the fire or the location of the ceiling fans. However, the fan labeled "probable men's room" contained ceiling members and an absence of fire damage to those members, and thus was likely correctly labeled.

2) Examination of the two fans found that these were of a different design, with potentially different manufacturers. The fan identified as being installed in the men's room was found to have been sold under the Nutone trade name with model number 8664RP. The item did have fire damage, but as previously noted, contained structural or mounting members that possessed no evidence of fire damage.

The second unit, reported to have been installed within the ladies bathroom, was found to be what appears to be a Broan-Nutone model 657 combination exhaust fan and light.

Heat and fire patterns noted on the inside and exterior of the unit indicates that this was exposed to extensive fire damage. Heat damage was noted on both the inside and outside of the appliance, with patterns indicating a migration of a fire from within the unit, through the exhaust fan and out of the exhaust duct. Examination of the lighting reflector, found little evidence of exposure on the face of the reflector, but with evidence of soot and heating on the top side of the reflector in an area closest to the dual receptacles.

3) In this area, two receptacles slots were noted. However, one receptacle was observed to be missing. The second was noted to be in place, and appears to be a male receptacle. This appears to be the connection between the exhaust fan and supply power.

The retaining screw was removed from the fan motor mounting, and an examination of the wire tray was undertaken. Examination within this area, found supply wiring with evidence of electrical arcing as evidenced by balling of wire ends, and one wire observed to have electrically arced to the appliance chassis. Insulation was noted to be missing from all wires within this area, indicating fire exposure. The evidence of electrical arcing noted indicates that the wires were energized at the time of the fire, and were electrically arced to the chassis once the insulation was consumed and the wires were exposed.

The remnants of the female power receptacle for the light was found within this area, with the "hot" connection noted to be missing. Specifically, the hot connection was observed to be separated from the receptacle housing suggesting that this area suffered the greatest amount of heat damage. In comparison, the electrical receptacle for the exhaust fan motor possess significantly less damage than the light receptacle.

4) Further examination within this area, found the supply connection to be attached to the supply wiring and to be located within the wire trace area. Evidence of electrical arcing on the connection end was not noted.

Examination of the motor, found this to have been heavily damaged due to exposure to fire. The plastic blower wheel was entirely consumed, along with both aluminum motor bearing caps. Motor

2

wiring was observed to be heavily burned with all insulation missing. Fire and heat patterns noted indicate that the fire appeared to be traveling through this area, potentially due to being ingested by the exhaust fan prior to melting of the plastic exhaust fan, and the damage to the motor.

## Our initial conclusion of this inspection is the following:

The origin of the fire within this appliance appears to be within the supply wiring to the light. Specifically, the damage to the female receptacle suggests that the supply connection (hot side) overheated causing localized heating as is consistent with a high resistance or poor connection between the light and the supply wiring. Where insufficient surface area occurs between two connections, the flow of electrical current between the supply power and the object being powered causes heating at the connection.

The appliance appears to have been installed in 1997, and potentially over that time period, lint has accumulated within the housing. This lint also accumulates on the blower wheel and can cause an unbalanced condition, resulting in vibration and causing connections to separate.

We did note, that the receptacle provided to the fan was manufactured in such a way, with serrated edges that appears to have been an attempt to prevent that connection from loosening. We did not note this on the light connections.

The appliance was manufactured by Broan –Nutone. The source of the fire within this device appears to be due to a connection failure between the light and supply wiring that came loose over the period of use, and caused a high resistance connection, localized heating and the ensuing fire.

Examination of the second exhaust fan although it did possess fire indications, it appears to have been within a fire and not the source of the fire. We did note that the fan is of a different design, even though it was installed during the 1997 construction activities. This suggests, that it may have been recently replaced.

Should you wish to contact the manufacturer, this appliance was manufactured by Broan-Nutone who is located at:

Broan-NuTone, LLC
PO Box 140
Hartford, WI 53027
(800) 558-1711

**Please note that a full written report will be sent upon photo processing and required additional information gathering.**

Sincerely

Thomas F. Zarek CFEI
Inspector ISE

3

Exhibit G

*Whalen*

# WHALEN RESTORATION SERVICES INC.

22 AMERICAN WAY
SOUTH DENNIS MA 02660
(508) 760-1911  FAX (508) 760-9995
MA LIC # CS-074928  HIC REG # 129244
Complete Fire, Smoke, Soot, Water & Mold Remediation Service

| | | | |
|---|---|---|---|
| Client: | Surfside Condominium | Home: | (508) 375-9288 |
| | | Fax | (508) 375-9106 |
| Property: | 585 Main Street (Route 28) | | |
| | West Yarmouth, MA 02739 | | |
| Estimator: | Dennis P. McLaughlin | Business: | (508) 760-1991 |
| Business: | 22 American Way | | |
| | South Dennis, MA 02660 | | |
| Reference: | Wayne Levasseur | Business: | (508) 378-4040 |
| Company: | Lucier Claim Service | Fax | (508) 763-8822 |
| Business: | P.O Box 631 | | |
| | East Bridgewater, MA 02333 | | |

Dates:

Date Entered:    01/02/04         Date Est. Completed:    04/12/04

Price List:      MABO0S0D2
                 Restoration/Service/Remodel with Service Charges
                 Factored In
Estimate:        SURFSIDECONDO
File Number:     CMP2001017

## Summary for Smoke Damage Cleaning

| | |
|---|---|
| Line Item Total | 9,927.52 |
| **Grand Total** | **9,927.52** |

_____

Dennis P. McLaughlin

Dear Wayne,
        The statement above is the estimate for the cleaning related repairs
provided at the above referenced property for your review and approval. . Give me a call when you get a chance.     Sincerely,
Dennis P. McLaughlin

*Whalen*  **WHALEN RESTORATION SERVICES INC.**

22 AMERICAN WAY
SOUTH DENNIS MA 02660
(508) 760-1911  FAX (508) 760-9995
MA LIC # CS-074928  HIC REG # 129244
Complete Fire, Smoke, Soot, Water & Mold Remediation Service

### SURFSIDECONDO

#### office suite

**Room: Hall**

| | | | | | |
|---|---|---|---|---|---|
| 1,282.67 | SF Walls | 305.81 | SF Ceiling | 1,588.47 | SF Walls & Ceiling |
| 305.81 | SF Floor | 33.98 | SY Flooring | 160.33 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 160.33 | LF Ceil. Perimeter |

| DESCRIPTION | QNTY | UNIT COST | TOTAL |
|---|---|---|---|
| 1. Clean the walls and ceiling | 1,588.47 SF | 0.15 | 238.27 |
| 2. Clean window unit (per side) | 4.00 EA | 6.00 | 24.00 |
| 3. Clean Misc. structure shelves, lighting, sliding doors, cubby holes, doors, etc | 8.00 HR | 30.00 | 240.00 |
| 4. Clean and deodorize carpet | 305.81 SF | 0.30 | 91.74 |

**Room Totals: Hall**                                                    **594.01**

**Room: Entry**

| | | | | | |
|---|---|---|---|---|---|
| 324.56 | SF Walls | 160.54 | SF Ceiling | 485.10 | SF Walls & Ceiling |
| 160.54 | SF Floor | 17.84 | SY Flooring | 39.92 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 43.83 | LF Ceil. Perimeter |

| DESCRIPTION | QNTY | UNIT COST | TOTAL |
|---|---|---|---|
| 1. Clean the walls and ceiling | 485.10 SF | 0.15 | 72.76 |
| 2. Clean Misc. structure shelves, lighting, sliding doors, cubby holes, doors, etc | 8.00 HR | 30.00 | 240.00 |
| 3. Clean and deodorize carpet | 160.54 SF | 0.30 | 48.16 |

**Room Totals: Entry**                                                    **360.92**

*Whalen*  **WHALEN RESTORATION SERVICES INC.**

22 AMERICAN WAY
SOUTH DENNIS MA  02660
(508) 760-1911  FAX (508) 760-9995
MA LIC # CS-074928  HIC REG # 129244
Complete Fire, Smoke, Soot, Water & Mold Remediation Service

**Room: Stairs**

| | | | | | |
|---|---|---|---|---|---|
| 279.22 | SF Walls | 47.00 | SF Ceiling | 326.22 | SF Walls & Ceiling |
| 47.00 | SF Floor | 5.22 | SY Flooring | 34.25 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 38.17 | LF Ceil. Perimeter |

| DESCRIPTION | QNTY | UNIT COST | TOTAL |
|---|---|---|---|
| 1. Clean the walls and ceiling | 326.22 SF | 0.15 | 48.93 |
| 2. Clean Misc. structure, lighting, doors, etc | 2.00 HR | 30.00 | 60.00 |
| 3. Clean and deodorize carpet | 47.00 SF | 0.30 | 14.10 |

**Room Totals: Stairs**                                                        **123.03**

**Room: Off 1**

| | | | | | |
|---|---|---|---|---|---|
| 277.33 | SF Walls | 74.11 | SF Ceiling | 351.44 | SF Walls & Ceiling |
| 74.11 | SF Floor | 8.23 | SY Flooring | 34.67 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 34.67 | LF Ceil. Perimeter |

| DESCRIPTION | QNTY | UNIT COST | TOTAL |
|---|---|---|---|
| 1. Clean the walls and ceiling | 351.44 SF | 0.15 | 52.72 |
| 2. Clean Misc. structure, lighting, doors, etc | 2.00 HR | 30.00 | 60.00 |
| 3. Clean and deodorize carpet | 74.11 SF | 0.30 | 22.23 |

**Room Totals: Off 1**                                                        **134.95**

*Whalen*  **WHALEN RESTORATION SERVICES INC.**

22 AMERICAN WAY
SOUTH DENNIS MA 02660
(508) 760-1911 FAX (508) 760-9995
MA LIC # CS-074928 HIC REG # 129244
Complete Fire, Smoke, Soot, Water & Mold Remediation Service

**Room: Conferance**

| | | | | | |
|---|---|---|---|---|---|
| 253.66 | SF Walls | 122.11 | SF Ceiling | 375.77 | SF Walls & Ceiling |
| 93.42 | SF Floor | 10.38 | SY Flooring | 29.33 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 32.25 | LF Ceil. Perimeter |

| DESCRIPTION | QNTY | UNIT COST | TOTAL |
|---|---|---|---|
| 1. Clean the walls and ceiling | 375.77 SF | 0.15 | 56.37 |
| 2. Clean Misc. structure, lighting, ceiling fans, doors, beams, etc | 4.00 HR | 30.00 | 120.00 |
| 3. Clean and deodorize carpet | 93.42 SF | 0.30 | 28.03 |

**Room Totals: Conferance**                                             **204.40**


**Room: Off 3**

| | | | | | |
|---|---|---|---|---|---|
| 317.33 | SF Walls | 98.33 | SF Ceiling | 415.67 | SF Walls & Ceiling |
| 98.33 | SF Floor | 10.93 | SY Flooring | 39.67 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 39.67 | LF Ceil. Perimeter |

| DESCRIPTION | QNTY | UNIT COST | TOTAL |
|---|---|---|---|
| 1. Clean the walls and ceiling | 415.67 SF | 0.15 | 62.35 |
| 2. Clean Misc. structure, lighting, doors, etc | 2.00 HR | 30.00 | 60.00 |
| 3. Clean and deodorize carpet | 98.33 SF | 0.30 | 29.50 |

**Room Totals: Off 3**                                             **151.85**


SURFSIDECONDO                                             05/11/2004  Page: 4

*Whalen*  **WHALEN RESTORATION SERVICES INC.**

22 AMERICAN WAY
SOUTH DENNIS MA 02660
(508) 760-1911  FAX (508) 760-9995
MA LIC # CS-074928  HIC REG # 129244
Complete Fire, Smoke, Soot, Water & Mold Remediation Service

**Room: Off 4**

| | | | | | |
|---|---|---|---|---|---|
| 352.00 | SF Walls | 119.64 | SF Ceiling | 471.64 | SF Walls & Ceiling |
| 119.64 | SF Floor | 13.29 | SY Flooring | 44.00 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 44.00 | LF Ceil. Perimeter |

| DESCRIPTION | QNTY | UNIT COST | TOTAL |
|---|---|---|---|
| 1. Clean the walls and ceiling | 471.64 SF | 0.15 | 70.75 |
| 2. Clean Misc. structure, lighting, doors, etc | 2.00 HR | 30.00 | 60.00 |
| 3. Clean and deodorize carpet | 119.64 SF | 0.30 | 35.89 |

**Room Totals: Off 4**                                                      **166.64**

**Room: Off 5**

| | | | | | |
|---|---|---|---|---|---|
| 346.67 | SF Walls | 115.58 | SF Ceiling | 462.25 | SF Walls & Ceiling |
| 115.58 | SF Floor | 12.84 | SY Flooring | 43.33 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 43.33 | LF Ceil. Perimeter |

| DESCRIPTION | QNTY | UNIT COST | TOTAL |
|---|---|---|---|
| 1. Clean window unit (per side) -skylight | 1.00 EA | 9.00 | 9.00 |
| 2. Clean the walls and ceiling | 462.25 SF | 0.15 | 69.34 |
| 3. Clean Misc. structure, lighting, doors, etc | 2.00 HR | 30.00 | 60.00 |
| 4. Clean and deodorize carpet | 115.58 SF | 0.30 | 34.67 |

**Room Totals: Off 5**                                                      **173.01**

SURFSIDE CONDO                                           05/11/2004  Page: 5

*Whalen*  **WHALEN RESTORATION SERVICES INC.**

22 AMERICAN WAY
SOUTH DENNIS MA. 02660
(508) 760-1911  FAX (508) 760-9995
MA LIC # CS-074928  HIC REG # 129244
Complete Fire, Smoke, Soot, Water & Mold Remediation Service

**Room: Storage**

| | | | | | |
|---|---|---|---|---|---|
| 117.33 | SF Walls | 13.33 | SF Ceiling | 130.67 | SF Walls & Ceiling |
| 13.33 | SF Floor | 1.48 | SY Flooring | 14.67 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 14.67 | LF Ceil. Perimeter |

| DESCRIPTION | QNTY | UNIT COST | TOTAL |
|---|---|---|---|
| 1. Clean the walls and ceiling | 130.67 SF | 0.15 | 19.60 |
| 2. Clean window unit (per side) | 4.00 EA | 6.00 | 24.00 |
| 3. Clean Misc. structure shelves, lighting, doors, etc | 2.00 HR | 30.00 | 60.00 |
| 4. Clean and deodorize carpet | 13.33 SF | 0.30 | 4.00 |

**Room Totals: Storage**                                                          **107.60**

**Room: Off 7**

| | | | | | |
|---|---|---|---|---|---|
| 398.67 | SF Walls | 148.75 | SF Ceiling | 547.42 | SF Walls & Ceiling |
| 148.75 | SF Floor | 16.53 | SY Flooring | 49.83 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 49.83 | LF Ceil. Perimeter |

| DESCRIPTION | QNTY | UNIT COST | TOTAL |
|---|---|---|---|
| 1. Clean window unit (per side) | 1.00 EA | 6.00 | 6.00 |
| 2. Clean the walls and ceiling | 547.42 SF | 0.15 | 82.11 |
| 3. Clean Misc. structure, lighting, doors, etc | 2.00 HR | 30.00 | 60.00 |
| 4. Clean and deodorize carpet | 148.75 SF | 0.30 | 44.63 |

**Room Totals: Off 7**                                                          **192.74**

SURFSIDECONDO                                                          05/11/2004  Page: 6

*Whalen*

# WHALEN RESTORATION SERVICES INC.

22 AMERICAN WAY
SOUTH DENNIS MA 02660
(508) 760-1911  FAX (508) 760-9995
MA LIC # CS-074928  HIC REG # 129244
Complete Fire, Smoke, Soot, Water & Mold Remediation Service

**Room: Off 6**

| | | | | | |
|---|---|---|---|---|---|
| 393.33 | SF Walls | 143.75 | SF Ceiling | 537.08 | SF Walls & Ceiling |
| 143.75 | SF Floor | 15.97 | SY Flooring | 49.17 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 49.17 | LF Ceil. Perimeter |

| DESCRIPTION | QNTY | UNIT COST | TOTAL |
|---|---|---|---|
| 1. Clean window unit (per side) | 1.00 EA | 6.00 | 6.00 |
| 2. Clean the walls and ceiling | 537.08 SF | 0.15 | 80.56 |
| 3. Clean Misc. structure, lighting, doors, etc | 2.00 HR | 30.00 | 60.00 |
| 4. Clean and deodorize carpet | 143.75 SF | 0.30 | 43.13 |

**Room Totals: Off 6**                                           **189.69**

**Room: Computer**

| | | | | | |
|---|---|---|---|---|---|
| 320.00 | SF Walls | 75.00 | SF Ceiling | 395.00 | SF Walls & Ceiling |
| 75.00 | SF Floor | 8.33 | SY Flooring | 40.00 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 40.00 | LF Ceil. Perimeter |

| DESCRIPTION | QNTY | UNIT COST | TOTAL |
|---|---|---|---|
| 1. Clean the walls and ceiling | 395.00 SF | 0.15 | 59.25 |
| 2. Clean Misc. structure, lighting, doors, etc | 2.00 HR | 30.00 | 60.00 |
| 3. Clean and deodorize carpet | 75.00 SF | 0.30 | 22.50 |

**Room Totals: Computer**                                           **141.75**

SURFSIDECONDO                                           05/11/2004  Page: 7

*Whalen*  **WHALEN RESTORATION SERVICES INC.**

22 AMERICAN WAY
SOUTH DENNIS MA 02660
(508) 760-1911   FAX (508) 760-9995
MA LIC # CS-074928  HIC REG # 129244
Complete Fire, Smoke, Soot, Water & Mold Remediation Service

**Room: Off 2**

| | | | | | |
|---|---|---|---|---|---|
| 362.67 | SF Walls | 107.93 | SF Ceiling | 470.60 | SF Walls & Ceiling |
| 107.93 | SF Floor | 11.99 | SY Flooring | 45.33 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 45.33 | LF Ceil. Perimeter |

| DESCRIPTION | QNTY | UNIT COST | TOTAL |
|---|---|---|---|
| 1. Clean the walls and ceiling | 470.60 SF | 0.15 | 70.59 |
| 2. Clean Misc. structure, lighting, doors, etc | 2.00 HR | 30.00 | 60.00 |
| 3. Clean and deodorize carpet | 107.93 SF | 0.30 | 32.38 |

| | |
|---|---|
| **Room Totals: Off 2** | **162.97** |

**Room: Heat, Vent, & Cool**

| DESCRIPTION | QNTY | UNIT COST | TOTAL |
|---|---|---|---|
| 1. Soot Clean ductwork - Interior - vac./deod/seal Per unit - large commercial units | 2.00 EA | 850.00 | 1,700.00 |

| | |
|---|---|
| **Room Totals: Heat, Vent, & Cool** | **1,700.00** |

| | |
|---|---|
| **Area Items Total: office suite** | **4,403.56** |

SURFSIDECONDO                                                                05/11/2004  Page: 8

*Whalen*  **WHALEN RESTORATION SERVICES INC.**

22 AMERICAN WAY
SOUTH DENNIS MA 02660
(508) 760-1911  FAX (508) 760-9995
MA LIC # CS-074928  HIC REG # 129244
Complete Fire, Smoke, Soot, Water & Mold Remediation Service

**MOLLY'S**

**Room: Back Entry**

| 336.00 | SF Walls | 95.15 | SF Ceiling | 431.15 | SF Walls & Ceiling |
| 95.15 | SF Floor | 10.57 | SY Flooring | 42.00 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 42.00 | LF Ceil. Perimeter |

| DESCRIPTION | QNTY | UNIT COST | TOTAL |
|---|---|---|---|
| 1. Clean the ceiling | 95.15 SF | 0.15 | 14.27 |
| 2. Clean Misc. structure shelves, lighting, doors, etc | 4.00 HR | 30.00 | 120.00 |

**Room Totals: Back Entry**                                                      **134.27**

**Room: Pool Room**

| 1,153.89 | SF Walls | 1,427.73 | SF Ceiling | 2,581.62 | SF Walls & Ceiling |
| 1,427.73 | SF Floor | 158.64 | SY Flooring | 139.58 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 167.50 | LF Ceil. Perimeter |

| DESCRIPTION | QNTY | UNIT COST | TOTAL |
|---|---|---|---|
| 1. Clean the ceiling | 1,427.73 SF | 0.15 | 214.16 |
| 2. Clean Misc. structure shelves, lighting, doors, beams, vents, etc | 16.00 HR | 30.00 | 480.00 |

**Room Totals: Pool Room**                                                      **694.16**

SURFSIDE CONDO                                        05/11/2004  Page: 9

# *Whalen* WHALEN RESTORATION SERVICES INC.

22 AMERICAN WAY
SOUTH DENNIS MA  02660
(508) 760-1911  FAX (508) 760-9995
MA LIC # CS-074928  HIC REG # 129244
Complete Fire, Smoke, Soot, Water & Mold Remediation Service

**Room: Restrm hall**

| | | | |
|---|---|---|---|
| 319.44 SF Walls | 75.20 SF Ceiling | 394.65 SF Walls & Ceiling |
| 75.20 SF Floor | 8.36 SY Flooring | 38.92 LF Floor Perimeter |
| 0.00 SF Long Wall | 0.00 SF Short Wall | 45.00 LF Ceil. Perimeter |

| DESCRIPTION | QNTY | UNIT COST | TOTAL |
|---|---|---|---|
| 1. Clean the ceiling | 75.20 SF | 0.15 | 11.28 |
| 2. Clean Misc. structure, lighting, doors, vents, etc | 2.00 HR | 30.00 | 60.00 |

**Room Totals: Restrm hall**      **71.28**

**Room: Mens**

| | | | |
|---|---|---|---|
| 325.33 SF Walls | 101.58 SF Ceiling | 426.92 SF Walls & Ceiling |
| 101.58 SF Floor | 11.29 SY Flooring | 40.67 LF Floor Perimeter |
| 0.00 SF Long Wall | 0.00 SF Short Wall | 40.67 LF Ceil. Perimeter |

| DESCRIPTION | QNTY | UNIT COST | TOTAL |
|---|---|---|---|
| 1. Clean the ceiling | 101.58 SF | 0.15 | 15.24 |
| 2. Clean Misc. structure, lighting, doors, vents, toilets, particians, sinks and counters, etc | 6.00 HR | 30.00 | 180.00 |

**Room Totals: Mens**      **195.24**

# *Whalen*  WHALEN RESTORATION SERVICES INC.

22 AMERICAN WAY
SOUTH DENNIS MA 02660
(508) 760-1911  FAX (508) 760-9995
MA LIC # CS-074928  HIC REG # 129244
Complete Fire, Smoke, Soot, Water & Mold Remediation Service

**Room: Ladie's**

| | | | | | |
|---|---|---|---|---|---|
| 332.00 | SF Walls | 106.38 | SF Ceiling | 438.38 | SF Walls & Ceiling |
| 106.38 | SF Floor | 11.82 | SY Flooring | 41.50 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 41.50 | LF Ceil. Perimeter |

| DESCRIPTION | QNTY | UNIT COST | TOTAL |
|---|---|---|---|
| 1. Clean the ceiling | 106.38 SF | 0.15 | 15.96 |
| 2. Clean Misc. structure, lighting, doors, vents, toilets, particians, sinks and counters, etc | 6.00 HR | 30.00 | 180.00 |

**Room Totals: Ladie's**                                                         **195.96**

**Room: Bar/dining**

| | | | | | |
|---|---|---|---|---|---|
| 1,171.44 | SF Walls | 1,086.64 | SF Ceiling | 2,258.08 | SF Walls & Ceiling |
| 1,086.64 | SF Floor | 120.74 | SY Flooring | 124.50 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 146.33 | LF Ceil. Perimeter |

| DESCRIPTION | QNTY | UNIT COST | TOTAL |
|---|---|---|---|
| 1. Clean the ceiling | 1,086.64 SF | 0.15 | 163.00 |
| 2. Clean Misc. structure shelves, lighting, doors, beams, vents, etc | 16.00 HR | 30.00 | 480.00 |

**Room Totals: Bar/dining**                                                      **643.00**

SURFSIDE CONDO                                          05/11/2004  Page: 11

*Whalen*  **WHALEN RESTORATION SERVICES INC.**

22 AMERICAN WAY
SOUTH DENNIS MA 02660
(508) 760-1911  FAX (508) 760-9995
MA LIC # CS-074928  HIC REG # 129244
Complete Fire, Smoke, Soot, Water & Mold Remediation Service

**Room: Entry**

| | | | | | |
|---|---|---|---|---|---|
| 274.67 | SF Walls | 67.00 | SF Ceiling | 341.67 | SF Walls & Ceiling |
| 67.00 | SF Floor | 7.44 | SY Flooring | 34.33 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 34.33 | LF Ceil. Perimeter |

| DESCRIPTION | QNTY | UNIT COST | TOTAL |
|---|---|---|---|
| 1. Clean the ceiling | 67.00 SF | 0.15 | 10.05 |
| 2. Clean Misc. structure: including lighting, doors, vents, shelving, display cabinet, etc | 6.00 HR | 30.00 | 180.00 |

| | |
|---|---|
| **Room Totals: Entry** | **190.05** |

**Room: Heat, Vent, & Cool**

| DESCRIPTION | QNTY | UNIT COST | TOTAL |
|---|---|---|---|
| 1. Soot Clean ductwork - Interior - vac./deod/seal  Per unit - large commercial units | 4.00 EA | 850.00 | 3,400.00 |

| | |
|---|---|
| **Room Totals: Heat, Vent, & Cool** | **3,400.00** |
| **Area Items Total: MOLLY'S** | **5,523.96** |
| **Line Item Totals: SURFSIDECONDO** | **9,927.52** |

SURFSIDECONDO                                                05/11/2004  Page: 12

*Whalen* **WHALEN RESTORATION SERVICES INC.**

22 AMERICAN WAY
SOUTH DENNIS MA 02660
(508) 760-1911  FAX (508) 760-9995
MA LIC # CS-074928  HIC REG # 129244
Complete Fire, Smoke, Soot, Water & Mold Remediation Service

## Grand Total Areas:

| | | | | | |
|---|---|---|---|---|---|
| 21,748.36 | SF Walls | 13,950.52 | SF Ceiling | 35,698.89 | SF Walls & Ceiling |
| 13,904.84 | SF Floor | 1,544.98 | SY Flooring | 2,572.38 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 2,671.89 | LF Ceil. Perimeter |
| 4,462.88 | Floor Area | 4,698.74 | Total Area | 8,938.22 | Interior Wall Area |
| 4,223.66 | Exterior Wall Area | 513.50 | Exterior Perimeter of Walls | | |
| 0.00 | Surface Area | 0.00 | Number of Squares | 0.00 | Total Perimeter Length |
| 0.00 | Total Ridge Length | 0.00 | Total Hip Length | 0.00 | Area of Face 1 |

SURFSIDECONDO

05/11/2004  Page: 13

*Whalen* **WHALEN RESTORATION SERVICES INC.**

22 AMERICAN WAY
SOUTH DENNIS MA 02660
(508) 760-1911   FAX (508) 760-9995
MA LIC # CS-074928  HIC REG # 129244
Complete Fire, Smoke, Soot, Water & Mold Remediation Service

## Recap By Category

| O&P Items | Total Dollars | % |
|---|---|---|
| **CLEANING STRUCTURE** | 9,927.52 | 100.00% |
| **Grand Total** | 9,927.52 | |

_____

Dennis P. McLaughlin

SURFSIDECONDO

05/11/2004   Page: 14



WHALEN RESTORATION SERVICES INC.

22 AMERICAN WAY
SOUTH DENNIS MA 02660
(508) 760-1911  FAX (508) 760-9995
MA LIC# CS-074928  HIC REG# 129244
Complete Fire, Smoke, Soot, Water & Mold Remediation Service

MOLLY'S

N

MOLLY'S

Bar/dining

Entry

Pool Room

Mens

Ladie's

Restrm hall

Back Entry

05/11/2004   Page: 15

SURFSIDECONDO



*Whalen*

**WHALEN RESTORATION SERVICES INC.**

22 AMERICAN WAY
SOUTH DENNIS MA  02660
(508) 760-1911  FAX (508) 760-9995
MA LIC # CS-074928  HIC REG # 129244
Complete Fire, Smoke, Soot, Water & Mold Remediation Service

1st floor





Whalen

**WHALEN RESTORATION SERVICES INC.**

22 AMERICAN WAY
SOUTH DENNIS MA 02660
(508) 760-1911 FAX (508) 760-9995
MA LIC # CS-074928 HIC REG # 129244
Complete Fire, Smoke, Soot, Water & Mold Remediation Service

2nd floor

N

2nd floor

Stock room

Eley Hall

Office2

womens/bath

Office

men bath

Break-room

Office3

Office4

Kitchen

Common

Robuts

Landing

05/11/2004   Page: 17

SURFSIDECONDO



office suite

05/11/2004  Page: 18

SURFSIDECONDO

*Whalen*  **WHALEN RESTORATION SERVICES INC.**

22 AMERICAN WAY
SOUTH DENNIS MA  02660
(508) 760-1911  FAX (508) 760-9995
MA LIC # CS-074928  HIC REG # 129244
Complete Fire, Smoke, Soot, Water & Mold Remediation Service

Exhibit H

**ROUTE 28**
Number/Milepost Prefix    Street or Highway

**West Yarmouth**
Apt./Suite/Room    City    **MA** | **02673** | -
State    Zip Code

☐ Adjacent to
☐ Directions    Cross street or directions, as applicable

## C  Incident Type *

| 111 | Building fire |

Incident Type

## D  Aid Given or Received *

1 ☒ Mutual aid received | 01922
2 ☐ Automatic aid recv.    Their FDID | Their State
3 ☐ Mutual aid given
4 ☐ Automatic aid given
5 ☐ Other aid given    Their Incident Number
N ☐ None

## E1  Date & Times

Midnight is 0000

Check boxes if dates are the same as Alarm Date.    **Month** **Day** **Year** **Hr Min Sec**
ALARM always required

**Alarm *** | 12 | 15 | 2003 | 14:07:00

ARRIVAL required, unless canceled or did not arrive

☒ **Arrival *** | 12 | 15 | 2003 | 14:11:00

CONTROLLED Optional, Except for wildland fires

☐ Controlled

LAST UNIT CLEARED, required except for wildland fires
Last Unit

☒ Cleared | 12 | 15 | 2003 | 16:34:00

## E2  Shift & Alarms

Local Option

| C |
Shift or  Alarms  District
Platoon

## E3  Special Studies

Local Option

Special Study ID#    Special Study Value

## F  Actions Taken *

| 11 | Extinguish |
Primary Action Taken (1)

| 12 | Salvage overhaul |
Additional Action Taken (2)

| | |
Additional Action Taken (3)

## G1  Resources *

☒ Check this box and skip this section if an Apparatus or Personnel form is used.

|  | Apparatus | Personnel |
| Suppression | 0007 | 0039 |
| EMS | | |
| Other | | |

☐ Check box if resource counts include aid received resources.

## G2  Estimated Dollar Losses & Values

LOSSES: Required for all fires if known. Optional for non fires.

Property $ | , | 000 | , | 000 | None ☐
Contents $ | , | 000 | , | 000 | ☐

PRE-INCIDENT VALUE: Optional

Property $ | , | 000 | , | 000 | ☐
Contents $ | , | 000 | , | 000 | ☐

## Completed Modules

☒ Fire-2
☒ Structure-3
☐ Civil Fire Cas.-4
☐ Fire Serv. Cas.-5
☐ EMS-6
☐ HazMat-7
☐ Wildland Fire-8
☒ Apparatus-9
☒ Personnel-10
☐ Arson-11

## H1 * Casualties ☐ None

|  | Deaths | Injuries |
| Fire Service | | |
| Civilian | | |

## H2  Detector

Required for Confined Fires.

1 ☐ Detector alerted occupants
2 ☐ Detector did not alert them
U ☐ Unknown

## H3  Hazardous Materials Release

N ☐ None
1 ☐ Natural Gas: slow leak, no evacuation or HazMat actions
2 ☐ Propane gas: <21 lb. tank (as in home BBQ grill)
3 ☐ Gasoline: vehicle fuel tank or portable container
4 ☐ Kerosene: fuel burning equipment or portable storage
5 ☐ Diesel fuel/fuel oil: vehicle fuel tank or portable
6 ☐ Household solvents: home/office spill, cleanup only
7 ☐ Motor oil: from engine or portable container
8 ☐ Paint: from paint cans totaling < 55 gallons
0 ☐ Other: Special HazMat actions required or spill > 55gal.:
Please complete the HazMat form

## I  Mixed Use Property

☒ NN ☐ Not mixed
10 ☐ Assembly use
20 ☐ Education use
33 ☐ Medical use
40 ☐ Residential use
51 ☐ Row of stores
53 ☐ Enclosed mall
58 ☐ Bus. & Residential
59 ☐ Office use
60 ☐ Industrial use
63 ☐ Military use
65 ☐ Farm use
00 ☐ Other mixed use

## J  Property Use *  Structures

131 ☐ Church, place of worship
161 ☐ Restaurant or cafeteria
162 ☐ Bar/Tavern or nightclub
213 ☐ Elementary school or kindergarten
215 ☐ High school or junior high
241 ☐ College, adult education
311 ☐ Care facility for the aged
331 ☐ Hospital

### Outside

124 ☐ Playground or park
655 ☐ Crops or orchard
669 ☐ Forest (timberland)
807 ☐ Outdoor storage area
919 ☐ Dump or sanitary landfill
931 ☐ Open land or field

341 ☐ Clinic, clinic type infirmary
342 ☐ Doctor/dentist office
361 ☐ Prison or jail, not juvenile
419 ☐ 1-or 2-family dwelling
429 ☐ Multi-family dwelling
439 ☐ Rooming/boarding house
449 ☐ Commercial hotel or motel
459 ☐ Residential, board and care
464 ☐ Dormitory/barracks
519 ☐ Food and beverage sales

936 ☐ Vacant lot
938 ☐ Graded/care for plot of land
946 ☐ Lake, river, stream
951 ☐ Railroad right of way
960 ☐ Other street
961 ☐ Highway/divided highway
962 ☐ Residential street/driveway

539 ☐ Household goods, sales, repairs
579 ☐ Motor vehicle/boat sales/repair
571 ☐ Gas or service station
599 ☐ Business office
615 ☐ Electric generating plant
629 ☐ Laboratory/science lab
700 ☐ Manufacturing plant
819 ☐ Livestock/poultry storage (barn)
882 ☐ Non-residential parking garage
891 ☐ Warehouse
981 ☐ Construction site
984 ☐ Industrial plant yard

Lookup and enter a Property Use code only if you have NOT checked a Property Use box:

Property Use | 580

General retail, Other

NFIRS-1 Revision 03/11/99

Yarmouth Fire Department

01351    12/15/2003    03-0005134

| | | ST | |
|---|---|---|---|
| | | Street Type | Suffix |

West Barnstable
City

Post Office Box

MA | 02668 | - |
State | Zip Code

☐ **More people involved? Check this box and attach Supplemental Forms (NFIRS-1S) as necessary**

---

**K2 Owner**   ☐ Same as person involved?
Then check this box and skip
The rest of this section.

Local Option

BLYTH INDUSTRIES
Business name (if Applicable)

203 | - | 661 | - | 0196
Area Code   Phone Number

☐ Check this box if
same address as
incident location.
Then skip the three
duplicate address
lines.

WALTER
Mr.,Ms., Mrs. First Name

MI

BECKER
Last Name

Suffix

1
Number

E
Prefix

WEAVER
Street or Highway

ST
Street Type

Suffix

Post Office Box

Apt./Suite/Room

GREENWICH
City

CT | |   - |
State | Zip Code

---

**L  Remarks**

Local Option

CALLED BY BUILDING OCCUPANT REPORTING FIRE IN BATHROOM AT COLONIAL CANDLE (RECIEVED
TELEPHONE NOTIFICATION APPROX. 1MINUTE LATER OF AFA FROM CENTRAL STATION)   UPON ARRIVAL
NOTED MODERATE SMOKE FROM SIDE 3 (C) VENTALATION FAN AND THROUGH ROOF STACKS. ADVANCED DRY 1
3/4 HANDLINE TO 2ND FLOOR OFFICE AREA. DISCHARGED 5LB DRY EXTINGUISER THROUGH BATHROOM VENT
FAN THEN OPERATED HANDLINE THROUGH CEILING KNOCKING DOWN MOST OF FIRE.   EXTENSIVE OVERHAUL
REQUIRED TO OPEN CEILINGS AND CHASE FIRE THROUGH ATTIC SPACE.   EXTERIOR ROOF OPEN IN SEVERAL
PLACES.

ELECTRICAL AND BUILDING INSPECTORS CALLED TO SCENE.   CAUSE DETERMINED TO BE EXCESSIVE HEET
FROM BATHROOM VENTALATION FAN (POSSIBLY SEIZED) IN CLOSE PROXIMITY TO STRUCTURAL COMPONENTS.

---

**L  Authorization**

110
Officer in charge ID

Bowles, Alan T
Signature

CAPP
Position or rank

Assignment

12 | 16 | 2003
Month   Day   Year

Check
box if ☒  110
same
as Officer  Member making report ID
in charge.

Bowles, Alan T
Signature

CAPP
Position or rank

Assignment

12 | 16 | 2003
Month   Day   Year

TABLE OF CONTENTS:
**MEMORANDUM OF LAW**

PRELIMINARY STATEMENT................................................................. 1

ARGUMENT....................................................................................... 2

    Standard for Transfer...................................................... 2

    District of Massachusetts is an Appropriate Venue......................... 2

    This Litigation Has No Connection to New York; The
    District of Massachusetts is the Only Appropriate Venue
    for the Convenience of Witnesses and Interests of Justice............... 3

        Convenience of Parties and Witnesses................................... 6

        Location and Relative Ease of
        Access to Sources of Proof........................................ 6

        Locus of Operative Facts.......................................... 7

        Subpoena Power................................................... 7

        Costs............................................................. 8

        Familiarity with Governing Law.................................... 8

        Weight Given to Plaintiff's Forum................................. 8

        Additional Parties and Third Party Actions......................... 8

CONCLUSION...................................................................................... 9

TABLE OF AUTHORITIES

CASES

Accordia Northeast, Inc. v. Thesseus International Asset Fund,
205 F.Supp.2d 176 (S.D.N.Y. 2002)..............................................................    2

Bionx Implants, Inc. v. Biomet, Inc.,
1999 WL 342306(S.D.N.Y. 1999)..................................................................    4

Chevron Investments, Ltd v. Geldermann, Inc.,
1988 WL 75290 (S.D.N.Y. 1988)..................................................................    3-4

Foot Locker Retail, Inc. v. SBH, Inc.
2005 WL 91306 (S.D.N.Y. 2005)..................................................................    2

Kahn v. National Railroad Passenger Corporation,
1986 WL 1456 (S.D.N.Y. 1986)....................................................................    3

Mitsui Marine and Fire Insurance v. Nankai Travel International,
245 F.Supp. 523 (S.D.N.Y. 2003)..................................................................    3-5

Mitsui Sumotomo Insurance v. Nippon Express,
2003 WL 22097438 (S.D.N.Y. 2003)............................................................    3, 5-6

TM Claims Service v. KLM Royal Dutch Airlines,
143 F.Supp. 402 (S.D.N.Y. 2001)..................................................................    3, 4-5

STATUTES

28 U.S.C. 1391(a)..........................................................................................    2

28 U.S.C. 1404(a)..........................................................................................    2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------x

SENECA INSURANCE COMPANY as subrogee of          :          05 CV 3687
SURFSIDE CONDOMINIUM ASSOCIATION,
                                                 :
                              Plaintiffs,
                                                 :
              -against-
                                                 :
BROAN-NUTONE, LLC
                                                 :
                              Defendant.
                                                 :
--------------------------------------------------------------------------------x

### MEMORANDUM OF LAW IN SUPPORT
### OF MOTION FOR TRANSFER OF VENUE

This memorandum is submitted by defendant Broan-Nutone LLC ("Broan-Nutone") in support of its motion pursuant to 28 U.S.C. 1404(a) transferring this matter from the United States District Court for the Southern District of New York to the United States District Court for the District of Massachusetts. The facts and circumstances of this case are fully set forth in the accompanying affidavit of Thomas P. Lynch and its supporting exhibits and will only be summarized here.

### Preliminary Statement

This is a subrogation-products liability matter. Plaintiffs, Seneca Insurance Company ("Seneca") and Surfside Condominium Association ("Surfside") allege that an exhaust fan manufactured by Broan-Nutone caused a fire at a candleshop, Colonial Candle Company ("Colonial"), on Cape Cod, Massachusetts. Surfside owned the building and leased part of it to Colonial. Seneca brought this subrogation action seeking recompense for payments it made to Surfside under the Surfside-Seneca insurance agreement.

Seneca brought this suit in New York based solely on the address of its own headquarters. As set forth below and in the accompanying supporting affidavits, this litigation has no connection to New York and should be transferred to Massachusetts for the convenience of witnesses and the interests of justice.

<u>Argument</u>

<u>Standard for Transfer</u>

The standard for the transfer of a matter based upon forum non conveniens is 28 U.S.C. 1404(a), which provides:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

In interpreting and applying 1404(a), this court has used a two-fold inquiry:

> First, the district court must determine whether the case could have been brought in the proposed transferee district . . . then the court must determine whether, considering the convenience of the parties and witnesses and the interest of justice, a transfer is appropriate."

<u>Foot Locker Retail, Inc.</u> v. <u>SBH, Inc.</u> 2005 WL 91306 (S.D.N.Y. 2005) at 8.

If the proposed transferee court would have been an appropriate venue in the first instance, "the court then balances a series of public and private factors to decide which of the competing fora is more appropriate for resolution of the dispute." <u>Accordia Northeast, Inc.</u> v. <u>Thesseus International Asset Fund,</u> 205 F.Supp.2d 176 (S.D.N.Y. 2002) at 179.

<u>The District of Massachusetts Is an Appropriate Venue in the First Instance</u>

Federal jurisdiction in this case is based on the diversity of citizenship of the parties. As admitted in its complaint, plaintiff Seneca is a resident of New York and also has its principal place in this state. Surfside is a resident of Massachusetts with its residence in Massachusetts. Defendant, Broan-Nutone, is a Delaware resident with a principal place of business in Wisconsin. Therefore, pursuant to 28 U.S.C. 1391(a), this action could have been brought in Massachusetts since diversity jurisdiction would be preserved and it is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . ."

2

Here, most, if not all, of the relevant physical evidence, as well as all possible witnesses, are located in Massachusetts. The building, the subject fans and the fire debris are all located in Massachusetts. The construction and installation of the subject bathroom and its exhaust fans, as well as the fire, the fire investigation, the examination and testing of the subject fan and documenting and detailing of the property damage, also all occurred in Massachusetts. Finally, several potential third-party defendants are located in Massachusetts and are most likely beyond the jurisdiction of this Court.

This Litigation Has No Connection to New York;
The District of Massachusetts is the Only Appropriate Venue
For the Convenience of Witnesses and Interests of Justice

This court has set forth several factors to be balanced in determining the appropriateness of a transfer of venue. Most consistently, the court has considered the following in making its decision: the convenience of witnesses and the convenience of parties; the location of relevant documents and relative ease of access to sources of proof; the locus of operative facts; the availability of process to compel the attendance of unwilling witnesses; the cost of the litigation; the comparative familiarity of each district with the governing law; the weight accorded to plaintiff's choice of forum; and judicial economy and the interests of justice. Kahn v. National Railroad Passenger Corporation, 1986 WL 1456 (S.D.N.Y. 1986); Chevron Investments, Ltd v. Geldermann, Inc., 1988 WL 75290 (S.D.N.Y. 1988); TM Claims Service v. KLM Royal Dutch Airlines, 143 F.Supp. 402 (S.D.N.Y. 2001); Mitsui Marine and Fire Insurance v. Nankai Travel International, 245 F.Supp. 523 (S.D.N.Y. 2003); and Mitsui Sumotomo Insurance v. Nippon Express, 2003 WL 22097438 (S.D.N.Y. 2003); Foot Locker, supra at 8;

In Kahn, supra, plaintiff sued for personal injuries suffered in a train accident. Defendants established in their motion papers that the train accident occurred in the Northern District of New York, that both the owner and the operator of the other vehicle that caused the train accident were located in the Northern District and the company that maintained the railroad crossing was located there also. In examining the evidence and potential witnesses, the

3

District Court found that "(t)here (was) no material connection between this litigation and the Southern District of New York" Ibid., at 2, and granted the motion to transfer.

This court reached the same result in Chevron, supra. In that case, plaintiff sued over a failure to deliver bonds upon presentation of a certificate contracted to permit such transfer. In granting the motion, this court found that the relevant transactions occurred outside New York and that the main witnesses would be employees of the defendants, also located outside New York. The court held that the litigation had "little, if any, connection with New York." Ibid., at 3.

In TM Claims, supra, the subrogee, TM Claims, brought an action on behalf of its insured, Fuji Photo Film, against KLM Airlines for damage done to a heavy, expensive, two-piece, photographic base emulsion – a technical and sensitive instrument. Fuji had shipped the instrument from Amsterdam to Atlanta, Georgia but when it arrived it had been seriously damaged. As in this matter, TM Claims brought suit in the New York County Supreme Court based on its corporate residence, which KLM removed to the Southern District and then moved to transfer the case from the Southern District to the Northern District of Georgia.

KLM's motion papers established that the operative facts, relevant witnesses, relevant surveys of damages and investigations had all occurred in Georgia and that there was no evidence that the cargo had even entered or passed through New York. Ibid., at 404 -405.

In granting KLM's motion, this court held that "(t)he core determination under Section 1404(a) is the center of gravity of the litigation." quoting Bionx Implants, Inc. v. Biomet, Inc., 1999 WL342306 (S.D.N.Y. 1999). This court specifically found that, "(t)he fact that the claim was 'handled and adjusted' by employees of (plaintiff) in New York does not mean that these individuals necessarily have personal knowledge as to the events which allegedly caused the damage. . ." TM Claims, supra, at 404. In fact, this court found that "any witnesses in New York purporting to have knowledge regarding how the loss/damage occurred likely would have been relying on information provided by witnesses in Atlanta." Ibid., at 406.

Likewise, in <u>Mitsui Marine and Fire</u>, <u>supra</u>, Sharp Electronics Corporation ("Sharp"), shipped merchandise from the Asia to the United States through Nankai Travel. The shipments were delivered to both Los Angeles and Chicago. Many of the shipments arrived damaged and Sharp filed 36 claims for missing or damaged goods with Mitsui Marine and Fire Insurance ("Marine and Fire").

Marine and Fire brought its subrogation action in the Southern District of New York based on its corporate location. Nankai moved to transfer venue to Northern Illinois. In granting Nankai's motion, this court held that Marine and Fire's choice of venue, while technically appropriate, should be given "less weight where the case's operative facts (had) little connection with the chosen forum." <u>Ibid.</u>, at 525, quoting <u>TM Claims</u>, <u>supra</u>. In fact, this court found that "the only relevant fact that occurred in New York was the handling of the claim." at 526. Most important, this court recognized that in this subrogation matter, the insurance company could "only point to three possible witnesses in New York, all of whom (would) testify to various aspects of the insurance claim handling. Individuals involved in claims handling, however, (were) not material witnesses in this case." <u>Mitsui Marine and Fire</u>, <u>supra</u>, at 526.

In the subrogation action, <u>Mitsui Sumotomo</u>, <u>supra</u>, subrogor, Sony Computer Entertainment America ("Sony") contracted with Nippon Express U.S.A. ("Nippon"), a cargo carrier to ship goods. The nine container shipment was scheduled to transport the goods, by ship, from Japan to Tacoma, Washington and then from Tacoma to Chicago, Illinois, by rail. Trucks were then scheduled to pick-up the goods for distribution. A trucker with falsified documents was able to convince the pick-up center in Chicago to release the shipment to him and it was stolen.

Sony's insurer, Mitsui Sumotomo ("Sumotomo"), sued Nippon for the loss property related to the theft. Sumotomo brought suit in New York based on the location of its claims office. In support of its motion to transfer venue, Nippon established that all of the potential witnesses to liability were located in the transferee district while no witness was located in New

5

York. This court found that "from the standpoint of evidence and convenience of proof, there is no significant case for retaining the action," concluding that, "the overriding consideration, in the Court's view, is which forum better would serve the interests of justice by affording an easier and more accurate means of ascertaining the critical facts." Ibid, at 2.

As established in the cited cases, federal courts balance a number of public and private factors in deciding the appropriateness of a transfer of venue. Under our facts in this matter, all of those determinative factors point to Massachusetts as the "center of gravity of the litigation."

1.    Convenience of Parties and Witnesses

Seneca was just a clearing house for all of the information relayed from the original sources in Massachusetts. Seneca's subrogor, Surfside is located in Massachusetts, as is Seneca's investigation agency, cause and origin engineers, claim adjusting service, and remediation company. The lessee of the subject premises, Colonial Candle, its employees and customers are located in Massachusetts. Upon information and belief, the construction and electrician contractors Colonial Candle employed to install the subject fans, are Massachusetts companies. All of the individual owners, employees, customers, adjusters, investigators, experts and public servants who have actual and independent knowledge of the building, construction, fire, fire investigation and fire damage are located in Massachusetts. Lastly, the Yarmouth Fire Department, its officials, investigators and firefighters are in Yarmouth, Massachusetts. See Lynch Affidavit, pp. 4-7.

2.    Location and Relative Ease of Access to Sources of Proof

The fire scene, the subject building, subject fans and recovered debris from the fire are all located in Massachusetts. All of the paper documentation regarding the leases, construction, businesses, fire, fire investigations, fire damage and clean-up are located in Massachusetts. The building permits, inspections, certificate of occupancy and approvals from the 1997 "build-out" are also located in Massachusetts.

6

Seneca's engineering expert, claim adjuster, clean-up company, and investigation team, along with all of their records, are located in Massachusetts. In addition, the records and reports of the Yarmouth Fire Department that determined the details of the firefighting procedure used, the burn patterns present, the fire damage and the bases for cause and origin opinion are located in Massachusetts. Lynch Affidavit, pp. 7-8.

3.    Locus of Operative Facts

The fire occurred in Massachusetts. The owner/lessor/subrogor and the lessee are both located at the fire scene in Massachusetts. The actual subject fans and all other recovered debris from the fire are located in Massachusetts. The construction company who installed the subject fan is located in Massachusetts. Lastly, all public records related to the building and the fire are located in Massachusetts.

In addition, the four companies that Seneca hired to investigate, inspect, test and document the fire, the cause and origin of the fire, the alleged defects in the fan and the property damage caused by the fire are all located and based in Massachusetts. Lynch Affidavit, pp. 8-9.

4.    Subpoena Power

Many of the witnesses described above and in the accompanying affidavit, are not employees of either plaintiff, Seneca or Surfside. Consequently, plaintiffs will not have any power, leverage or responsibility to produce these witnesses nor their records at trial.

Unless this matter is transferred to Massachusetts, then, Broan-Nutone will be unable to properly defend this case at trial since many of these witnesses will object to Broan-Nutone's requests for a deposition or a production of documents. The cost and time involved in traveling between Cape Cod, Massachusetts and New York City will militate against their appearing to testify and produce the relevant documents needed to defend the case. Lynch Affidavit, p. 9.

7

5.    <u>Costs</u>

While both sides are corporations and have the means to litigate this matter in either Massachusetts or New York, the cost of travel between the two states for numerous depositions and inspections would generate substantial travel cost. In considering the location of the relevant documents and physical evidence, as well as the location of Broan-Nutone's counsel and the location of Broan-Nutone's headquarters, traveling to and from Massachusetts from Wisconsin and New York to Massachusetts will be financially burdensome for a $197,244 property damage claim.   Lynch Affidavit, p. 9.

6.    <u>Familiarity With Governing Law</u>

The District Court in Massachusetts, having presided over numerous diversity cases involving Massachusetts law, will be more familiar with the application and governance of Massachusetts state and common law.  Lynch Affidavit, p. 10.

7.    <u>Weight Given to Plaintiff's Forum</u>

There is no material connection or contact between New York and the underlying facts or events giving rise to this litigation. Seneca's corporate residence, as it admits, is the sole reason the case was brought in New York. As shown above, all the operative facts and events that give rise to this suit occurred in Massachusetts. Accordingly, since there is little, if any, connection to New York, the balancing of factors considering the substantial connections to Massachusetts outweigh Seneca's choice of New York.   Lynch Affidavit, p. 10.

8.    <u>Additional Parties and Third-Party Actions</u>

This action involves three named parties and six non-party entities. Seven of the nine entities are located and based in Massachusetts. The practical considerations of the logistics and cost involved in scheduling the testimony and production of witnesses and documents from these seven out-of-state entities makes New York an unduly burdensome place for trial.

8

More important, each of these entities are potential parties to the action but reside in Massachusetts. Consequently, if it is necessary for Broan-Nutone to bring these parties into the action, they, in all likelihood, will not be subject to New York jurisdiction. Broan-Nutone would then be forced to defend this action in this court while pursuing separate actions against these Massachusetts-based entities at the same time. Lynch Affidavit, p. 10.

<u>Conclusion</u>

There is no material connection between New York and this litigation. This lawsuit should be transferred from the United States District Court for the Southern District of New York to United States District Court for the District of Massachusetts based on the convenience of witnesses and the interests of justice.

Dated:      New York, New York
            May 12, 2005

                              LYNCH ROWIN LLP

                              By: _____
                                 Thomas P. Lynch (4365)
                              Attorneys for Defendant, Broan-Nutone
                              630 Third Avenue
                              New York, New York  10017
                              (212)-682-4001


TO:    TESE & MILNER
       Attorneys for Plaintiffs
       One Minetta Lane
       New York, New York 10012
       (212)-475-3673

f\p\broan\Seneca.as3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x

SENECA INSURANCE COMPANY as subrogee of :    05 CV 3687
SURFSIDE CONDOMINIUM ASSOCIATION,
                                        :

                    Plaintiffs,
                                        :

          -against-                          AFFIDAVIT OF SERVICE
                                        :

BROAN-NUTONE, LLC
                                        :

                    Defendant.

----------------------------------------x

STATE OF NEW YORK   )
                    )  ss.:
COUNTY OF NEW YORK  )

     The UNDERSIGNED, who is not a party to this action/ proceeding,
being duly sworn, being over the age of 18 years and, having an address
in care of Lynch Rowin LLP, 630 Third Avenue, New York, New York 10017,
says:

     On May 13, 2005, in the manner hereinafter described, true
copy(ies) of the following paper(s) were served on respective attorneys
for the parties at the addresses hereinafter listed:

     [ x ]   By Federal Express

DESCRIPTION OF PAPERS (and QUANTITY where more than one copy):

Notice of Motion to Transfer, Affidavit and Exhibits in Support and
Memorandum of Law

ATTORNEYS and PARTIES SERVED:

     TESE & MILNER
     Attorneys for Defendants
     One Minetta Lane
     New York, New York   10012
     (212)-475-3673

Sworn to before me on the
13th day of May, 2005.

_____                    _____
     Notary Public                           Patrick J. Comerford

               JENNIFER T. PEREZ
          Notary Public, State of New York
               No. 02PE6055761
          Qualified in New York County
          Commission Expires March 5, 2007

**TESE & MILNER**
One Minetta Lane
New York, New York  10012
_____

| | | |
|---|---|---|
| Michael M. Milner, Esq. | | Raymond Tese, Esq. |
| Angela Tese-Milner, Esq. | (212) 475-3673 | (1912-2002) |
| _____ | Fax (212) 598-5864 | Vincent S. Tese, Esq. |
| Eric Goldberg, Esq. | | (1903 –1975) |

May 17, 2005

<u>**VIA FACSIMILE A ND MAIL**</u>
Chambers of the Honorable
Alvin K. Hellerstein
United States District Court, SDNY
500 Pearl Street, Room 1050
New York, New York 10007

*Re*:    Seneca Insurance Co. v. Broan-Nutone, LLC
<u>05 CV 3687</u>

Dear Judge Hellerstein:

        I write to you as counsel to the Plaintiff in the above referenced action, and at the direction of your Courtroom Deputy, Ms. Brigitte Jones.  Defendant filed a motion for change of venue on May 16, 2005.  The return date on the motion is May 24, 2005.

        At this time, and with the consent of Defendant, I write to request an extension of time to oppose Defendant's motion.  Counsel have agreed to propose the following schedule for submission of the motion:  1)  Plaintiff's opposition to the motion shall be filed and served no later than June 20, 2005; and 2)  Defendant's reply brief, if any, shall be filed and served no later than June 27, 2005.

        Thank you.

Respectfully,

s/

Michael Milner

Cc:    Lynch Rowin LLP
       630 Third Avenue
       New York, NY  10017
       Attn: Thomas Lynch, Esq.





**T**ESE & **M**ILNER

ATTORNEYS AT LAW

ONE MINETTA LANE

NEW YORK, NEW YORK 10012

MICHAEL M. MILNER
ANGELA TESE-MILNER

ERIC A. GOLDBERG

TEL: (212) 475-3673

FAX: (212) 598-5864

VINCENT S. TESE (1903-1972)
RAYMOND V. TESE (1913-2002)

NORMAN LANDRES
OF COUNSEL

May 17, 2005

**VIA FACSIMILE AND MAIL**
Chambers of the Honorable
Alvin K. Hellerstein
United States District Court, SDNY
500 Pearl Street, Room 1050
New York, New York 10007

*Re*:     Seneca Insurance Co. v. Broan-Nutone, LLC
          <u>05 CV 3687</u>

Dear Judge Hellerstein:

I write to you as counsel to the Plaintiff in the above referenced action, and at the direction of your Courtroom Deputy, Ms. Brigitte Jones. Defendant filed a motion for change of venue on May 16, 2005. The return date on the motion is May 24, 2005.

At this time, and with the consent of Defendant, I write to request an extension of time to oppose Defendant's motion. Counsel have agreed to propose the following schedule for submission of the motion: 1) Plaintiff's opposition to the motion shall be filed and served no later than June 20, 2005; and 2) Defendant's reply brief, if any, shall be filed and served no later than June 27, 2005.

Thank you.

Respectfully,

Michael Milner

Cc:     Lynch Rowin LLP
        630 Third Avenue
        New York, NY 10017
        Attn: Thomas Lynch, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

SENECA INSURANCE COMPANY as
subrogee of SURFSIDE CONDOMINIUM
ASSOCIATION,                                          Index No.  05 CV 3687

                              Plaintiff,

        -against-

BROAN-NUTONE, LLC

                              Defendant.
_____X

AFFIRMATION IN OPPOSITION TO DEFENDANT'S
MOTION FOR TRANSFER OF VENUE

        Plaintiff Seneca Insurance Company, by its attorneys Tese & Milner, submits this

affirmation in opposition to the Defendant's motion pursuant to 28 U.S.C. §1404(a)

transferring this matter from the United States District Court for the Southern District of

New York to the United States District Court for the District of Massachusetts.  Plaintiff

also submits and incorporates by reference the annexed Memorandum of Law.

1.      I am a member of the law firm of Tese & Milner, counsel to the Plaintiff Seneca

Insurance Company ("Seneca" or "Plaintiff") in this action, and as such, I am fully

familiar with the facts and circumstances surrounding this action.

2.      This Affirmation (and annexed Memorandum of Law) is respectfully submitted in

Opposition to Defendant Broan-Nutone, LLC's ("Broan" or "Defendant") motion for an

order pursuant to 28 U.S.C. §1404(a) transferring venue of this action from the United

States District Court for the Southern District of New York to the United States District

Court for the District of Massachusetts.  Plaintiff respectfully submits that for the reasons

set forth herein, Defendant's motion for transfer of venue should be denied in its entirety.

**In Its Motion, Defendant Has
Misstated the Nature and
<u>Circumstances of this Action</u>**

3.      In its Motion, Defendant grossly misstates the facts and circumstances

surrounding this action and blankly asserts, with no justification, what steps Plaintiff will

and will not need to take in order to successfully prosecute the instant action.

4.      It must be noted that Broan ceiling exhaust fans, such as the one at issue in this

products liability action, are the subject of numerous actions across the United States and

have been involved in countless property damage/products liability lawsuits for many

years.  Broan routinely litigates these cases outside of its home forum (Wisconsin), as it

distributes its widely-used products worldwide.

5.      The transfer motion incorrectly contends that this case is not based in products

liability.  *See* Affidavit of Thomas Lynch, para. 21.  In his Affidavit, Mr. Lynch quotes

language from a cause and origin expert hired by Seneca shortly after the subject fire to

determine the cause and origin of the fire.  The ISE report, as quoted by Mr. Lynch, states

that "the source of the fire **<u>within this device</u>** appears to be due to a connection

failure…"  The report clearly concludes that the device itself was the cause of the fire.

6.      Nor did the Yarmouth Fire Department conclude that the fire was accidental or

without cause, as Defendant claims in their motion.  *See* Lynch Affidavit, para. 25.

Rather, the fire department, in its report, annexed to Defendant's own motion as Exhibit

"H", stated in section "L" entitled "Remarks" that "cause determined to be excessive heet

*(sic)* from bathroom ventilation fan (possibly seized) in close proximity to structural

components."  This conclusion speaks for itself as to the direction of Plaintiff's instant

products liability action.

7.    Thus this action is purely based in products liability and Plaintiff will contend that the device itself caused the subject fire and resulting damage.  Therefore, the need for the parties to compel discovery from non-party witnesses located out of Plaintiff's chosen district of venue is greatly diminished.  Such being the case, Defendant is left with only minute arguments in support of the transfer of venue.

**Defendant's List of Potential**
**Necessary Witnesses is Presumptive**
**And Irrelevant**

8.    For example, contrary to Defendant's wishes as set forth in the Lynch Affidavit, the following parties will not be necessary witnesses to this action:

    a.    Lucier Claim Service – merely reported to Seneca's adjuster concerning the claim and remediation.  Lucier could only testify as to damage caused by the fire, not the source or cause of the ignition of the fire.  Nonetheless, as an agent of Seneca, Lucier will certainly agree to lend itself to involvement in this case at any time and place as Seneca sees fit.

    b.    Colonial Candle – a now defunct company with no operations or employees at the site of the fire.  Upon information and belief, employees relocated to other areas subsequent to the closing of the business.[1]

    c.    Industrial Services & Engineering, Inc. – merely reported to Seneca concerning the viability of a subrogation claim subsequent to the fire.  Seneca is not bound to retain ISE for testimony at trial, and

---

[1] Contrary to paragraph 18 of Thomas Lynch's Affidavit in Support of the Motion, Colonial Candle is a subsidiary of Blyth Home Scents International, which is in turn operated by Blyth, Inc., based in Greenwich, Connecticut.

Defendants can not seek to depose them absent Seneca's retention of ISE as an expert in this case.

d.    Various "construction and electrician providers" used by tenant Colonial Candle during 1997 renovations – these unidentified parties are not necessary witnesses to this products liability action as their testimony would have no bearing on Broan's manufacturing of internally defective ceiling fans.

e.    Whalen Restoration Services – performed remediation of the site on behalf of Seneca's insured.  As Whalen is not a witness to the ignition of the fire or the manufacturing of the ceiling fan, they are not a necessary witness.  Moreover, Seneca has not and will not designate them to provide expert testimony at trial.

f.    Engineering and Fire Investigations – investigated the cause and origin of the fire.  Should Seneca choose to retain EFI as an expert in this case, EFI will make itself available for the taking of testimony at any time and place as Seneca sees fit.

g.    Yarmouth Fire Department – responded to the fire and extinguished the fire.  Yarmouth compiled a written report concerning its response to the fire and the cause and origin of the fire which can be admitted at trial in lieu of live testimony.

9.    Defendant's moving papers fail to demonstrate that the testimony of various "construction and electrician providers" is necessary or even relevant in this, a products liability action.  Defendant has also failed to demonstrate that (former) Colonial Candle

employees Mabel Mel and Melissa Hayes (a) are still employed by Colonial Candle, or (b) still reside in Massachusetts.[2]

10.     Most fatal to its motion, Broan has not and can not at this time demonstrate that any of the witnesses named in its motion would be unwilling to testify in the Southern District of New York.

11.     The Yarmouth Fire Department compiled reports which could be utilized in lieu of live testimony.  Regardless, should plaintiff seek live testimony of the Yarmouth Fire Department, plaintiff would bear any associated travel or videotaping expense.

12.     Further, the subrogor, Surfside Condominium Association and any of its principals and employees are under a duty to cooperate with Seneca and to the extent that they are part of plaintiff's case-in-chief they are thus available for the production of documents and testimony regardless of the location of the action.

13.     Aside from the above discussed parties, Plaintiff's witnesses in this case will include Seneca's insurance adjuster, based at its corporate headquarters in New York, employees of Defendant Broan who possess knowledge of the subject ceiling fan and it manufacturing, and nationally recognized experts retained by Plaintiff who will testify as to the defect in the subject ceiling fan.

**Other Factors in
28 U.S.C. §1404(a)
<u>Motion for Transfer</u>**

14.     Defendant also wrongfully contends that the crux of relevant physical and documentary evidence in this case is located within the district of its proposed new venue, Massachusetts.  Nothing could be further from the truth, as Defendant is once again attempting to escape the reality of the nature of this action.  Plaintiff's action is

---

[2]  These employees are mentioned in the Lynch Affidavit, para. 19.

based on theories of products liability stemming from a fire caused by a defective ceiling fan.  Thus, the overwhelming majority of relevant documents in this case will come from Defendant's own headquarters and will bear on the issue of the faulty manufacturing of the subject ceiling fan.

15.     Regardless of the location of physical and documentary evidence and proof, with current technology and shipping options, relevant documents can be quickly reproduced at their location and shipped anywhere in the world overnight.  Defendant's moving papers have not demonstrated that relevant documents which would be sought from Massachusetts entities (if any) would be so voluminous that they can't be reproduced and shipped to the Southern District of New York or that this common practice would in some way harm or prejudice Defendant in this litigation.  Moreover, there will be no need for the parties to inspect the subject premises years after the fire and remediation to the site.  The subject fan unit, which is currently in the possession of the plaintiff, can be similarly shipped between experts, as is common practice.

16.     Similarly, the "locus of operative facts" in this case is not in Defendant's proposed alternative forum of Massachusetts.  As stated above, this is a products liability case in which Plaintiff claims that a defective ceiling fan caused a fire at the insured premises.  This is not a straight negligence case as Defendant wishes this Court to suppose.  Plaintiff contends that Defendant is a national company that put a defective product into the stream of commerce.  As there is no question as to the source of the fire, the "locus of the operative facts" in this products liability action would squarely lie at the site of Defendant's manufacturing facilities rather than the site of the fire.

17.    For the reasons stated herein, and pursuant to the points of law set forth in the

accompanying Memorandum of Law, Plaintiff urges this Court to find that Defendant has

failed to set forth a "clear cut showing that transfer is in the best interests of the

litigation"  and that its motion for transfer of venue pursuant to 28 U.S.C. §1404(a) must

be denied in its entirety.  *See* <u>Miller v. Bombardier</u>, 1993 WL 378585 *2, (S.D.N.Y.

1993).


Dated: June 17, 2005
         New York, New York                    By:  _____s/_____
                                                      Michael Milner, Esq.
                                                      TESE & MILNER
                                                      Attorneys for Plaintiff
                                                      One Minetta Lane
                                                      New York, New York 10012
                                                      (212) 475-3673

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

SENECA INSURANCE COMPANY as
subrogee of SURFSIDE CONDOMINIUM
ASSOCIATION,                                              Index No.  05 CV 3687

                        Plaintiff,

    -against-

BROAN-NUTONE, LLC

                        Defendant.

_____X

<u>AFFIRMATION OF SERVICE</u>

      Eric Goldberg, an attorney admitted to the practice of law in New York State, declares under penalty of perjury that on June 20, 2005, he served a true copy of the annexed AFFIRMATION IN OPPOSITION and MEMORANDUM OF LAW by first class mail upon Lynch & Rowin, LLP, 630 Third Avenue, New York, New York 10017, attn: Thomas Lynch, Esq., by mailing said in a sealed envelope, with postage prepaid thereon, at a U.S. Post Office depository within the State of New York, to all parties as indicted herein, who constitute all parties in interest, and other entities otherwise entitled to notice.  Eric Goldberg is over 18 years of age and is not a party to this action.

Dated: New York, New York
      June 20, 2005                              s/
                                     _____

                                     Eric Goldberg

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

SENECA INSURANCE COMPANY as
subrogee of SURFSIDE CONDOMINIUM
ASSOCIATION,                                                    Index No.  05 CV 3687

                              Plaintiff,

        -against-

BROAN-NUTONE, LLC

                              Defendant.
_____X


## **MEMORANDUM OF LAW.**



TESE & MILNER
One Minetta Lane
New York, New York 10012
(212) 475-3673


Attorneys for:

Plaintiff Seneca Insurance Company

## TABLE OF CONTENTS

Preliminary Statement……………………………………………….     1

Argument…………………………………………………………….     3

      I.      Standard for Transfer…………………………………….     5

      II.     The Cases Cited by Defendant
             in its Motion are Distinguishable……………………..     13

Conclusion………………………………………………………….     15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

SENECA INSURANCE COMPANY as
subrogee of SURFSIDE CONDOMINIUM
ASSOCIATION,                                                    Index No.  05 CV 3687

                                    Plaintiff,

        -against-

BROAN-NUTONE, LLC

                                    Defendant.
_____X

PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S
MOTION FOR TRANSFER OF VENUE

        This Memorandum is submitted by plaintiff Seneca Insurance Company

("Seneca"), in opposition to the motion of defendant Broan-Nutone, LLC ("Broan")

pursuant to 28 U.S.C. §1404(a) transferring this matter from the United States District

Court for the Southern District of New York to the United States District Court for the

District of Massachusetts.  Plaintiff also submits and incorporates by reference the

annexed Affirmation of Michael Milner, Esq. of Tese & Milner which sets forth the facts

and circumstances surrounding this action.

Preliminary Statement

        This action was brought by Seneca Insurance Company as a subrogation action

grounded in theories of products liability to recover payments made on a claim submitted

by Seneca's insured, Surfside Condominium Association, resulting from a fire which

occurred on July 15, 2003.  In its complaint, Seneca alleges that the cause of the fire was

3

a defective ceiling exhaust fan manufactured by the defendant, which was installed and operating at the subject premises at the time of the fire.

As set forth herein, defendant's motion to transfer venue must fail as it has not made a "clear cut showing that transfer is in the best interests of the litigation." *See* Miller v. Bombardier, 1993 WL 378585 *2, (S.D.N.Y. 1993). Defendant has failed to demonstrate that transfer from Plaintiff's chosen forum to the United States District Court for the District of Massachusetts would in any way benefit this litigation or make it less burdensome upon third parties. The only foreseeable benefit to transferring this case would be to allow defendant to further stall these proceedings and further waste the resources of both parties as it has done with the instant motion.

Moreover, defendant has utterly failed to support its transfer motion with affidavits or other evidence outside the pleadings in order to satisfy the burden of showing grounds for transfer. The only proof submitted by defendant, the Affidavit of Thomas Lynch, Esq., attorney for defendant, does not satisfy this burden. *See* Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc., 829 F. Supp. 62, 66 (S.D.N.Y. 1993); Dow v. Jones, 232 F. Supp.2d 491 (D.Md. 2002) [to carry its burden on a motion for transfer of venue, the movant should submit affidavits from witnesses and parties explaining the hardships they would suffer if the case were heard in the plaintiff's chosen forum as mere assertions of inconvenience or hardship are inadequate]; Jones v. Walt Disney World Co., 409 F.Supp. 526 (W.D.N.Y. 1976) [burden is on movant to furnish proof clearly and substantially in favor of proposed transfer, and such proof must be furnished otherwise than by affidavits which are merely conclusory]; Keck v. Employees Independent Ass'n, 387 F.Supp. 241 (E.D.Pa. 1974) [where movant for transfer to

another district failed to file affidavits, depositions, stipulations or other documents containing facts which established need for transfer, they failed to satisfy burden of showing grounds for transfer, and transfer would accordingly be denied].

Argument

I.    <u>Standard for Transfer</u>

The statutory authority for a motion for transfer of venue based upon *forum non conveniens* is 28 U.S.C. §1404(a), which provides:  "For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Motions for transfer of venue fall within "the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis."  <u>In re Cuyahoga Equipment Corp.</u>, 980 F.2d 110, 117 (2nd Cir. 1992).

The plaintiff's choice of forum, however, is generally entitled to substantial consideration.  <u>In re Warrick</u>, 70 F.3d 736, 741 (2nd Cir. 1995).  Unless the balance is strongly in favor of the defendant, plaintiff's choice of venue should rarely be disturbed.  <u>Olympic Corp. v. Societe Generale</u>, 462 F.2d 376, 378 (2nd Cir. 1972).  The burden is upon the movant to make "a clear-cut showing ... that convenience and justice for all parties demands that the litigation proceed elsewhere."  <u>United States Barite Corp. v. M.V. Haris</u>, 534 F.Supp. 328, 331 (S.D.N.Y. 1982); *see also* <u>Miller v. Bombardier</u>, 1993 WL 378585 *2, (S.D.N.Y. 1993).  Where plaintiff has chosen her home state as forum, as it has here, plaintiff's choice is entitled to substantial weight.  <u>Dunn v. Soo Line R. Co.</u>, 864 F.Supp. 64 (N.D.Ill. 1994).

The factors for the court to consider in deciding this motion include: (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interest of justice, based on the totality of the circumstances.  Eskofot A/S v. E.I. Du Pont De Nemours & Co., 872 F.Supp. 81, 95 (S.D.N.Y.,1995).

a.      The Convenience of the Witnesses

As stated above, defendant has completely disregarded the requirement that it submit evidence of inconvenience of the forum by means other than mere conclusory affidavits.  Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc., 829 F. Supp. at 66.  Therefore, the Court is left with no proof as to the inconvenience of the chosen forum as it relates to the convenience of the witnesses.  Defendant has not shown this Court that one single "prospective" witness is unwilling to travel, should their testimony even be relevant or necessary, as discussed below.

As explained in the accompanying Affirmation of Michael Milner, Esq. (the "Milner Affirmation"), the list of possible witnesses enumerated by the defendant in its motion is false and bloated.  This action sounds solely in theories of products liability, as plaintiff, in its Complaint, contends that a defective bathroom ceiling exhaust fan manufactured by defendant malfunctioned and ignited the subject premises.  Plaintiff

claims that the cause of the malfunction was an internal defect in the fan.  *See* Complaint, annexed to defendant's motion as Exhibit "A".

Thus, defendant's conclusory allegations that witnesses such as the tenant and its employees, the contractor who performed remediation at the premises, and the various "construction and electrician providers" used by the tenant in its 1997 renovations would be necessary witnesses to this action are totally false.  *See* Milner Affirmation, para. 8-13. The only necessary witnesses to this action are those employees of defendant Broan that can testify as to the manufacturing of the defective ceiling exhaust fan.

Moreover, the Courts have repeatedly held that it is the nature and quality of each witness, not merely the number of witnesses that the courts should consider when evaluating the convenience of witnesses factor.  Mitsui Marine and Fire Ins. Co. v. Nankai Travel Intern. Co., Inc., 245 F.Supp.2d 523 (S.D.N.Y. 2003); Thompson & McKinnon v. Minyard, 291 F.Supp. 573 (S.D.N.Y. 1968) [court should not be persuaded merely by number of prospective witnesses, but rather by materiality and importance of their anticipated testimony.]

Given this, the laundry list of irrelevant witnesses produced by defendant in its motion should be disregarded by this Court.  Further, the cause and origin experts retained by Seneca to investigate the fire and report on the viability of a subrogation claim are likewise not necessary witnesses to this action until they are retained as experts by Seneca in this case.  Nonetheless, the convenience of expert witnesses is entitled to little or no consideration on a transfer motion, as they can be directed by their client and compensated accordingly for their services.  Centro Group, S.P.A. v. OroAmerica, Inc., 822 F.Supp. 1058 (S.D.N.Y. 1993); Babbidge v. Apex Oil Co., 676 F.Supp. 517

(S.D.N.Y. 1987).  Upon information and belief, defendant has one expert who's function is to testify at trials involving allegations of product liability related to the failure of Broan fans to include a thermo-cut-off device or fuse which shuts down the fans when they are blocked or seized.  This expert is located in Wisconsin and routinely travels across the nation as necessary to testify on Broan's behalf.

Another "prospective" witness named by defendant, Lucier Claim Services, is an agent of Seneca who adjusted the claim on behalf of Seneca after the fire.  As set forth in the Milner Affirmation, Lucier is not a necessary witness to this products liability action, as it merely adjusted the insurance claim.  Lucier is also an agent of Seneca, and can be directed by Seneca to appear for the taking of testimony in this case, a fact that defendant has failed to rebut.  Likewise, the Yarmouth Fire Department compiled a written report concerning the subject fire, which can be admitted into evidence in lieu of live testimony.  Fed. R. Evid. §803(8).

Even further, should any of defendant's "prospective" witnesses as set forth in its motion be deemed necessary, and they appear unwilling to travel, in light of the option of videotaping testimony of witnesses, this factor should not lend considerable weight to the court's decision.  Fed. R. Evid. §804(a)(5); Citigroup Inc. v. City Holding Co., 97 F. Supp.2d 549, 561 (S.D.N.Y. 2000).

b.    The Location of Relevant Documents

As stated above, most relevant documents in this action will be located at defendant's corporate headquarters in Wisconsin, as the defendant would be the party that maintained documents concerning the manufacturing of the defective ceiling exhaust fan.  Any documents relating to the adjustment of the insurance claim or the making of

the claim by plaintiff's subrogor are located in the district of this Court, the Southern

District of New York.  Further, as the Exhibits to defendant's motion demonstrate,

defendant is already in possession of most of the relevant documents concerning the

adjustment of the claim as well as the reports of cause and origin investigators retained

by Seneca after the fire.

Regardless, this factor should be given little weight here as courts should only

consider this factor when the documents are particularly bulky or difficult to transport or

upon detailed proof that it is somehow a greater imposition to the parties/witnesses to

bring its evidence to the Southern District of New York rather than defendant's proposed

forum.  *See* Constitution Reinsurance Corp. v. Stonewall Ins. Co., 872 F.Supp. 1247,

1251 (S.D.N.Y. 1995); Royal Ins. Co. of Am. V. Tower Records, Inc., 2002 WL

31385815 * 6 (S.D.N.Y. 2002); Houk v. Kimberly-Clark Corp., 613 F.Supp. 923

(W.D.Mo. 1985) [relative ease of access to records and documents does not warrant

transfer of action where documents could be easily photocopied and transported from the

place of storage].  Defendant has made no showing that the proposed necessary

documents could not easily be copied and shipped.

All other documents enumerated in defendant's motion, including records of

Colonial Candle and of the subrogor can easily be reproduced and shipped to this district,

in the event that they become relevant.  As stated in the Milner Affirmation, Colonial

Candle no longer operates at the location in Massachusetts, and upon information and

belief, all records held by them would have been transferred to the offices of the parent

company in Connecticut.  Similarly, documents in the possession of Whalen Restoration,

to the extent they are even necessary, are either in the possession of plaintiff in New York or can be easily reproduced and shipped to New York.

Defendant's proposal that a site inspection of the premises would be necessary is ridiculous as the fire occurred years ago and has since been remediated.  Likewise, the subject ceiling fan is in the possession of plaintiff or its agent and can be shipped anywhere between experts as is deemed necessary during the course of this litigation.

c.    Convenience of the Parties

Broan ceiling exhaust fans, such as the one at issue in this products liability action, are the subject of numerous actions across the United States and have been involved in countless property damage/products liability lawsuits for many years.  Broan routinely litigates these cases outside of its home forum, as it distributes its widely-used products worldwide.  Given this fact, coupled with defendant's proposed choice of alternative venue in the District of Massachusetts, the factor concerning convenience of the parties does not weigh in favor of transfer, especially given plaintiff's choice of its home forum, the Southern District of New York.

d.    Locus of Operative Facts

This factor does not weigh in favor of transfer to defendant's proposed venue, the District of Massachusetts.  If anywhere, the locus of operative facts in this action is the districts in which the parties reside, New York and Wisconsin.  Plaintiff Seneca is based in New York and handled the insurance claim out of its New York headquarters. Defendant Broan is based in Wisconsin and thus presumably manufactures, or plans for the manufacturing of its products, such as the one at issue in this case, in that district.

The fact that the subject fire took place in Massachusetts has no bearing on the "locus of operative facts" in this products liability action.

e.    Availability of Process to Compel
      Attendance of Unwilling Witnesses

Federal Rule of Civil Procedure 45 has been updated through the years to conform to modern complex multi-district litigation.  F.R.C.P. 45(a)(3) allows attorneys to issue subpoenas on behalf of a court for a district in which a deposition or production is compelled, so long as the discovery sought pertains to an action pending in a court in which the attorney is authorized to practice.  Thus, either of the attorneys in this case may issue subpoenas for deposition testimony or production in the district in which any witness resides.  Presumably, should the witness fail to comply, or fail to move for protective order, the parties could move to compel in the district in which the production or deposition was sought.

Further, F.R.C.P. 45(c)(3)(B) provides that a court may compel an out of district witness to comply with a subpoena upon a showing of substantial need and that the party to whom the subpoena is addressed will be reasonably compensated.  Regardless, as stated above and in the Milner Affirmation, the proposed "necessary" witnesses enumerated in the Lynch Affidavit are not at all necessary, as they have no knowledge of the manufacturing of the subject defective ceiling exhaust fan.

f.    Relative Means of the Parties

This factor does not weigh in favor of transfer of this case to Massachusetts.  If anything, it is neutral given the fact that both parties to this action are large corporations with means to litigate in any forum.  In fact, upon information and belief, both parties do routinely litigate in many forums nationwide.

g.      Forum's Familiarity With the Governing Law

Defendant in its motion claims that Massachusetts law would be applied by any court hearing this case.  If true, the Southern District of New York is perfectly able to apply Massachusetts law, as the issues here, namely products liability and subrogation are not overly complex so as to render this Court unable to work through them.  Thus, this factor does not weigh in favor of transfer to the District of Massachusetts.  *See* Vassallo v. Niedermeyer, 495 F. Supp. 757, 759 (S.D.N.Y. 1980) [fact that law of another jurisdiction governs the outcome of the case is a factor accorded little weight on a motion for transfer of venue, especially where no complex questions of foreign law are involved.]

h.      Weight Accorded the Plaintiff's Choice of Forum

As set forth above, plaintiff's choice of forum is generally entitled to substantial consideration.  In re Warrick, 70 F.3d 736, 741 (2nd Cir. 1995).  Unless the balance is strongly in favor of the defendant, plaintiff's choice of venue should rarely be disturbed.  Olympic Corp. v. Societe Generale, 462 F.2d 376, 378 (2nd Cir. 1972).  Where plaintiff has chosen her home state as forum, plaintiff's choice is entitled to substantial weight.  Dunn v. Soo Line R. Co., 864 F.Supp. 64 (N.D.Ill. 1994).  Here, as defendant is a large corporation, and each factor listed above does not substantially weigh in favor of transfer to the proposed venue, plaintiff's choice of forum should be respected.

i.      Trial Efficiency and the Interest of Justice

New York remains plaintiff's choice of forum and defendant has failed to show, by affidavits setting forth more then mere conclusory facts, or otherwise, how transfer to the District of Massachusetts would enhance the efficiency of the trial of this case.

Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc., 829 F. Supp. 62, 66 (S.D.N.Y. 1993).  If anything, defendant's instant motion to transfer has unduly burdened this Court in the first instance and has consumed the resources of this Court and the parties.

This being a products liability case against a Wisconsin corporation, transfer to the District of Massachusetts would in no way benefit the efficiency of this case, as hearing the case in Massachusetts would certainly still require the transportation of parties, witnesses and documents by both plaintiff and defendant.  *See* Round One Productions, Inc. v. Greg Page Enterprises, Inc., 566 F.Supp. 934 (E.D.N.Y. 1982) [because either outcome on motion to transfer would result in the transporting of parties, witnesses, and records, motion to transfer is denied.]

II.     The Cases Cited by Defendant
        in its Motion are Distinguishable

The cases cited by defendant in its Memorandum of Law are easily distinguishable from the facts and circumstances surrounding this action, and thus are not controlling.  In Kahn v. National Railroad Passenger Corp., 1986 WL 1456 (S.D.N.Y. 1986), defendant's motion for transfer of venue was granted where the court noted that plaintiff was a citizen of Pakistan and resident of Germany, and the action stemming from an accident that occurred in Castleton, New York (lying in the Northern District of New York) was brought in the Southern District of New York.  The court noted that neither plaintiff nor the action had any ties to the Southern District of New York.  The same is not true here, where Plaintiff has brought suit in its home district and has demonstrated that ample ties to the venue of its choice exist.  Moreover, as stated above,

defendant's arguments that better venue lies in the District of Massachusetts are misplaced.

Similarly, the court granted the defendant's motion for transfer in Chevron Investments, Ltd. v. Geldermann, Inc., 1988 WL 75290 (S.D.N.Y. 1988) based on the fact that the defendant was based in Chicago while the plaintiff was a foreign corporation from the United Kingdom, with its principal offices located in London, and that plaintiff transacts no regular business in New York or the United States. The court further found that plaintiff's claim had no connection to New York as the transaction at issue occurred in Switzerland and Germany.

Defendant's motion in TM Claims Service v. KLM Royal Dutch Airlines, 143 F.Supp.2d 402 (S.D.N.Y. 2001) was granted upon the Court finding that the locus of operative facts occurred in defendant's proposed alternative forum and that a totality of circumstances warranted transfer. Here, this is not the case, as plaintiff urges that this action is based in products liability and stems from a fire caused by a defective ceiling exhaust fan put into the national stream of commerce by defendant. In TM Claims, the subject damaged equipment was to be shipped from Amsterdam to Atlanta. The court allowed transfer to Atlanta finding that the damage probably occurred in Atlanta and was investigated there. Here, while the fire took place in Massachusetts, the defective product at issue in this action was not manufactured there. Therefore, plaintiff's choice of forum should be respected.

The finding in Misui Marine and Fire Ins. v. Nankai Travel Intl., 245 F.Supp.2d 523 (S.D.N.Y. 2003) was similar to that in TM Claims and relied on the fact that the locus of operative facts rested in defendant's proposed alternative forum. The court

further found that many witnesses to the facts resided there.  This case is distinguishable

from the instant one as here, regardless of what defendant claims, the necessary witnesses

will be those of the parties who reside in New York and Wisconsin, rather than

Massachusetts.

<u>Conclusion</u>

For the reasons set forth herein and in the accompanying Affirmation of Michael

Milner, Plaintiff urges this Court to deny defendant's unsupported motion to transfer and

to respect the choice of plaintiff's home forum for the trial of this action, and for such

other and further relief as this Court deems just and proper.


Dated: June 17, 2005
      New York, New York          By:  __s/_____
                                            Michael Milner, Esq.
                                            TESE & MILNER
                                            Attorneys for Plaintiff
                                            One Minetta Lane
                                            New York, New York 10012
                                            (212) 475-3673

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
SENECA INSURANCE CO. as                  :
subrogee of SURFSIDE                      :
CONDOMINIUM ASSOC.,                       :
                                          :
            Plaintiff,                    :      **ORDER GRANTING**
                                          :      **TRANSFER OF VENUE**
        -against-                         :
                                          :
BROAN-NUTONE, LLC,                        :      05 Civ. 3687(AKH)
                                          :
            Defendant.                    :
-----------------------------------------------------x

ALVIN K. HELLERSTEIN, U.S.D.J.:

        Defendant's motion pursuant to 28 U.S.C. § 1404(a) is granted.  The Clerk is

directed to transfer this case to the United States District Court for the District of

Massachusetts.

        Plaintiff Seneca Insurance Company filed this lawsuit in the New York Supreme

Court.  Defendant properly removed the action to this court, and filed its motion to

transfer.

        Plaintiff Seneca, although a corporation incorporated in New York State, sues as

subrogee to a Massachusetts corporation, Surfside Condominium Association.  Surfside

purchased an exhaust fan assembly manufactured by defendant Broan-Nutone, LLC, a

Delaware limited liability company with its principal place of business in Wisconsin.

Seneca alleges that its subrogor, Surfside, purchased the Broan-Nutone fan assembly for

installation in its premises in Massachusetts, that a fire occurred at Surfside's premises

causing damages which Seneca, as insurer, paid, and that Seneca, as subrogee, sues to

recover its damage in the amount of $197,244.59.

Clearly, there is no incident giving rise to the lawsuit that occurred in New York. According to the allegations of the complaint, the Broan-Nutone fan assembly was not manufactured in New York, nor sold in New York, nor installed in New York. The fire occurred in Surfside's premises, 585 Main Street, West Yarmouth, Massachusetts (or, as stated in the Broan-Nutone brief, in a candleshop leased from Surfside in Cape Cod, Massachusetts). The allegedly defective product, the allegedly defective product design, and the alleged breach of warranty, these being the three claims for relief, involve facts and circumstances, and underlying law, totally removed from any incident affecting New York. The only relation to New York is Seneca's incorporation and place of business here.

Although plaintiff's choice of forum is to be given substantial respect, see Warrick v. Gen. Elec. Co., 70 F.3d 736, 741 (2d Cir. 1995), everything about this lawsuit points to transfer. The witnesses are not located here; the events did not occur here; the documents do not exist here. The criteria relevant to a motion under 28 U.S.C. § 1404(a) decidedly favor transfer:

> the district court generally should disturb the plaintiff's choice of forum only if, on balance, the following factors clearly favor transfer: (1) the convenience of witnesses; (2) the convenience of the parties; (3) the locus of operative facts; (4) the location of relevant documents and relative ease of access to sources of proof; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the forum's familiarity with the governing law; (7) the relative financial means of the parties; (8) the weight afforded plaintiff's choice of forum; and (9) trial efficiency and the interests of justice generally.

AEC One Stop Group, Inc. v. CD Listening Bar, Inc., 326 F. Supp. 2d 525, 528 (S.D.N.Y. 2004) (Chin, J.); Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 560-61 (S.D.N.Y. 2000) (Sweet, J.) (listing similar considerations).

Plaintiff, in opposing transfer to the District of Massachusetts, argues that the "locus of the operative facts . . . lie at the site of Defendant's manufacturing facilities rather than the site of the fire." (Aff't, ¶ 16). That site, however, is not in New York. In the absence of any counter-motion by plaintiff, its argument is irrelevant to the inappropriateness of New York as the forum.

It is not clear from the papers whether or not the moving party, defendant Broan-Nutone, LLC, is amenable to being sued in the District of Massachusetts. However, since it seeks transfer to that forum, it is estopped to argue to the contrary.

It is also not clear from the papers what kind of entity Broan-Nutone might be – whether a corporation as is alleged, or a limited partnership which conceivably might defeat diversity jurisdiction. I leave that issue to the transferee court.

For the reasons stated, the Clerk shall transfer the case file to the Clerk of the District of Massachusetts, for further proceedings in that court.

SO ORDERED.

Dated:    New York, New York
          June 23, 2005

                                    _____
                                    ALVIN K. HELLERSTEIN
                                    United States District Judge