UNITED STATES DISTRICT COURT
COMMONWEALTH OF MASSACHUSETTS

C.A. NUMBER: 05-11401-MLW

| | |
|---|---|
| SENECA INSURANCE COMPANY<br>As Subrogee of Surfside Condominium Association,<br>　　　　　　　Plaintiff,<br><br>v.<br><br>BROAN-NUTONE LLC,<br><br>　　　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**ASSENTED TO MOTION TO EXTEND SCHEDULING ORDER DEADLINES**

Now comes the Plaintiff in the above captioned matter, Seneca Insurance Company, and moves this Honorable Court for an order extending the scheduling order deadlines applicable to this matter sixty (60) days.  The Plaintiff further requests that it be given until October 1, 2006 to move to amend its pleadings to add additional defendants.  The Plaintiff states that it has good cause for such requests, and assigns as its reasons therefor the following;

1. This case is the result of a fire which occurred on or about December 15, 2003 at 585 Main Street, Yarmouth, Massachusetts (the "Premises").

2. The Plaintiff has brought claims against the Defendant Broan-NuTone, LLC, a manufacturer of ceiling fan/light fixtures, alleging among other things that a ceiling fan/light fixture manufactured and sold by Broan-NuTone (the "fan unit") located on the Premises caused the fire at issue in this case.  Broan-NuTone denies this allegation.

3. An investigation by the Plaintiff including a search of the building department records at the Town of Yarmouth, Massachusetts, and a recent letter from the Building Commissioner, discloses that although a building permit was issued for the remodeling of the second floor of the Premises (seven rooms and one conference room at a projected cost of $35,000.00), there is no record of a permit issuing for any electrical work done in connection therewith, no record indicating who was responsible for the fan unit's installation, and no notations in the department's records that any inspections were done after the installation of insulation on November 5, 1996. (See Affidavit of Counsel and **Exhibits A** through **C** thereto).

4. On April 20, 2006, the parties appeared before the Court for a status conference. At that time, the parties did not request an extension to the scheduling order deadlines, because fact discovery was progressing, and to that point several depositions were noticed and several depositions were completed. (See Affidavit of Counsel).

5. However, during a recent deposition of the prior owner of the Premises, Dominic J. Albano, Jr. ("Mr. Albano"), who owned the Premises at the time the fan unit was installed, it was discovered that, the second floor bathroom area was remodeled under the direction of the prior owner's tenant (Colonial Candle Company) sometime in 1996 or 1997.[1] The Plaintiff contends that the origin of the December 15, 2003 fire is located in this area, particularly in the location of

---

[1] It is believed that because the fan unit in question was manufactured at or about that same time, the fan unit was installed as part of the remodeling process.

the fan unit at issue. Mr. Albano testified that he did not know who installed the fan unit on the Premises. (<u>See</u> Affidavit of Counsel and **Exhibit D** thereto).

6. Broan-NuTone previously noticed a deposition for the record keeper for Colonial Candle to produce, among other things, records relating to the installation of the fan unit and records regarding the remodeling of the second floor, generally. Counsel for Broan-NuTone informs Plaintiff's counsel that no records were produced, and no testimony was taken, however, because Colonial Candle is no longer in business in Massachusetts. (<u>See</u> Affidavit of Counsel).

7. Plaintiff's counsel recently located an individual formerly associated with Colonial Candle, Constance Ippolito. In a recent conversation, Ms. Ippolito stated that: (a) Colonial Candle no longer operates a retail establishment on Cape Cod, and consequently the Colonial Candle staff had been laid off several years ago, (b) individuals with knowledge of the fire at issue moved out of state, (c) although she recalled the remodeling of the Premises which took place sometime in 1996 or 1997, she did not recall who may have installed the fan unit, and (d) the records relating to Colonial Candle's business operations at the Premises were maintained by Candle Corporation of America at its offices on East Touhy Avenue, Des Plaines, Illinois. (<u>See</u> Affidavit of Counsel). Consequently, both parties now intend to seek documents from Candle Corporation by service of a subpoena in Des Plaines, Illinois, and will need time to serve process and conclude this deposition.

8. To date, discovery has not established who was responsible for the installation of the fan unit. (See Affidavit of Counsel). This may prove to be a critical fact in the resolution of this dispute.

9. At this time, the Plaintiff reasonably requires additional discovery, including taking the following depositions: (a) Colonial Candle Company/Candle Corporation of America and persons associated therewith, probably to be served and taken in Illinois, (b) the contractor who installed the fan unit and/or other persons who could identify same, and (c) possibly the Yarmouth Building Department. It is believed that these depositions will lead to discoverable information relating to the fire, including the events leading up to the fire, the person(s) responsible for installing said fan unit and information relating to the installation of same. (See Affidavit of Counsel).

10. Additionally, since the April 2006 status conference, the Plaintiff's attorney, Michael S. Field, has experienced certain health and personal issues, which have affected the Plaintiff's attorney's work schedule. (See Affidavit of Counsel).

11. The Plaintiff states that good cause exists for the relief requested herein, and that the additional time should be sufficient to identify who was responsible for installing the fan unit, determine whether the Defendant has valid defenses relating to the installation of the fan unit, and discover whether the Plaintiff may have claims against other persons relating to the installation of the fan unit and the fire at issue in this matter.

WHEREFORE, the Plaintiff respectfully asks that the scheduling order deadlines applicable to this case be each extended by sixty (60) days, and that it be given until October 1, 2006 to move to amend its pleadings to add additional defendants.

Assented to:
BROAN-NUTONE, LLC                                    SENECA INSURANCE COMPANY

By:/s/ *Christoper A. Duggan*                        By: /s/ *Michael S. Field*
Christopher A. Duggan, Esq.                          Michael S. Field, Esq. – BBO #164600
BBO 544150                                           Field & Schultz
SMITH & DUGGAN LLP                                   183 State Street, 2nd Floor
2 Center Plaza                                       Boston, MA 02109
Boston, MA  02108                                    (617) 723-3900
(617) 228-4400

## CERTIFICATE OF SERVICE

I, Michael S. Field, do hereby certify that a true copy of the above document was served upon the attorney of record for each other party via email and first class mail postage prepaid on this 22nd day of June 2006.

/s/ *Michael S. Field*_____
Michael S. Field

UNITED STATES DISTRICT COURT
COMMONWEALTH OF MASSACHUSETTS

C.A. NUMBER: 05-11401-MLW

|  |  |
|---|---|
| SENECA INSURANCE COMPANY<br>As Subrogee of Surfside Condominium<br>Association,<br>                 Plaintiff,<br><br>v.<br><br>BROAN-NUTONE LLC,<br><br>                 Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**AFFIDAVIT IN SUPPORT OF PLAINTIFF'S ASSENTED TO MOTION TO EXTEND SCHEDULING ORDER DEADLINES**

1. My name is Michael S. Field, I am an attorney for the Plaintiff in this matter, and I am duly admitted to the bar of the Commonwealth of Massachusetts and to this Court. I am in good standing.

2. I am a solo practitioner with one of counsel associate.

3. On April 20, 2006, the parties appeared before the Court for a status conference. At that time, discovery was progressing, and it was then my belief that further time for fact discovery would not be necessary.

4. Based upon earlier deposition testimony and various reports relating to the fire, a representative of my office went to the Town of Yarmouth Town Hall during March, 2006 for the purpose of searching the building department's records to determine whether any permits existed for work relating to renovations to the second floor of the premises during 1996 and 1997. A building permit was discovered (a true copy of which is attached hereto as **Exhibit A**) but with no apparent notation regarding the issuance of permits for electrical or wiring work or the inspection of same. The secretary at the building department (Ms. Cipro) was asked to determine whether any other records could exist concerning such electrical work.

5. On April 17, 2006, my office wrote to the Town of Yarmouth Building Department confirming our visit and our request to the secretary that she check to see if there are any additional records relating to electrical work accomplished at the premises. (A true copy of which is attached as **Exhibit B**).

6. By letter dated May 4, 2006, the building commissioner for the Town of Yarmouth wrote back to me advising that the wiring inspector of the town had researched his records and can find "no record of any permits having been issued for the time frame referenced in your letter". (A true copy of which is attached as **Exhibit C**).

7. On Friday, May 19, 2006, a deposition of Dominic J. Albano, Jr., a former owner of the premises where the fire took place, was taken by the Defendant. Mr. Albano testified that the second floor of the premises (where the bathroom was located that contained the fan which the Plaintiff alleges caused the fire) was remodeled by his then tenant Colonial Candle Company; which maintained offices on the second floor and a retail store on the ground floor. Mr. Albano further testified that such renovations were arranged and paid for by his then tenant, Colonial Candle; and that he had no knowledge as to which individuals or contractors actually conducted the renovations for Colonial Candle; or whether new fixtures (i.e. fans manufactured by the Defendant) were installed in the bathrooms at the time of the renovations. He further testified that his "contact person" at Colonial Candle had been "Connie", who has also been referred to in a subsequent owner's deposition as a manager. (See copy of Dominic J. Albano, Jr. deposition, May 19, 2006, p. 9-10, 13 appended hereto as **Exhibit D**).

8. The Defendant previously noticed a deposition for the record keeper for Colonial Candle to produce, among other things, records relating to the installation of the fan unit and records regarding the remodeling of the second floor, generally. Counsel for the Defendant informs me that no records were produced, and no testimony was taken, however, because Colonial Candle is no longer in business in Massachusetts.

9. Recently my office located Connie Ippolito, who is presently a resident of Centerville, Massachusetts. As set out in our motion, Ms. Ippolito stated that Colonial Candle is no longer in business on the Cape, and that although she recalls the remodeling of the premises and believes electrical work was done, she could not recall the individuals who may have effected the electrical wiring or installed any fans. She stated that for any records of the Colonial Candle operation at the premises, we should contact Candle Corporation of America in Des Plaines, Illinois.

10. To date, discovery has not established who was responsible for the installation of the fan unit.

11. It is anticipated that the Defendant will contend that the fire at issue in this matter may have been the result of an improper installation of the fan unit at issue in this matter by the contractor responsible for same.

12. At this time, the Plaintiff reasonably requires additional discovery, including taking the following depositions: (a) Colonial Candle Company/Candle Corporation of America and persons associated therewith, (b) the contractor who installed the fan unit and/or other persons who could identify same, and (c) possibly the Yarmouth Building Department. It is believed that these depositions will lead to discoverable information relating to the fire, including the events leading up to the fire, the person(s) responsible for installing said fan unit and information relating to the installation of same.

13. During the past three months, I have experienced certain medical and personal issues, which has affected my ability to work full days. Should the Court require specific facts corroborating these issues, I can submit a further affidavit, but request that such information remain sealed.

Signed under the pains and penalties of perjury this 22nd day of June, 2006.

/s/ *Michael S. Field*
Michael S. Field, Esq. – BBO #164600
Field & Schultz
183 State Street, 2nd Floor
Boston, MA 02109
(617) 723-3900

**CERTIFICATE OF SERVICE**

I, Michael S. Field, do hereby certify that a true copy of the above document was served upon the attorney of record for each other party via email and first class mail postage prepaid on this 22nd day of June 2006.

/s/ *Michael S. Field*
Michael S. Field

# EXHIBIT A

```
PERMIT 708                    P         9/25/96
LOT W7-1 &W7-2                          9/25/96

                                   footing 10/22/96
                              inside - Frame 10/23/96
Colonial Candle
589 Route 28                  (Insulation - 11/5/96 w/ partial)
West Yarmouth, MA              office area only

Finish 2nd floor, 7 rooms & 1 conference room.
New roof                                $35,000.00



SHEET 26
```

# EXHIBIT B

# FIELD & SCHULTZ

**ATTORNEYS AT LAW**
A Sole Proprietorship

183 STATE STREET
BOSTON, MASSACHUSETTS 02109
*Andrew C. Schultz is no longer affiliated with this firm.*

TEL. (617) 723-3900
FAX (617) 723-8995
fieldschultz@earthlink.net

April 17, 2006

*VIA FEDEX# 7920 7305 9270*
James Brandolini, Building Commissioner
Town of Yarmouth
1146 Route 28
South Yarmouth, MA 02664

    Re:    589 Route 28 a/k/a 585 Route 28, West Yarmouth, MA (the "premises")

Dear Commissioner Brandolini:

    Recently, an associate from this office, Konstantine Papadopoulos, obtained a copy of the Yarmouth Building Departments records relating to the above referenced. After reviewing and obtaining a copy of the departments' records, Mr. Papadopoulos spoke with a Ms. Cipro from your office who indicated that there may be additional documentation (i.e. documents relating to electrical work at the premises) relating to this file in an off-site location. Ms. Cipro recommended that this office contact you in writing in connection therewith.

    In particular, I am seeking documentation relating to a certain "build out" on the second floor of the premises which took place in or about 1996 or 1997, and any documentation relating to a fire which occurred at the premises on December 15, 2003. It appears that permission to build was requested in the name of Colonial Candle, a former tenant of the premises and that a permit was issued (#708) on or about September of 1996 (See enclosed). More specifically, I am seeking documentation relating to any and all electrical work which was completed at the premises in connection with the "build-out" (i.e. electrical permits and approvals), and any inspections conducted by the Town of Yarmouth after the fire.

    Please note that I am seeking this information in connection with a subrogation claim which this office is handling on behalf of Seneca Insurance Company and against the manufacturer of a certain fan unit which is believed to have caused the fire. In connection therewith, certain witnesses have claimed that after the fire the premises were inspected by a town electrical inspector and other individuals as well. Any documentation and information which you may be able to provide would be appreciated.

    Should you have any questions, please call me. Thank you for your anticipated assistance with this matter.

Yours truly,



MICHAEL S. FIELD

# EXHIBIT C

**TOWN OF YARMOUTH**
**BUILDING DEPARTMENT**
1146 Route 28, South Yarmouth, MA 02664
508-398-2231 ext. 261 Fax 508-398-0836

May 4, 2006

Field & Schultz
Attorneys at Law
Michael S. Field
183 State Street
Boston, MA 02109

Re: 598 Route 28 a/k/a 585 Route 28 W.Y.

Dear Mr. Field:

This is to serve as a follow-up to your letter of April 17, 2006 concern a request for information with respect to a recent fire at the premises referenced above.

Please be advised that Wiring Inspector Kent Elliott researched the records under his care and custody and reports that he can find no record of any permits having been issued for the time frame referenced in your letter. There is however, a recent electrical permit dated March 29, 2006 No.E-06-885 for work currently being performed (copy enclosed).

Very truly,

James D. Brandolini, C.B.O.
Building Commissioner

Encl. 1

cc: Inspector Elliott

# EXHIBIT D

Dominick J. Albano, Jr.
Volume 1 - May 19, 2006

### Page 30

1  Q. And that would be over on the first floor
2  underneath where the leaks were?
3  A. Here. (Indicating.)
4  Q. Do you want to draw that in too, please.
5  A. (Witness complies.)
6  Q. Any other major renovations that you did to
7  the building from '87 to '94?
8      MR. PAPADOPOULOS: Objection.
9  A. Exterior landscaping.
10 Q. But not to the structure or anything
11 interior to the structure, any other major
12 renovations?
13     MR. PAPADOPOULOS: Objection.
14 A. Not to my recollection.
15 Q. Other than the Morgan Company, Charles
16 Morgan, and Sea Level, are you aware of any other
17 contractor, name of any other contractor who worked
18 for you doing interior renovations?
19 A. Not to my recollection, no.
20 Q. Now, you said from '94 Cuffey's moved out,
21 thereabouts?
22 A. Yes.
23 Q. And from '94 to '96, the building was
24 basically unoccupied, or '95, '96, is that correct?

### Page 31

1  A. Yes.
2  Q. Were you actively attempting to lease it at
3  the time?
4  A. No.
5  Q. At some point did you attempt to lease the
6  building?
7  A. Yes.
8  Q. And you did so?
9  A. Yes.
10 Q. To Colonial Candle?
11 A. Yes.
12 Q. And that was, I think, in '96 or
13 thereabouts?
14 A. Best of my recollection, yes.
15 Q. Who was it that you dealt with at Colonial
16 Candle, was there someone in particular?
17 A. Connie. Yes, Connie.
18 Q. Did you have a written lease with Colonial
19 Candle?
20 A. Yes.
21 Q. Do you have a copy of that?
22 A. Not in my possession.
23 Q. Would you know how to get one if you needed
24 to?

### Page 32

1  A. I could try, but I...
2  Q. How would you go about it?
3  A. I would contact my attorney and see if he
4  has an old copy.
5  Q. Do you know anybody at Colonial Candle
6  today that you could talk to?
7  A. No.
8  Q. Do you have any idea what Connie's last
9  name was?
10 A. No.
11 Q. Do you know if she -- is it a she, Connie,
12 I take it?
13 A. Yes.
14 Q. Does she live on the Cape or did she?
15 A. I don't know.
16 Q. With whom did you negotiate the lease for
17 Colonial Candle?
18 A. I don't recall his name.
19 Q. What was Connie's position?
20 A. General manager, I believe.
21 Q. Was she there throughout the time that
22 Colonial Candle occupied the building?
23 A. Not the whole time.
24 Q. When did she leave?

### Page 33

1  A. I don't know. She was there for the
2  duration. She worked with me.
3  Q. That means up to 2004, when you sold it?
4  A. Yes.
5  Q. To whom did you sell it?
6  A. Richard Vigeant.
7  Q. You mentioned that. I'm sorry.
8      Were there any modifications or
9  alterations to the building while Colonial Candle
10 owned it, when Colonial Candle leased it from you?
11 A. Yes.
12 Q. And what were they?
13 A. Upstairs office renovations.
14 Q. Can you tell me when those upstairs office
15 renovations were done?
16 A. Best estimates, first part of their lease
17 period. So '97-ish.
18 Q. What was done to the upstairs after
19 Colonial Candle took a leasehold interest in the
20 property?
21     MR. PAPADOPOULOS: Objection.
22 A. Office remodeling upstairs.
23 Q. Okay. Can you describe the office
24 remodeling that was done?

10 (Pages 34 to 37)

Dominick J. Albano, Jr.
Volume 1 - May 19, 2006

                                                                    34
1        MR. BRAVERMAN: Objection.
2     A. Can I point to this?
3     Q. Absolutely.
4     A. They remodeled this area here.
5  (Indicating.)
6     Q. The office and the bathroom areas?
7     A. To the best of my recollection, yes. And
8  then they definitely remodeled all over this area
9  here. (Indicating.)
10    Q. So they remodeled the office, the bathroom
11 areas?
12    A. Yes.
13    Q. And the areas under the --
14    A. They definitely upscaled these bathrooms.
15 They remodeled these bathrooms. Again, my best
16 recollection, because this was -- and then they
17 remodeled the office area over here.
18    Q. The "over here" area is where you put the
19 main leak areas, that area? I'm just trying to
20 describe where you're pointing to.
21    A. Yes. The building comes over here quite a
22 bit, over the bar down below. There's a large area
23 up above that goes over here, and that's the area
24 that they remodeled as well.

                                                                    35
1     Q. Can you tell me what it was -- you said
2  they definitely upscaled the bathroom areas. What
3  did they do to the bathrooms areas?
4        MR. PAPADOPOULOS: Objection.
5     A. To the best of my recollection, they made
6  improvements to the bathroom. But like I said
7  before, I don't recall as well what was done over
8  here versus over here. (Indicating.)
9     Q. Understand. What do you recall about what
10 was done over in the bathroom and office areas?
11    A. I want to say there was some carpeting
12 done, some finish work. I think I remember -- I
13 just remember it being, you know, a lot nicer than
14 the way it used to be when we were up there, but I
15 can't specifically picture in my head what was
16 there.
17    Q. I'm going to ask a silly question --
18 another silly question. You wouldn't have any
19 pictures of the upstairs area, how it looked before
20 the remodeling, would you?
21    A. Possibly.
22    Q. Not as silly as I thought.
23       Would you agree to give those to
24 Mr. Braverman, please.

                                                                    36
1     A. I don't have them in my possession, though.
2     Q. Where would you get them?
3     A. I would have to do some digging.
4     Q. Okay. Would you be able to do that and get
5  them to Mr. Braverman for me, please?
6     A. I will try, yes.
7     Q. Thank you.
8        The next question, do you have any
9  photographs of how the area looked after the
10 remodeling was done?
11    A. No.
12    Q. So my request would be broader to whatever
13 photographs you have of this building, would you
14 agree to get them to Mr. Braverman for me, please?
15       MR. BRAVERMAN: I think the -- what the
16 witness is saying is he doesn't have them.
17       MR. DUGGAN: But he's willing to look
18 and --
19       MR. BRAVERMAN: If he can obtain them,
20 he's willing to do that.
21       MR. DUGGAN: Right.
22       THE WITNESS: Yes.
23       MR. DUGGAN: And my first question was
24 specifically limited to the pre thing. Now I'm

                                                                    37
1  saying whatever you've got over there, get them to
2  you, John, and you and I will talk about production.
3  Fair enough.
4        MR. BRAVERMAN: Yes.
5     Q. All right?
6     A. Yes.
7     Q. Thank you.
8        Do you know if there were new fixtures
9  put in the bathrooms in '96 or '97 during the
10 Colonial Candle renovations?
11    A. I don't. I don't recall.
12    Q. Who did the renovations for Colonial
13 Candle?
14       MR. PAPADOPOULOS: Objection.
15    A. I don't know.
16    Q. My question then is either an individual or
17 a corporation or a company; do you have any idea at
18 all?
19    A. No.
20    Q. Do you have any idea how I would find out
21 who did those renovations or installations?
22    A. Yes.
23    Q. Who?
24    A. Connie.

Dominick J. Albano, Jr.
Volume 1 - May 19, 2006

---

46

1    THE WITNESS: Can I just confer with my
2  attorney for a second?
3    MR. DUGGAN: Absolutely. Any time you
4  want.
5    (A recess was taken.)
6    MR. DUGGAN: Why don't I mark this as
7  the next exhibit.
8    (Marked, Exhibit 4, occupancy permit.)
9    Q. Mr. Albano, I'm going to show you a
10 document we've marked as Exhibit 4. I'll represent
11 to you, sir, that I got this from the town. It's a
12 building permit. You can see it's permit number 708
13 in the left-hand corner with dates over to the right
14 for I take it certain work that was done at the
15 Colonial Candle facility. Do you see that?
16   A. Yes.
17   Q. Does this basically concur with your memory
18 as to the time that the work was done upstairs?
19   MR. BRAVERMAN: By Colonial Candle?
20   MR. DUGGAN: By Colonial Candle.
21   A. Yes.
22   Q. Do you know if there was a certificate of
23 use and occupancy ever pulled after this date,
24 September of 1996?

---

47

1    A. I don't recall.
2    Q. Have you seen this before, before I showed
3  it to you?
4    A. No.
5    Q. Do you recognize any of the handwriting on
6  it?
7    A. No.
8    Q. I was trying to make out what was going on
9  here. Does that say -- can you make that out? Does
10 that say "footing" or "flooring"? What does that
11 say, do you know?
12   A. I don't know.
13   Q. Okay. There's a price here for $35,000.
14 Did you ever find out or have any memory of what it
15 cost Colonial Candle to do the renovations?
16   A. I don't.
17   Q. You weren't involved in that anyway, right?
18   A. (Witness shaking head.)
19   Q. True?
20   A. True.
21   MR. PAPADOPOULOS: Objection.
22   Q. Do you know who was in charge of the
23 build-out for Colonial Candle?
24   A. My best recollection would be Connie.

---

48

1    Q. Did you deal with anyone other than Connie
2  at Colonial Candle?
3    A. Yes.
4    Q. Who was that?
5    A. I don't recall the name.
6    Q. Does Colonial Candle still have a facility
7  on the Cape someplace?
8    A. No.
9    Q. Does the name Andrew Davidson ring a bell
10 with you?
11   A. It's possible.
12   MR. DUGGAN: We'll mark this as Exhibit
13 5.
14   (Marked, Exhibit 5, application.)
15   Q. The reason I ask is I'm showing you Exhibit
16 No. 5, which is an application --
17   A. For?
18   Q. I'm not sure. But I'm presuming it's for
19 the sign, actually. Do they have to take an
20 application out to put the sign out front, to modify
21 the sign?
22   A. Okay.
23   Q. And it's signed by Andrew Davidson,
24 assistant general manager. Does that ring a bell as

---

49

1  to someone you may have dealt with over the years?
2    A. Possibly he's the one who preceded Connie.
3    Q. I take it you haven't had any dealings with
4  him since?
5    A. No.
6    Q. Do you know if Candle Corporation of
7  America is still in Hyannis?
8    A. I don't believe so.
9    MR. DUGGAN: I'll mark this two-page
10 document as the next exhibit.
11   (Marked, Exhibit 6, history of
12 modifications.)
13   Q. I'm going to show you a document that I got
14 from the Town of Yarmouth as well that we marked as
15 Exhibit No. 6. It looks like it contains a history
16 of modifications to the building, what was Colonial
17 Candle. Do you see where I'm pointing to?
18   A. Down here?
19   Q. Yes.
20   A. Yes.
21   Q. According to this document, sir, somebody
22 applied for permit number 376 on June 3 of 1998, and
23 whatever work was completed on the same day?
24   MR. PAPADOPOULOS: Objection.