UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NUMBER: 05-11401-MLW

SENECA INSURANCE COMPANY
As Subrogee of Surfside Condominium
Association,

        Plaintiff,

v.

BROAN-NUTONE LLC,

        Defendant.

**DEFENDANT BROAN-NUTONE LLC'S MEMORANDUM AND LOCAL RULE 56.1 STATEMENT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND REQUEST FOR ORAL ARGUMENT**

Defendant Broan-NuTone LLC ("Broan") submits this memorandum of law and Local Rule 56.1 Statement of Material Facts in support of its motion for summary judgment and request for oral argument. For the reasons set forth in Broan's motion, the Transmittal Affidavit of Christopher A. Duggan ("Duggan Affidavit"), the Affidavit of Eliot Duncan, and those set forth below, summary judgment in favor of Broan should be granted.

**I.**     **STATEMENT OF THE CASE**

This is a products liability case arising out of a fire at the Surfside Condominium Association ("Surfside"). Plaintiff Seneca Insurance Company, the subrogation insurer, claims that the fire was caused by a bathroom exhaust fan, Model No. 657, manufactured by Broan-NuTone and installed around 1997. The plaintiff is claiming $197,244.59 in damages.

The insurance company bringing this lawsuit is a sophisticated litigant that knew, or should have known, within a few days after the fire that there was a potential subrogation claim against Broan. However, the plaintiff waited over one year, and only after the fire scene had been reclaimed, to notify Broan of the potential claims. Broan did not have the opportunity to investigate the fire scene, trace the wiring, or inspect any other potential sources for the fire in order to prepare its defense. As a result, Broan has been prejudiced and judgment should enter for Broan on the plaintiff's breach of warranty claims.

Moreover, plaintiff has failed to disclose any reliable expert testimony in support of its claims, and therefore cannot sustain its burden of proof against Broan.

## II.   LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS

1. On December 15, 2003, a fire broke out at the Surfside Condominium Association in West Yarmouth, MA. (Complaint ¶¶ 10, which is attached at Tab A of the Duggan Affidavit).

2. Following suppression, the Yarmouth Fire Department, together with the electrical and building inspectors, conducted a scene inspection, in which they concluded that the cause of the fire was "excessive heet [sic] from bathroom ventalation [sic] fan (possibly seized) in close proximity to structural components." (Yarmouth Fire Department Report, p. 2, 12/16/03, which is attached at Tab B of the Duggan Affidavit).

3. Surfside Condominium and its insurer, were notified of the fire the same day that it occurred. Their insurance adjuster, Wayne

Levasseur, was on site the day following the fire taking pictures. (Deposition of Wayne Levassuer, pp. 15-16)[1].

4. Following his examination of the fire scene, Mr. Levasseur concluded that the fire had started in or around an exhaust fan/light unit in the second floor bathroom. (Levasseur Dp., pp. 27-28).

5. Richard Vigeant, trustee of Surfside Condominium, removed the fan from the debris on the bathroom floor, and informed Mr. Levasseur that it had been set aside. (Deposition of Richard Vigeant, pp. 38-40, 45, 52-53).

6. Mr. Levasseur recommended that Seneca Insurance ("Seneca") retain a cause and origin expert to investigate the fire scene. In fact, he called Seneca from the fire scene on December 16, 2003, to request that a cause and origin expert be assigned. (Levasseur Dp., pp. 15-16).

7. Despite knowing that the fire department and Mr. Levasseur thought that the fire started in the bathroom fan/light fixture, Seneca did not notify Broan-NuTone about the fire at that time. (Affidavit of Eliot Duncan, ¶ 4).

8. Seneca hired fire investigator Jeffrey Lowe from Engineering Fire Investigation ("EFI"), who was on site conducting a cause and origin investigation on December 18, 2003. (Levasseur Dp., p. 48;

---

[1] Copies of the relevant portions of the deposition testimony are attached to the Duggan Affidavit that accompanies this Memorandum.

        EFI Report dated 12/29/03, which is attached at Tab E of the Duggan Affidavit).

9. Mr. Lowe reported that the condition of the fire scene was affected by the normal salvage and overhaul operations of the Fire Department, but both fan/light fixtures from the second floor men's and ladies' room had been pulled down, remained on site, and were available for inspection. Therefore, Mr. Lowe reported that his ability to determine the cause and origin of the fire was not impeded. (EFI Report dated 12/29/03).

10. During the course of his investigation, Mr. Lowe interviewed three employees of Colonial Candle, Surfside's tenant. Wayne Johnson, a manager from Colonial Candle, reportedly informed Mr. Lowe that the bathroom exhaust fan operated on a timer switch, which would not turn off properly. (Levasseur Dp., p. 58; EFI Report dated 12/29/03).

11. Melissa Hayes Vieira, a Colonial Candle employee, further confirmed that the switch would not shut off automatically. (Deposition of Melissa Vieira, pp. 40-44; Levasseur Dp., p. 58; EFI Report dated 12/29/03).

12. On December 29, 2003, Jeffrey Lowe prepared a report to Seneca Insurance stating that he had completed his inspection, and in his opinion, the fire had originated in the second floor ladies' room ceiling, directly at the ceiling fan/light fixture. He further

determined that the cause of the fire was an electrical malfunction in the fan/light fixture, but that the exact malfunction was undetermined. (EFI Report dated 12/29/03).

13. Now knowing that its own cause and origin expert concluded that the fire started in the bathroom fan/light fixture of the second floor ladies' room, Seneca still did not notify Broan-NuTone about the fire. (Affidavit of Eliot Duncan, ¶ 4).

14. Mr. Lowe, Seneca's cause and origin expert, did not preserve or request to have preserved, any of the wiring, switches, circuit breakers or even the fan/light fixtures from the second floor bathrooms. (EFI Report dated 12/29/03).

15. No one from Colonial Candle made any effort to preserve the fire scene. (Deposition of Walter Becker, pp. 161-62).

16. Although Mr. Vigeant had set the fan unit aside, he was never asked by Seneca to preserve it. (Vigeant Dp., pp. 38-40).

17. In fact, no one from Seneca took any steps to preserve any of the evidence from the fire scene, including the wiring, the circuit breakers, the timer switch that had reportedly failed to turn off automatically, or the fan/light fixture that was thought to be the cause of the fire. The fixture was left on the floor of the fire scene. (Levasseur Dp., p. 72).

18. Whalen Restoration, at the request of the plaintiff, began its reclamation of the fire scene on December 15, 2003. (See

documents produced by Whalen Restoration, which are produced at Tab H of the Duggan Affidavit).

19. Whalen Restoration completed its work on or before August 12, 2004. (See documents produced by Seneca Insurance, which are produced at Tab I of the Duggan Affidavit).

20. The structures in the bathroom were taken down and the wiring and switches were thrown away. (Vigeant Dp., pp. 38-40.) No electrician looked at the burnt wiring after the fire. It was all demolished and removed as trash. (Vigeant Dp., p. 62).

21. On June 25, 2004, Wayne Levasseur picked up the bathroom fan/light fixtures and delivered them to Industrial Services Engineering ("ISE") for further inspection. (Levasseur Dp., p. 70).

22. For the seven months from December 15, 2003 to June 25, 2004, the bathroom fan units sat on the floor at Surfside Condominium. (Levasseur Dp., p. 72).

23. Mr. Levasseur testified that during the seven months that the fans sat on the floor at Surfside Condominium, he does not know whether anyone looked at them or if they were altered in any way. (Levasseur Dp., p. 72).

24. During the time that the suspected fan units were on the floor, demolition and renovation work was being completed. (Levasseur Dp., pp. 70-72).

25. ISE completed an inspection of the fan/light units and concluded that the unit from the second floor ladies' bathroom caused the fire. ISE prepared a report of its findings on August 2, 2004 and faxed it to Seneca Insurance. (ISE Report dated 8/12/04, which is attached at Tab J of the Duggan Affidavit).

26. No one from ISE examined the fire scene or the switches or the wiring for the fan/light unit. (ISE Report dated 8/12/04).

27. Seneca Insurance first notified Broan-NuTone of the fire on January 10, 2005, thirteen months after the fire occurred. (Letter from Seneca to Broan dated 1/10/05; Affidavit of Eliot Duncan, ¶ 4, Exhibit A).

28. By the time Broan-NuTone was notified of the fire, Whalen Restoration had already completed its reclamation work. The wiring, circuit breakers and switches had not been preserved. Even the fan/light unit that was suspected the first day of the fire was not adequately preserved. It had been left lying on the floor of the fire-damaged building for seven months, during which time Whalen Restoration had been repairing and cleaning the scene. (Levasseur Dp., pp. 70-72; Affidavit of Eliot Duncan, ¶¶ 6, 8).

29. Broan was denied the opportunity to inspect the fire scene and to explore alternative causes for the fire. (Affidavit of Eliot Duncan, ¶ 5).

30. Furthermore, Broan was denied the opportunity to interview timely critical witnesses from Colonial Candle, Surfside's tenant. (Duncan Affidavit, ¶ 7.) The witnesses' memories would certainly have been clearer had they been interviewed shortly after the fire occurred. (Vieira Dp., pp. 38-39).

31. In the days following the fire, Jeffrey Lowe, Seneca's cause and origin expert, interviewed the Colonial Candle manager and employees. They reported problems with the timer switch that activated the bathroom fan unit. (EFI Report dated 12/29/03).

32. No effort was made by Seneca or its insured or its cause and origin expert to preserve the timer switch, despite knowing that there had been a reported malfunction in that switch.

33. Colonial Candle vacated the premises on January 31, 2004 and closed its business operations in West Yarmouth, Massachusetts. (Becker Dp., p. 175).

34. On December 16, 2005, Broan served interrogatories on Seneca, which included a request for information on anticipated expert testimony. Interrogatory No. 3 stated:

> Identify each person whom Seneca Insurance Company ("Seneca") expects to call as an expert witness at trial. For each, state:
>
> A. the subject matter on which the expert is expected to testify;
>
> B. the substance of the facts and opinions to which the expert is expected to testify; and

        C.    a summary of the grounds for each opinion.

Plaintiff has failed to provide any answer to this Interrogatory, and has not provided expert disclosures to Broan. The deadline for plaintiff's expert disclosures was December 29, 2006. (Duggan Affidavit, ¶ 15, Tab K.).

35.    Furthermore, pursuant to Fed. R. Civ. P. 30(b)(6), Broan has served three separate notices of taking deposition of Greg Polsky or some other designee of Seneca Insurance, and the plaintiff has failed to produce any witness in response to those notices. (Duggan Affidavit, ¶ 16, Tab L).

### III. SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See, e.g., Sands v. Ridefilm Corp.*, 212 F.3d 657, 660-61 (1st Cir. 2000); *Barreto-Rivera v. Medina-Vargas*, 168 F.3d 42, 45 (1st Cir. 1999). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rather, to be considered material, a disputed fact must have the potential to "affect the outcome of the suit under the governing law." *Id.* at 248, 106 S.Ct. 2505. The party moving for summary judgment first bears the burden of demonstrating that there are no genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323,

106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Sands v. Ridefilm Corp.*, 212 F.3d at 661. After such a showing, the burden then shifts to the nonmoving party to demonstrate, on each issue for which he has the burden of proof, that a trier of fact could reasonably find in his favor. *Sands v. Ridefilm Corp.*, 212 F.3d at 661. Upon examining the facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in its favor, the Court is required to determine if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. *See also Sands v. Ridefilm Corp.*, 212 F. 3d at 661.

### IV.   ARGUMENT

The subrogation plaintiff has brought three separate causes of action against Broan. Summary judgment should enter on all counts because plaintiff has failed to provide any competent and reliable expert opinion testimony on negligence, breach of warranty or causation. Additionally, summary judgment should be granted to Broan on the Second Cause of Action, which asserts claims for breach of warranty, as the plaintiff failed to provide reasonably prompt notice to Broan of the alleged breach and Broan was prejudiced by this delay. Summary judgment should also be granted to Broan on the Third Cause of Action, which asserts a claim for strict liability, because Massachusetts does not recognize such claims.

#### A. Summary Judgment Is Proper as Plaintiff's Claims are Unsupported by Reliable Expert Testimony

Plaintiff's claims against Broan cannot be sustained without competent and reliable expert opinion testimony with respect to causation, negligent design/manufacture, and breach of warranty. Broan requested that the plaintiff identify its experts and their anticipated testimony in its Interrogatory No. 3, but the plaintiff has

failed to come forward with any expert testimony or theory on the liability issues. In fact, plaintiff has failed to provide <u>any</u> answers to interrogatories and did not produced expert disclosures by the deadline of December 29, 2006. (Duggan Affidavit, ¶ 15, Tab K).

Generally, claims involving defective design or manufacture of a product require expert testimony. *See Enrich v. Windmere Corp.*, 416 Mass. 83, 87 (1993) ("The presence of such a defect [that some defect in the fan caused the fire or that, if such a defect existed, it was present at the time the fan was sold] cannot be inferred in the absence of expert testimony." (explanatory text added)). An inference satisfying the preponderance of the evidence standard as to how an alleged defect caused the plaintiff to be injured requires expert testimony whenever the inference is beyond the scope of ordinary experience. *Compare Triangle Dress, Inc. v. Bay State Serv., Inc.*, 356 Mass. 440, 441-42 (1969) (expert testimony required to prove cause of fire in air conditioner) *with Smith v. Ariens Co.*, 375 Mass. 620, 625 (1978) (expert testimony unnecessary to determine "whether unshielded metal protrusions on the handle bar of a snowmobile" constitutes design defect).

Typically, jurors are ill suited from their common experience to determine whether design choices render a product unreasonably dangerous because they must weigh the gravity and likelihood of the danger against the feasibility, cost, and adverse consequences of a safer alternative design. *Back v. Wickes*, 375 Mass. 633, 642 (1978). Without proof of how a safer alternative design could reasonably have been adopted, jurors cannot render a verdict consistent with these legal standards. *See Kotler v. American Tobacco Co.*, 926 F.2d 1217, 1225 (1st Cir. 1990), *vacated*, 112 S. Ct. 3019, *reaffirmed*, 981 F.2d 7 (1st Cir. 1992).

Plaintiff offers no competent, reliable expert testimony in support of its claims against Broan, and therefore, summary judgment should enter for Broan.

### B. Summary Judgment Is Proper on The Third Cause of Action Because Massachusetts Does Not Recognize the Doctrine of Strict Liability

In the Third Cause of Action of the Complaint, the plaintiff asserts claims that solely allege liability under the doctrine of strict liability. Massachusetts does not recognize the doctrine of strict liability and therefore has declined to allow claims for strict liability in tort for defective products. *Commonwealth v. Johnson Insulation*, 425 Mass. 650, 653 (1997); *Garcia v. MBTA*, 3 Mass. L. Rep. 219 (1994). Summary judgment must be granted to Broan on these claims.

### C. Summary Judgment Is Proper on the Second Cause of Action Because Broan Was Prejudiced by Plaintiff's Failure to Provide Timely Notice of the Fire

Massachusetts law embodies a notice requirement for warranty claims. Generally, a plaintiff must give reasonably prompt notice of its warranty claim to a potential defendant. If it fails to do so, and the defendant is prejudiced by the delay in notice, the warranty claim is barred even if it is brought within the statute of limitations. G.L. c. 106, § 2-318; *Sacramona v. Bridgestone/Firestone, Inc.*, 106 F.3d 444, 449 (1st Cir. 1997); *Castro v. Stanley Works*, 864 F.2d 961, 963 (1st Cir. 1989); *Cameo Curtains, Inc. v. Philip Carey Corp.*, 11 Mass. App. Ct. 423, 426 (1981). The policy underlying this rule stems from the serious risk that is placed on potential defendants by warranty liability: lack of privity and a statute of limitations that may run from the date of injury, and not the date of sale. *Cameo Curtains*, 11 Mass. App. at 416. The counterbalance is the requirement of prompt notice, which allows the defendant to gather evidence in a timely fashion. *Sacramona*, 106 F.3d at 449.

1.   **The Plaintiff Initially Suspected a Broan Fan Caused the Fire and Failed to Provide Timely Notice of the Fire to Broan**

By at least the day following the fire, the plaintiff-insurer suspected that a fan/light unit had caused the fire. (Levasseur Dp., pp. 27-28). Following his inspection of the fire scene on December 16, 2003, Wayne Levasseur informed Seneca Insurance that a fan/light unit in the second floor women's bathroom was thought to be the cause of the fire. (Levasseur Dp. pp. 27-28). The fire department records confirmed this belief. (Yarmouth Fire Dept. Report, p. 2). Moreover, local newspapers had reported on December 16, 2003 that a bathroom fan had caused the fire. (*Cape Cod Times* article dated 12/16/03, which is attached at Tab M of the Duggan Affidavit).

At the time of his inspection, Mr. Levasseur called Seneca Insurance *from the fire scene* to recommend that Seneca retain a cause and origin expert to inspect the scene as soon as possible. (Levasseur Dp., pp. 27-28). Jeffrey Lowe from EFI was on site two days later on December 18, 2003. In his report, he, too, concluded that the fan/light unit was the cause of the fire. (EFI Report dated 12/29/03). His report was sent to Seneca Insurance on December 29, 2003. (EFI Report dated 12/29/03).

Within days of the fire, Seneca Insurance, a sophisticated plaintiff who is familiar with subrogation claims and practices, was well aware of the potential claims against Broan-NuTone. Despite being armed with this information, Seneca took no steps to preserve the fire scene, the wiring, the switches, the circuit breakers, or even, unbelievably, the very fan that they and their experts believed caused the fire.

The plaintiff, as the insurer for the condominium association that owned the building, had the ability to control the fire scene and preserve the relevant evidence. Nevertheless, they did nothing to preserve the evidence, and, in fact, contracted for the

scene to be cleared and repaired by Whalen Restoration. During that reclamation, the fan/light unit sat on the floor of the fire scene, with no effort made to protect it, preserve it, or even move it out of the way. Only after the clean up was completed did Seneca decide to remove the fan from the fire scene – seven months after the fire occurred. (Levasseur Dp., p. 72). Seneca then waited an additional seven months before notifying Broan-NuTone of the fire. (Letter from Seneca to Broan dated 1/10/05).

There can be little doubt that the plaintiff-insurer knew of the importance of preserving the fire scene. Wayne Levasseur, the claims adjuster hired by Seneca, testified that he wants an insurance company to know as soon as possible if there is a potential subrogation case to give them the opportunity to investigate. He further testified that it is important to have evidence preserved so it can be viewed. (Levasseur Dp., pp. 40-41). Unfortunately, Seneca did not timely notify Broan and afford it the opportunity to inspect the fire scene. (Affidavit of Eliot Duncan, ¶ 5). Wayne Levasseur could offer no explanation as to why Broan was not notified of the fire when it occurred. (Levasseur Dp., p. 42).

It is undisputed that the plaintiff (1) knew the importance of investigating the fire scene (it hired a cause and origin expert the day following the fire); (2) knew or should have known of a potential claim against Broan as early as December 16, 2003 (when Mr. Levasseur was on site) and, at the latest, December 29, 2003 (when EFI prepared its cause and origin report); and (3) the plaintiff waited until January 10, 2005 to put Broan on notice of the claim while failing to take adequate steps to preserve the evidence and permitted the fire scene to be destroyed. (Affidavit of Eliot Duncan, ¶¶ 4-8).

### 2. Broan was Prejudiced by the Late Notice

Broan has been prejudiced. It did not have an opportunity to investigate the fire scene and conduct a thorough cause and origin analysis of its own. Moreover, because of plaintiff's failure to preserve adequately evidence from the fire scene, including wiring, switches, and circuit breakers, Broan is not in a position to conduct a proper cause and origin investigation. (Affidavit of Eliot Duncan, ¶¶ 5-6). Furthermore, Broan was also denied the opportunity to interview timely witnesses from Colonial Candle, Surfside's tenant, who informed Seneca's cause and origin expert that the switch that operated the bathroom fan was not working properly. (Affidavit of Eliot Duncan, ¶ 7).

The loss of material evidence establishes prejudice. *Smith v. Robertshaw Controls Co.*, 410 F.3d 29, 36 (1st Cir. 2005). Assuming that there has been an unreasonable delay in providing notice, the showing of prejudice is relatively easy:

> It is enough that the delay may well have deprived the defense of useful evidence. No showing is required that lost evidence would inevitably have altered the outcome…To show prejudice based on lack of notice, the defendants needed only to prove that evidence was lost that might well have helped them.

*Sacramona*, 106 F.3d at 449. *See also Castro*, 864 F.2d at 964 ("Prejudice may result when 'evidence which may reasonably have been developed by prompt investigation has been lost.'")(citation omitted). That is the case here. The plaintiff's destruction of the fire scene and the evidence has served to obstruct and effectively deny Broan from being able to properly, fully and ably defend this action. The reclamation of the fire scene, prior to notifying Broan of the fire, prevented Broan from conducting an investigation of the fire burn patterns, the wiring, the switches, potential causes of the fire, and any other evidence that would assist in their defense of the claim. Broan was denied the

opportunity to personally inspect the fire scene and seek alternative causes of the fire. Its inability to conduct a proper investigation, due to the lack of notice, is clearly prejudicial. *See Smith v. Robertshaw*, 410 F.3d at 36-37.

Given the severe prejudice created by the late notice, summary judgment must be granted on the plaintiff's breach of warranty claims contained in the Second Cause of Action of the Complaint. *Sacramona*, 106 F.3d at 449; *Smith v. Robertshaw*, 410 F.3d at 36-37; *Castro,* 864 F.2d at 964.

## V.   CONCLUSION

For the reasons set forth above, the Court should grant summary judgment in favor of Broan on all counts.

Respectfully submitted,
BROAN-NUTONE LLC,
By its attorneys,


/s/ Christopher A. Duggan
Christopher A. Duggan
BBO No. 544150
SMITH & DUGGAN LLP
Lincoln North
55 Old Bedford Road
Lincoln, MA  01773-1125
(617) 228-4400

Dated: February 6, 2007

## CERTIFICATE OF SERVICE

The undersigned certifies service of the foregoing on February 6, 2007 in accordance with Federal Rule of Civil Procedure 5(b)(2) and United States District Court for the District of Massachusetts Electronic Case Filing Administrative Procedure § E(2) as to all parties, having appeared in this action through counsel admitted to practice before this Court, identified by the Clerk as receiving Notice of Electronic Filing.

Counsel for Defendant BROAN-NUTONE LLC,

/s/ Christopher A. Duggan
Christopher A. Duggan
BBO No. 544150
SMITH & DUGGAN LLP
Lincoln North
55 Old Bedford Road
Lincoln, MA  01773-1125
(617) 228-4400

Dated: February 6, 2007