```
                UNITED STATES DISTRICT COURT
                  DISTRICT OF MASSACHUSETTS


SENECA INSURANCE COMPANY
as subrogee of SURFSIDE
CONDOMINIUM ASSOCIATION              CIVIL ACTION NO.
    Plaintiff,                       05-11401-MBB

    v.

BROAN-NUTONE, LLC,
    Defendant.
```

**MEMORANDUM AND ORDER RE:**
**PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S MOTION FOR SUMMARY**
**JUDGMENT; PLAINTIFF'S MOTION FOR AN ORDER OF VOLUNTARY**
**DISMISSAL UPON SUCH TERMS AND CONDITIONS AS THE COURT DEEMS**
**PROPER (DOCKET ENTRY # 37); DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**
**(DOCKET ENTRY # 31)**

**August 7, 2007**

**BOWLER, U.S.M.J.**

Pending before this court are three motions. First, plaintiff Seneca Insurance Company, as subrogee of Surfside Condominium Association, Inc. ("Seneca" or "plaintiff"), moves to strike defendant Broan-Nutone, LLC's motion for summary judgment. (Docket Entry # 37). Second, plaintiff moves for voluntary dismissal pursuant to Rule 41(a)(2), Fed. R. Civ. P. ("Rule 41(a)(2)"). (Docket Entry # 37). Third, defendant Broan-Nutone, LLC. ("Broan" or "defendant") seeks summary judgment pursuant to Rule 56(b), Fed. R. Civ. P. ("Rule 56(b)"), claiming there is no genuine dispute of material fact and that defendant is entitled to judgment as a matter of law. (Docket Entry # 31).

PROCEDURAL HISTORY

Seneca originally filed this action on March 16, 2005, in the Supreme Court of New York, County of New York ("the New York Supreme Court"). The complaint consists of three counts. In Count One, Seneca alleges that Broan was negligent in manufacturing, and/or designing exhaust fans and that Braun failed to warn consumers of the dangers inherent in the fans. In Count Two, Seneca alleges that Broan breached express and implied warranties that its product was safe for the use intended. In Count Three, Seneca alleges that Broan is liable under the doctrine of strict tort liability due to its allegedly defective product.

The instant case was removed pursuant to 28 U.S.C. §§ 1441 and 1332 from the New York Supreme Court to the United States District Court for the Southern District of New York on April 11, 2005. Defendant filed an answer on April 18, 2005. On May 16, 2005, defendant moved to transfer this case pursuant to 28 U.S.C. § 1404(a) which plaintiff opposed. The court allowed the motion to transfer resulting in the June 23, 2005 transfer of this action to the United States District Court for the District of Massachusetts for further proceedings.

As a result of discovery, Seneca determined that the action against Broan should be dismissed and that Surfside's tenant was the proper defendant. (Docket Entry # 37, ¶ 2). Consequently, Seneca filed a separate action against Blyth, Inc. d/b/a Colonial Candle Company ("Blyth") on December 14, 2006, Civil Action Number 06-12244-MLW.

On or about January 29, 2007, in this action, plaintiff's counsel informed defendant's counsel that plaintiff intended to file a stipulation of dismissal. (Docket Entry # 37, ¶ 4). Plaintiff and defendant's counsel, however, disagreed about whether the stipulation of dismissal should be with or without prejudice. Plaintiff was concerned that dismissing this action with prejudice would have a prejudicial effect on plaintiff's pending case with Surfside's tenant. (Docket Entry # 37, ¶ 6).

Unable to agree on the form of dismissal, Broan moved for summary judgment on February 6, 2007, thereby seeking a determination on the merits and a dismissal with prejudice. (Docket Entry # 31). In lieu of filing an opposition, plaintiff moved to strike the summary judgment motion and for a voluntary dismissal pursuant to Rule 41(a)(2).

FACTUAL BACKGROUND[1]

On December 15, 2003, a fire broke out at the Surfside Condominium Association ("Surfside") at 585 Main Street in West Yarmouth, Massachusetts. (Docket Entry # 35, Ex. B, p. 1). Following the fire's suppression, the Yarmouth Fire Department, together with various electrical and building inspectors, conducted an inspection. In a December 16, 2003 report, the Yarmouth Fire Department concluded that the cause of the fire was excessive heat from "possibly" a seized bathroom ventilation fan in close proximity to structural components. (Docket Entry # 35, Ex. B, p. 1).

Surfside and its insurer, Seneca, were notified of the fire on the day it occurred. Seneca's insurance adjuster, Wayne Levasseur ("Levasseur"), took pictures of the site the day after the fire on December 16, 2003. Levasseur concluded that the fire started in or around an exhaust fan/light unit in the second floor women's bathroom (henceforth: "the fan"). (Docket Entry # 35, Ex. C, pp. 15-16 & 27-28). Levasseur telephoned Seneca from the fire

---

[1] Facts are drawn from the summary judgment record including defendant's Local Rule 56.1 statement of undisputed material facts. Plaintiff did not oppose such facts. Pursuant to Local Rule 56.1, "material facts . . . set forth by the moving party will be deemed . . . to be admitted by the opposing parties unless controverted by the statement required to be served by opposing parties." Since plaintiff did not controvert them, all facts in defendant's statement are admitted.

4

site on December 16, 2003, to request an assignment of a cause and origin expert to investigate the fire. (Docket Entry # 35, Ex. C, pp. 15-16).

On December 18, 2003, Seneca hired fire investigator Jeffrey Lowe ("Lowe") from Engineering Fire Investigation. (Docket Entry # 35, Ex. C, p. 48). Lowe reported that the condition of the fire scene was affected by the normal salvage and overhaul operations of the fire department. According to Lowe, the fans from both the second floor men's and women's bathrooms had been removed and were on site and available for inspection. (Docket Entry # 35, Ex. E, p. 1). Lowe interviewed a number of employees of Colonial Candle ("Colonial"), Surfside's tenant, all of whom stated that the fan in the second floor women's bathroom operated on a timer switch that did not shut off automatically. (Docket Entry # 35, Ex. C, p. 58; Ex. E, pp. 3-4; Ex. F, pp. 40-44). In the December 29, 2003 report to Seneca, Lowe concluded that the fire originated in the second floor women's bathroom "at the ceiling fan/light fixture." Lowe reported that the cause of the fire was an electrical malfunction but the exact malfunction was undetermined. (Docket Entry # 35, Ex. E, pp. 4-5).

Plaintiff hired Whalen Restoration ("Whalen") to restore the fire scene and repair the damage. (Docket Entry

5

# 35, Ex. H). Whalen worked on the restoration project from December 15, 2003 until August 12, 2004. (Docket Entry # 35, Ex. H). Over the course of the restoration, the wires and switches from the fire site were thrown away. Additionally, both fans from the second bathrooms sat on the floor at Surfside from mid December 2003 until June 25, 2004. (Docket Entry # 35, Ex. D, pp. 38-40, 62 & 72). On that date, Levasseur took the second floor women's bathroom fan unit to Industrial Services Engineering ("ISE") for an inspection. (Docket Entry # 35, Ex. C, p. 70). In an August 2, 2004 report for plaintiff, ISE concluded that the supply wiring to the fan unit located in the second floor women's bathroom caused the fire. (Docket Entry # 35, Ex. J, p. 3).

Seneca notified Braun of the fire on January 10, 2005, 13 months after the fire occurred. (Docket Entry # 34, Ex. A, ¶ 4). By this date, Whalen had completed the restoration work and the wires, switches, and circuit breakers had not been preserved. In addition, the fan unit had remained on the floor of the premises during the entirety of Whalen's demolition and reconstruction work. (Docket Entry # 35, Ex. C, pp. 70-72; Docket Entry # 34, Ex. A, ¶¶ 6 & 8). Broan did not have the opportunity to inspect the fire scene to investigate alternate causes of the fire. (Docket Entry #

34, Ex. A, ¶ 5).  Furthermore, Broan did not have the opportunity to interview witnesses from Colonial in a timely manner.  (Docket Entry # 34, Ex. A, ¶ 7).

Colonial vacated the premises at 585 Main Street on January 31, 2004, and closed its business operations in West Yarmouth.  (Docket Entry # 35, Ex. G, p. 175).

I.  <u>PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR AN ORDER OF VOLUNTARY DISMISSAL (Docket Entry # 37)</u>

Plaintiff seeks to strike defendant's motion for summary judgment and further moves this court pursuant to Rule 41(a)(2) for an order of voluntary dismissal.  As stated above, in the course of discovery Seneca determined that the action against Broan should be dismissed and that Surfside's tenant was the proper defendant.  Plaintiff therefore commenced the aforementioned separate action against the tenant.  Plaintiff believes that, if a stipulation of dismissal is filed with prejudice, the tenant's ability to defend itself in the separate action will be "adversely affected."  (Docket Entry # 37 ¶ 9).  Broan, in moving for summary judgment, seeks to dismiss the claims against it with prejudice.

Rule 41(a)(2) allows the plaintiff to voluntarily dismiss an action with court approval "as long as no other

7

party will be prejudiced." Doe v. Urohealth Systems, Inc., 216 F.3d 157, 160 (1st Cir. 2000). The allowance or denial of a dismissal on a motion under Rule 41(a)(2) lies within the sound discretion of the court. Holbrook v. Andersen Corp., 130 F.R.D. 516, 519 (D.Me. 1990) (citing Alamance Indus., Inc. v. Filene's, 291 F.2d 142, 146 (1st Cir. 1961)). "In establishing the terms of dismissal under Rule 41(a)(2), a court should consider the legitimate interests of both the plaintiffs and the defendants." Read Corp. v. Bibco Equipment Co., Inc., 145 F.R.D. 288, 290 (D.N.H. 1993).

In making a dismissal determination, one factor to consider is the amount of prejudice that will accrue on the defendant. In fact, "the basic purpose of Rule 41(a)(2) is to freely permit the plaintiff, with court approval, to voluntarily dismiss an action so long as no other party will be prejudiced." Puerto Rico Maritime Shipping Auth. v. Leith, 668 F.2d 46, 50 (1st Cir. 1981) (quoting LeCompte v. Mr. Chip, Inc., 528 F.2d 601, 604 (5th Cir. 1976)). If a court finds an absence of any prejudice, a motion for voluntary dismissal should be allowed. Puerto Rico Maritime Shipping Auth. v. Leith, 668 F.2d at 50.

In addition, when deciding a Rule 41(a)(2) motion, courts typically look to "the defendant's effort and expense

of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and the fact that a motion for summary judgment has been filed by the defendant." Doe v. Urohealth Systems, Inc., 216 F.3d at 160 (quoting Pace v. Southern Express Co., 409 F.2d 331, 334 (7th Cir. 1969)). While these factors are not exhaustive and need not all be resolved in favor of the moving party before dismissal is appropriate, they serve as a guide to the court. See Doe v. Urohealth Systems, Inc., 216 F.3d at 160; see also Tyco Labs, Inc. v. Koppers Co., 627 F.2d 54, 56 (7th Cir. 1980).

   In the present case, defendant would clearly be prejudiced if the Rule 41(a)(2) motion for voluntary dismissal was allowed. Examining the foregoing Pace factors is particularly instructive. Broan has expended considerable resources litigating this matter for more than two years. Without a final adjudication, Broan faces the possibility of relitigating these claims in the future. In addition, Seneca notified Broan of the possible subrogation claim against it 13 months after the fire, which severely limited Broan's ability to investigate the fire scene and take the necessary steps to defend itself. Much of the evidence from the fire scene, including the wiring, circuit

breakers and the timing switch, was thrown away before Broan could conduct an examination. Furthermore, Seneca has been unresponsive to defendant's interrogatories regarding expert testimony and defendant's notices of taking Seneca's deposition pursuant to Fed. R. Civ. P. 30(b)(6).

Seneca claims that issue preclusion against Surfside's tenant makes dismissal without prejudice appropriate. The aforementioned factors, however, weigh heavily against Seneca and the balance of all relevant factors strongly favors a dismissal with prejudice. The Rule 41(a)(2) voluntary dismissal without prejudice is therefore denied. Furthermore, defendant is entitled to have the court rule on its motion for summary judgment. See Guptill v. Martin, 228 F.R.D. 62, 65-66 (D.Me. 2005) (discussing Doe v. Urohealth Systems, Inc., 216 F.3d at 160). Notably, the court in Guptill denied the plaintiff's motion for voluntary dismissal without prejudice because the defendant would be prejudiced and, like the case at bar, the defendant had filed a summary judgment motion prior to the plaintiff's filing of the motion for voluntary dismissal. Accordingly, this court turns to the merits of defendant's motion for summary judgment.

II.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY # 31)

Defendant moves for summary judgment on all counts. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Buchanan v. State of Maine, 469 F.3d 158, 166 (1st Cir. 2006).  A "genuine" factual issue exists where "the evidence on the point is such that a reasonable jury, drawing favorable inferences, could resolve the fact in the manner urged by the nonmoving party."  Blackie v. State of Maine, 75 F.3d 716, 721 (1st Cir. 1996).  A factual issue is "material" where it "has the potential to alter the outcome of the suit under the governing law."  Id.

Factual disputes are resolved in a "light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor."  Barbour v. Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir. 1995).  Finally, "'[a]s to issues on which the summary judgment target bears the ultimate burden of proof, [it] cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an

11

authentic dispute.'" Torres-Martinez v. Puerto Rico Dept. of Corrs., 485 F.3d 19, 22 (1st Cir 2007) (quoting McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995)).

## DISCUSSION

A. Choice of Law

Before addressing the merits of the instant case, it behooves this court to examine what substantive law should be applied. A federal court sitting in diversity applies the choice of law rules of the forum state. Klaxon v. Stentor Electric Manufacturing Company, Inc., 313 U.S. 487, 496 (1941); American Title Insurance Company v. East West Financial Corporation, 959 F.2d 345, 348 (1st Cir. 1992) (citing Klaxon). This case was initially filed in the United States District Court for the Southern District of New York and was transferred to this court under 28 U.S.C. § 1401. "[W]hen a case is transferred, it is well-known that the transferee court . . . must apply the choice of law rule of the transferor court." In re New England Mut. Life Ins. Co. Sales Practices Litigation, 236 F.Supp.2d 69, 73-74 (D.Mass. 2002) (citing Masonite Corp. Hardboard Siding Products Liability Litigation, 170 F.R.D. 417, 422 (E.D.La. 1997)) (internal citations omitted)). Therefore, New York choice of law rules apply.

For tort claims, New York law applies an "interest analysis to determine which of two competing jurisdictions has the greater interest in having its law applied in the litigation." Colon v. Multi-Pak Corp., 477 F.Supp.2d 620, 625 (S.D.N.Y. 2007) (citing Padula v. Lilarn Props. Corp., 644 N.E.2d 1001, 1002 (N.Y. 1994)). This interest analysis consists of two prongs: "(1) what are the significant contacts and in which jurisdiction are they located; and (2) whether the purpose of the law is to regulate conduct or allocate loss." Padula v. Lilarn Props. Corp., 644 N.E.2d at 1002. Conduct regulating rules such as the duty and standard of care applicable to manufacturers are traditionally supplied by the place where the tort occurred because that state has "the greatest interest in regulating behavior within its borders." Id.

In the case at bar, neither party in this case is a citizen of Massachusetts. Seneca is a New York corporation acting as subrogee of Surfside, a Massachusetts corporation. Broan is a Delaware limited liability company with a principal place of business in Wisconsin. Addressing the second prong, the purpose of tort law is to regulate conduct and therefore the law of the location of the tort predominates. The loss in this case occurred in Massachusetts and this Commonwealth has the greatest

13

interest in regulating behavior within its borders. On balance, therefore, Massachusetts substantive law controls.

B. The Merits

Broan asserts that on all counts, Seneca has failed to provide any expert testimony on negligence, breach of warranty or causation. In addition and with respect to the warranty claim, Broan argues that it was prejudiced by Seneca's failure to provide reasonably prompt notice of the alleged breach. Finally, Broan argues that the strict liability claim is barred because Massachusetts does not recognize strict liability in tort for defective products.

Turning to the expert testimony argument, in such circumstances, a jury can find "of [its] own lay knowledge" that a design is defective without any expert testimony. See Smith v. Ariens Co., 377 N.E.2d 954, 957 (Mass. 1978) (further noting that finding defective design without expert testimony is not typical). Claims involving defective design or manufacture of a product, however, generally require expert testimony. See, e.g., Enrich v. Windmere., 616 N.E.2d 1081, 1084  (Mass. 1993) (expert testimony required where evidence showed that a fan was the source of the fire but did not show that a specific defect in the fan caused the fire); Goffredo v. Mercedes-Benz Truck Co., Inc.,

14

520 N.E.2d 1315, 1318 (Mass. 1988) (expert testimony required for truck door latch mechanism).

To make a determination regarding the reasonableness of a design, a jury must consider the gravity of the danger posed by the challenged design, the likelihood that such a danger would occur, the feasibility of an alternative design, the cost of an improved design and any adverse consequences to the product and to the consumer resulting from an alternative design. Back v. Wickes, 378 N.E.2d 964, 970 (Mass. 1978). Balancing these factors under a negligence or a warranty regime is essentially the same. Id.

Apart from the allegations in the complaint, plaintiff has not put forth any testimony, expert or otherwise, regarding the fan's design. Due to this dearth of factual evidence, a reasonable jury could not find that Broan was negligent or breached any warranties in designing the fan. Therefore, summary judgment should enter on behalf of defendant.

In addition, Broan argues that summary judgment should enter on the warranty claim because it was prejudiced due to Seneca's failure to provide timely notice of the fire. In Massachusetts, the buyer of a product must, within a reasonable period of time after he discovers or should have

15

discovered any breach of warranty, notify the seller of the breach or be barred from any remedy.  Mass. Gen. L. ch. 106, § 2-607(3)(a); Smith v. Robertshaw Controls Co., 410 F.3d 29, 35 (1st Cir. 2005).  Whether notice is reasonably prompt depends on the buyer's behavior in the circumstances.  Smith v. Robertshaw Controls Co., 410 F.3d at 35.  Even if the notice is unreasonably late, however, the failure to give notice will not bar recovery unless the defendant was prejudiced thereby.  Smith v. Robertshaw Controls Co., 410 F.3d at 35-36.  Unreasonably late notice and prejudice are separate requirements and both must be present for the plaintiff's warranty claim to be barred.  Id. at 36.

A defendant can establish sufficient prejudice if the delay of notice has deprived the defense of useful evidence.  The defendant need not show that lost evidence would have been outcome determinative.  To show prejudice based on a lack of notice, the defendant need only prove that evidence was lost that may have helped it.  Smith v. Robertshaw Controls Co., 410 F.3d at 36 (quoting Sacramona v. Bridgestone Firestone, Inc., 106 F.3d 444, 449 (1st Cir. 1997)).

In this case, Broan proffers sufficient evidence for a reasonable jury to find that it was prejudiced due to Seneca's late notice.  Seneca's insurance adjuster suspected

that the fan caused the fire the day after the fire on December 16, 2003. In addition, in the December 29, 2003 report, Seneca's cause and origin expert concluded that the fan caused the fire. Seneca did not preserve vital evidence at the fire scene including the wiring switches and circuit breakers. Broan was also denied the opportunity to interview key witnesses and inspect the scene to seek alternate causes of the fire. Furthermore, Seneca left the fan on the floor of the condominium throughout the restoration work performed by Whalen. Seneca did not notify Broan of the fire until 13 months after the fire occurred. Accordingly, given the record before this court, Broan was prejudiced by this late notice as a matter of law because evidence that could have helped its case was lost, destroyed or inadequately preserved. Summary judgment in defendant's favor is therefore appropriate.

Finally, defendant correctly asserts that Massachusetts does not recognize the doctrine of strict liability in tort for defective products and therefore plaintiff's third count is barred. In any event, however, actions for breach of warranty in Massachusetts are the functional equivalent of strict liability in other jurisdictions and are as comprehensive as the strict liability provision in section 402A of The Restatement (Second) of Torts. Cigna Ins. Co.

17

v. Oy Saunatec Ltd., 241 F.3d 1, 15 (1st Cir. 2001) (discussing Back v. Wickes Corp., 378 N.E.2d at 968-969, 970). As discussed above, the prejudicial effect of plaintiff's unreasonably late notice to defendant makes summary judgment for defendant appropriate.

CONCLUSION

Accordingly, in light of the above discussion, plaintiff's motion to strike defendant's motion for summary judgment and plaintiff's motion for an order of voluntary dismissal pursuant to Rule 41(a)(2) (Docket Entry # 37) are **DENIED**. Defendant's motion for summary judgment (Docket Entry # 31) is **ALLOWED** on all counts.

/s/  Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge